**IN THE**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **DERRICK D. NEELY-BEY TARIK-EL** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 1:15-CV-01522-WTL-DML** |
| | ) |
| **DANIEL L. CONLEY, RICHARD SIDWELL** | ) |
| **and DAVID SMITH,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Derick D. Neely-Bey-Tarik-El ("Neely-Bey") claims the Defendants violated his First Amendment rights when they allegedly enforced a directive from the Moorish Science Temple of America ("MST of A") and suspended him from religious services. Plaintiff's claim fails because Defendants properly enforced the MST of A directive and even if said enforcement is a violation the alleged right is not clearly established and therefore Defendants are entitled to qualified immunity.

## I.  Statement of Material Facts Not in Dispute

The following material facts not in dispute are being asserted for summary judgment purposes only:

1. On August 21, 2015 Neely-Bey was found guilty of refusing an order and was suspended from Moorish Science Temple of America meetings for one year. Neely-Bey Depo. 11:5-13 and Complaint Dkt 1 p. 6 ¶ Conclusion.

2. On Sunday April 6, 2014 Brother M. Doles Bey, Minister and Indiana Department of Correction ("IDOC") volunteer sent a Memorandum to David Liebel, Director of Religious Services; Chaplains: Alan McCraine and David Smith; Wendy Knight, Superintendent; and Offenders B. Crosby- Bey and D. Neely-Bey. (Dkt 1-1 page 7 & 8. "MST of A Memorandum").

3. The MST of A Memorandum states "Brother D. Neely-Bey # 973338 is not under any circumstances authorized to teach, facilitate or serve in a station of facilitations. He is a "GUEST" and should be treated as such. A guest can participate in Sunday School but cannot be allowed to dominate, debate, or give instructions as to the operation of the Temple. A guest cannot speak on a Friday Holy Day Service." (Dkt. 1-1 p. 8.)

4. The MST of A Memorandum states "[b]e advised that any violation of the instructions contained in this memorandum opens the door for the administration, security, or the IDOC to deal with that violation according to the policies they have in place." (Dkt. 1-1 p. 8.)

5. On March 23, 2015, Chaplain David Smith sent a memorandum to Neely-Bey which he received and it stated "I will need you to understand that by returning to [the MST of A] group you agree to fully cooperate with and follow the April 6 2014 sanctions placed on you by MST of A, Inc.". (Dkt. 1-1 p. 3 and Neely-Bey Depo 12:9-14).

6. Neely-Bey has a Security Threat Group ("STG") classification of Sovereign Citizen. (Neely-Bey Depo. 18: 17-20; 19: 13,14.)

2

7.  Prisoners are not allowed to participate in, recruit for, talk or teach about a STG. (Neely-Bey Depo. 19:18-25; 20: 1-4).

8.  Neely-Bey submitted an affidavit to former Commissioner Lemmon which challenged IDOC's authority to hold Neely-Bey in prison (Dkt. 1 p2 ¶ "fact 1"). The Affidavit of January 21, 2013 stated "I Derrick D. Neely-Bey Tarik-El, am a Sovereign Moorish National of the Missouri Republic by Nativity, thus of America (Al Morocco), and a Moorish American". ("Affidavit of January 21, 2013").


## II.      Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move for summary judgment if he can demonstrate to the court that there is no genuine issue of material fact and that the moving party is entitled to judgment in his favor as a matter of law.  Fed. R. Civ. P. 56(a).  "The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims."  *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001).  The substantive law underlying the claim defines which facts are material, and the Court should only refrain from granting the motion when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

### III.    Analysis

### A.    Defendants are allowed to enforce a religious directive from MST of A religious organization and therefore should prevail on Plaintiff's First Amendment Claim.

Neely-Bey has alleged that the Defendants violated his First Amendment Rights when they enforced a religious directive from the MST of A and suspended him from MST of A meetings for one year.  Neely-Bey's claim fails because the MST of A has a right to choose whom to associate with and to what extent and Defendants enforcement of that right is in accordance with the First Amendment.

The MST of A organization is allowed to choose who can be a member, or in other words who it wants to associate with. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints.") "Forcing a group to accept certain members may impair the ability of the group to express those views, and only those views, that it intends to express. Thus, freedom of association ... plainly

presupposes a freedom not to associate." *Id.* (internal quotations omitted).In this case the MST of A chose to only associate with Neely-Bey as a guest and not as a member and placed limitations on the association with Neely-Bey. (MST of A Memorandum). The sovereign citizen views expressed by Neely-Bey in his Affidavit of January 21, 2013 to former Commissioner Lemmon are not the views of the MST of A as has been recently explained by the Seventh Circuit in *Bey v. State.* (Affidavit of January 21, 2013).    The Seventh Circuit examined the MST of A and the sovereign citizen organizations and explained the two groups as follows:

> But we want to take this opportunity to examine the rights asserted, in this as in the other cases we've cited, by persons describing themselves as sovereign citizens by virtue of their alleged Moorish origin. Most of them are African Americans who belong to the Moorish Science Temple of America (MSTA) and claim to be descendants of the Moors of northern Africa, though they are not; Moors are of mixed Berber and Arab descent rather than being African American in the usual sense of being descended from black Africans. The original purpose of MSTA, founded in the 1920s by Noble Drew Ali, whose followers call themselves "Moors" in place of more conventional designations such as "Black," "African American," and "colored," was to claim government "recognition and respect as full citizens rather than the second-class descendants of slaves." Leah Nelson, *'Sovereigns' in Black*, Intelligence Report, Southern Poverty Law Center (Aug. 24, 2011), www.splcenter.org/fighting-hate/   intelligence-report/2011/'sovereigns'-black (visited Feb. 2, 2017, as were the other websites cited in this opinion). MSTA focuses on "uplifting" its followers, and encourages them to vote in U.S. elections so that they can escape "political slavery." Spencer Dew, *Moors Know the Law*, 31 *J. L. & Religion* 70, 72–75 (2016).
>
> **The MSTA home office, located in Washington D.C., has issued a statement clarifying that the organization is neither "a Sovereign Citizen** movement [n]or a Tax Protestor Movement" and that it was not founded "for its members to become anarchist or conspiracy theorist[s]." Moorish Science Temple of America, *Statement on Radical and Subversive Fringe Groups* (July 15, 2011), http://msta1913.org/Statement_Radical_Moors.pdf. **A MSTA temple in Georgia denounces sovereign-citizen propaganda as "completely asinine"** and asks that Moors not "adopt[ ] the ideals of these European groups who at their core, hate

[Moors'] very existence." *Frequently Asked Questions*, Question 1, Moorish Science Temple of America (Georgia), moorishsciencetemple.org/faqs/.

**But clearly, sovereign-citizen ideas appeal to many [self-described] Moors, who combine those ideas with Ali's teachings in an effort to reclaim and rewrite black history.** For example, the "Moors Order of the Roundtable" uses eighteenth-century treaties with Morocco to distinguish "Free Moors" from Africans who could be enslaved and teaches that courts have no jurisdiction over Moors. Nelson, *'Sovereigns' in Black, supra.* Other groups claim that their Moorish nationality gives them the status in the United States of an indigenous people, although the logic behind this claim is deeply obscure. See *id.* Renita Bey teaches that Europeans are latecomers and Moors never granted them citizenship. *Washitaw Nation Comes Under Investigation*, Intelligence Report, Southern Poverty Law Center (June 15, 1999), www. splcenter.org/fighting-hate/intelligence-report/1999/washita w-nation-comes-under-investigation. She teaches her followers that they are "Muurs" from "Muu" who traveled to North America before Africans did, when the world had only one continent. Many sovereign citizen organizations teach that whenever a Moor's name is spelled in capital letters in a government document, the name identifies not the individual but instead his "corporate shell identity," or in other words a "straw man" *561 controlled by the government. See Southern Poverty Law Center, "Sovereign Citizens Movement," www.splcenter.org/fighting-hate/extremist-files/ideol ogy/sovereign-citizens-movement.

**Although the Moorish Science Temple does not buy the "sovereign citizen" line, many of its members do.**

*Bey v. State*, 847 F.3d 559, 560–61 (7th Cir. 2017)(emphasis added). Neely-Bey is such an individual who proclaims to be a MST of A member and is a sovereign citizen. (Depo of Neely-Bey 14:12-14 and 18: 17-20; 19: 13,14).  Thus Neely-Bey expresses views that are not in accordance with those of the MST of A and therefore MST of A can choose not to associate with him.  This is exactly what they did in the MST of A Memorandum stating "Brother Neely-Bey # 973338 by his own written statement proclaimed himself as a "Moorish National Sovereign" therefore denouncing the status of being a Moorish-American, or a member of the Moorish Science Temple of America, Inc." (Dkt 1-1 p. 8). The MST of A Memorandum explains the MST of A has chosen not to associate with

Neely-Bey as a member therefore, pursuant to *Boy Scouts of Am. v. Dale*, IDOC clearly cannot force the MST of A to accept Neely-Bey as a member.

Further, Neely-Bey has repudiated his MST of A beliefs by making statements of being a Moorish National Sovereign and therefore a sovereign citizen and is now seeking to enjoy the benefits of being a member of the MST of A, speaking at Holy Day Services. Neely-Bey cannot have it both ways. An individual has a right to believe as he pleases, to repudiate prior beliefs and adopt new ones as often as he chooses however this does not mean that he can maintain the privileges of being a member of a faith he has repudiated. This legal conclusion dates back to 1893. The Indiana Supreme Court explained in *Smith v. Pedigo* that:

> These provisions of the fundamental law not only take away all power of the state to interfere with religious belief, but they leave the citizen perfectly free to repudiate the faith and belief he once professed and adhered to, and adopt a new creed and faith, differing from that of the church to which he belonged; or he may repudiate his old belief and faith without adopting any new one; and these changes he may adopt as often as to him may seem proper, and the law will protect him in it. In other words, the law allows every one to believe as he pleases, and practice that belief so long as that practice does not interfere with the equal rights of others. But that is a very different thing from the claim of a right of a church member to repudiate the faith and doctrine upon which his church was founded, and at the same time insist on his right to exercise and enjoy the benefits and privileges of a member of such church, contrary to the rules and laws upon which such church is established.

145 Ind. 361, 33 N.E. 777, 779 (1893).

Additionally, IDOC is prohibited from reviewing or questioning the religious decisions of the MST of A including whether they followed their own procedures in deciding that Neely-Bey was only a guest and was no longer a member of the MST of A. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 186 (2012)("our

opinion in *Watson* "radiates ... a spirit of freedom for religious organizations, an independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America,* 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952).") Any review of the MST of A decision by IDOC would violate of the MST of A's rights under the First and Fourteenth Amendments to the United States Constitution. The United States Supreme Court held in *Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich,* "that by inquiring into whether the Church had followed its own procedures, the State Supreme Court had unconstitutionally undertaken the resolution of quintessentially religious controversies whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals of the Church." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.,* 565 U.S. 171, 187 (2012)(internal quotations and citations omitted).  This unconstitutional review is exactly what Neely-Bey is arguing IDOC or this Court should do.  IDOC is unable to review the decision of the MST of A to cease association with Neely-Bey as a member and the MST of A's decision to treat Neely-Bey as a guest who is prohibited from speaking at the Holy Day service is similarly unreviewable.

Finally, it follows that the MST of A memorandum is enforceable by IDOC for two reasons. First, failure to enforce the MST of A memorandum would be the equivalent of forcing the MST of A to associate with Neely-Bey as a member in violation of MST of A's First Amendment rights as explained in *Boy Scouts of Am. v. Dale.* Second, failing to

8

enforce the MST of A memorandum could be seen as a review of it or a decision that it was not valid both of which would violate the MST of A's First Amendment rights as explained in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*.  Although, Neely-Bey is free to believe as he pleases and to repudiate his faith he does not have a right to impose his contrary beliefs on MST of A and once he has proclaimed his contrary beliefs, as he did in his Affidavit of January 21, 2013, MST of A has the right to refuse to associate with him.  MST of A has exercised this right in the MST of A Memorandum. IDOC has respected the rights of the MST of A and has enforced their decision to limit their association with Neely-Bey.  The MST of A specifically contemplated the IDOC enforcing the MST of A Memorandum in the final paragraph stating "any violation of the instructions contained in this memorandum opens the door for the administration, security or IDOC to deal with that violation according to the policies they have in place." (MST of A Memorandum, Dkt 1-1 p. 8).

IDOC's enforcement of the MST of A Memorandum did not violate Neely-Bey's First Amendment Rights as he doesn't have a right to impose his contrary beliefs on the MST of A.  Wherefore, judgment should be granted in favor of Defendants.

### B.      Defendants are entitled to qualified immunity.

Even if this Court determines that IDOC did violate Neely-Bey's First Amendment rights Defendants are entitled to qualified immunity because no sufficiently analogous case exists. Qualified immunity shields government officials performing discretionary functions from liability so long as their conduct "does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."
*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of a 'clearly established' right
must be sufficiently clear that a reasonable official would understand what he is doing
violates that right.'" *Sivard v. Pulaski County,* 17 F.3d 185, 189 (7th Cir. 1994). Qualified
immunity is not only a defense against liability, but also "an entitlement not to stand trial
or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To
determine whether qualified immunity is appropriate, this Court must determine (1)
whether the facts alleged by the plaintiffs make a showing that the official's conduct
violated a constitutional right; and (2) if so, was that right clearly established at the time
of the defendants' alleged misconduct. *Id.* These elements do not have to be analyzed
sequentially, and judges possess discretion "in deciding which of the two prongs of the
qualified immunity analysis should be addressed first in light of the circumstances in the
particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 237-38 (2009).

Qualified immunity protects all but the plainly incompetent or those who
knowingly violate the law. *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012).
An officer is protected from liability unless the plaintiff "can show a violation of a
constitutional right and demonstrate that the right in question was clearly established at
the time of the alleged violation." *Id.* Specifically, a plaintiff must offer a closely analogous
case or evidence that the officer's "conduct is so patently violative of the constitutional
right that reasonable officials would know without guidance from the courts." *Id.* at 828.

When analyzing whether qualified immunity should apply, a court should first
look to controlling United States Supreme Court or Seventh Circuit cases to determine

whether any right has already been established. "The Supreme Court also has held that, in this context, legal rights cannot be defined at a high level of generality.The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken *in light of the specific context of the case, not as a broad general proposition*." *Werner v. Wall*, 836 F.3d 751, 762 (7th Cir. 2016), reh'g and suggestion for reh'g en banc denied (Oct. 20, 2016)(internal quotations and citations omitted). Undersigned counsel's diligent search of Seventh Circuit and United States Supreme Court cases has yielded no cases with closely analogous facts that would establish that Plaintiffs' rights have been violated in this case. "The plaintiff carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014)

Defendants are entitled to qualified immunity and judgment should be granted in their favor.

### IV.    Conclusion

Defendants are entitled to judgment in their favor as a matter of law.  Defendants properly respected and enforced the religious decisions of the MST of A and limited Neely-Bey's association with the MST of A.  Defendants' enforcement of the MST of A Memorandum was proper in accordance with the MST of A's First Amendment Rights and even if improper Defendants are entitled to qualified immunity as the right is not clearly established.

Respectfully submitted,

CURTIS T. HILL, JR.
Attorney General of Indiana
Attorney No. 13999-20


 s:/ *Jennifer E. Lemmon*
Jennifer E. Lemmon
Deputy Attorney General
Attorney No. 28653-49


## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2017, the foregoing was electronically filed with the

Clerk of the Court using the CM/ECF system.  I further certify that the foregoing was

mailed via first class United States Postal to the following:


Derrick Neely-Bey Tarik – El,
DOC #973338
Correctional Industrial Facility
5124 W. Reformatory Road
Pendleton, Indiana 46064
*ProSe Plaintiff*


/s/ Jennifer E. Lemmon
Jennifer E. Lemmon
Deputy Attorney General


OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South – 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Phone:  (317) 232-4848
Fax:  (317) 232-7979
Email:  Jennifer.Lemmon@atg.in.gov

12