FILED

3:03 pm, May 23, 2017

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Laura A. Briggs, Clerk

In The United States District Court
Southen District of Indiana
Indianapolis Division

Derrick D. Neely-Bey Tarik-El )
Plaintff, )
)
) Case No. 1:15-cv-01522-WTL-DML
vs. )
Daniel L. Conley, Richard Sidwell )
And David Smith, )
Defendants. )

Memorandum In Support of
Plaintff's Motion In Oppsition to
Defendants' Motion for Summary
Judgment

Comes Now, plaintff to oppose defendant's Motion for
summary Judgment. Defendants violated my Frist Amendment
Rights when they enforced a Religious conneation that was
Allegedly from the Moorish Science Temple of America
hereafter (M.S.T. of A) And suspended us from my Religious
services for one year, to which I was deprived of my Right to Attend
My Religious service for 6 months, I Also have not been Allowed
to participate / practice my Religion on fridays which is our holy day
the defendants deprived me of my Ability to practice/participate in my Religio
My Right to practice my Religion is a Right that is guaranteed to me
through/by the Frist Amendments Free Exercise clause of
the United States Constitution. I Also have the Right to be
Free form the Establishment of Religion, Also guaranteed by
the Frist Amendment to the United States Constitution both
the clauses are binding on the State of Indiana
through the Fourthteenth Amendment to the U.S. Constitution.

Page -1-

This Right is Also guARANTeed to me though INDIANA Code 11-11-4-1, Rights of Confined person, ..... (A)/(A) (2) - (b) therefore the DefendANTs ARE Not entitled to qualified immunity or judgment in there favor, my claim should proceed due to the unconstitutional Acts of the defendants improperly enforcing An Alleged M.S.T. of A. Religious commcation.

## I.   Statement of MAterial Facts In Dispute

1. PlAintiff wAs Not found guilty of Refusing AN ORdER ON August 21, 20/5. plaintiff was suspended from M.S.T. of A. Meeting for one yeAR

2. PlAintiff cAN Not state for A fact that M. Dole-Bey Alleged minister And IndiANA Department of CoRRection, hereAfter (IDOC) volunteer did in fact send A MemorAndum to DAvid Liebel, DiRector of Religious Services; ChaplAin; AlAN MCCRAine And DAvid Smith; Wendy Kinght, SupeRintende

3. The M.S.T. of A. did not strte in A Memorandum "the BRother D.Neely-Bey #973338 is Not under ANy ciRCUMstAnces Authorized to teach, facilitate or serve in A station of facilitations. He is a "GUEST" And should be tReAted As such. A guest cAN PARTICIpAte in Sunday school but cannot be Allowed to dominate, debate, oR give instRuctions As to the opeRAtion of the Temple. A guest CANNot speAK ON A Friday Holy DAy SeRvice.

4. There is No M.S.T. of A. MemoRANdum that stAtes be Advised that ANy violAtion of the instructions contained in this mennoRANdum opens the dooR foR the AdministRAtion security, oR the IDOC to deal with that violAtion According

to the policies they have in place.

5. Although I did receive a memo dated March 23, 2015, that had Chaplain Smith name printed next to the word "From"; from a correction officer during the time mail was passed out. But this is not proof that the memo was sent to me by David Smith.

6. Number 6-7 of the defendants "Statement of Material Facts Not in Dispute" would appear to be true.

7. Number 8 of the defendants "Statement of Material Facts Not in Dispute" appears to be true.

## II. Summary Judgment Standard

The plaintiff must now show facts are genuinely disputed by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations (including those made for purpose of the motion only); Admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56 (c)(1). An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated. Fed. R. Civ. P. 56(c)(4).

## III. Context of Analysis

A. Defendants are not allow to enforce a religious directive from MST of A a religious organization and therefore should not prevail against my First Amendment claim.

The defendants are/was employee's of the Correctional Industrial Facility hereafter (C.I.F) a secular institution that is managed by the Indiana Department of Correction hereafter (I.DoC). The IDoC is an Administrative Agency for the State of Indiana this agency is apart of the Executive Department of the Indiana government which is the law enforcement department for the state.

The MST of A is a Religious organization/institution. The defendant are of the opinion that they may get involved in the affairs of Religion, but the precedent against this kind of opinion is vastly rejected, (see TORCASO v. WATKINS 367 US 488, 6 L Ed 2d 982, 81 S Ct 1680 (1961); ALLEGHENY COUNTY v. GREATER PITTSBURGH ACLU 492 US 573, 106 L Ed 2d 472, 109 S Ct 3086 (1989); WALZ v. TAX COMMISSION 397 US 664 25 L Ed 2d 697, 90 S Ct 1409 (1970); GILLETTE v. UNITED STATES 401 US 437, 28 L Ed 2d 168, 91 S Ct 828; Reh den 402 US 934, 28 L Ed 2d 869, 91 S Ct 1521 (1971); LEMON v. KURTZMAN 403 US 602, 29 L Ed 2d 745, 91 S Ct 2105, Reh den 404 US 876, 30 L Ed 2d 123, 92 S Ct 24 (1971); WISCONSIN v. YODER 406 US 205, 32 L Ed 2d 15, 92 S Ct 1526 (1972); just to name a few.

The Establishment Clause of the First Amendment of the U.S. Constitution gives its aid to the plaintiff by making it clear that "Neither a State nor the Federal Government can, openly or secretly, participate in the affairs of

page -4-

any Religious organizations or groups and vice versa"; (see
Torcaso vs. Watkins) Although the subject matter of this
case and all of the abooed meantion cases cited herein defers
from that of the plaintiffs, the principal now cited from
Watkins and the other cases herein cited. Are upt held as the
Authority in every and all case where governme interferes
with the Rights of persons and that interference causes an injury.
The Sunday April 6th, 2014 Memorandum appears to contain the
signature of Brother M. Doles Bey Minister & Religious volunteer
but this is not proof that the document that has this signature
Afix to it is either endorsed / supported by the M.S.T. of A.,
just because the name of the M.S.T. of A is afix to the top of
the document dose not mean that it cons from the M.S.T. of A.
the document dose not have the official seals of the M.S.T. of A.
nor is it endorsed by the Grand Body of the M.S.T. of A.
or the Grand Sheik of the M.S.T. of A. the Grand Body is
the Judiciary department of the M.S.T. of A., and the body
consist of seven or more sheiks as stated by our Prophet
Brother Noble Drew Ali, in his "Friday; October 26, 1928 WARNING"
that is express in the "Humanity by Noble Drew Ali" pamphlet" so
therefore the defendants claim that the M.S.T. of A. Authorized
the April 6th, 2014 Memorandum is unfounded and any claims
made about the status of the plaintiff is without force, the
M.S.T. of A., is not a parity to this action.
But even if the defendants could some how shows / prove that the
April 6th, 2014 Memorandum was infact authorized by the M.S.T. of A
the defendants claim would still fail, and this is due to
    the Memorandum in question stating in it's final
paragraph "Be advised that any violation of the instructions
contained in this memorandum opens the door for the Administration
Security or the IDOC to deal with that violation according
to the policies they have in place", this kind of delegation of authority
is unconstitutional it require the State of Indiana to get

Page - 5 -

involved with Religion, Also the following Reasons supports this claim:
① As stated in this motion the FIRST Amendment of the
U.S. Constitution forbids this kind of delegation of authority.
② The IDOC forbids it and this was made clear October 28,
2014, with "Executive Directive #14-55" which revised
places of the 01-03-101, "The Development And Delivery of
Religious Services" on page 2 of the #14-55" Next to the
fourth dot at the bottom the page states "The Department does
Not endorse OR Recognize any particular denomination, sect, or
Faction as the "correct" manner to practice a particular Religion."
this Executive Directive will by attach to the summary judgment
motion it will be attach to "The Development And Delivery of
Religious Services Policy" that this memmorandum is in support
of. (see Executive Directive attach to motion in oppsition to motion for
summary judgment).
The defendant's use of "Smith v. Pedigo" is misguided this is
due to the fact that I have "Not" Repudiated my faith/Religion
Nor will I ever do so, but let as say that the defendant's
could some how show that I did, "Although they can not". Let's
Just say they could, the defendant's actual would still be
unconstitution, in Hatfield v. Cummins et al. 171 Ind. 112; 85 N.E.
359; (1908 Ind.).  The Indiana Supreme Court endorsed the
Notion that Religion must enforce its on discipline this
was done when the court stated in it's decision the following:
"The church should guard its own fold; enact And construe
its own law; "Enforce its own discipline".

Also the defendant's use of Hosanna-Tabor Evangelical
Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 186 (2012);
Watson; Kedroff v. Saint Nicholas Cathedral of Russian
Orthodox Church in North America, 344 U.S. 94, 116, 73
S. Ct. 143, 97 L. Ed. 120 (1952), Are misapplied this is due to the
fact that there has not been any challenge to the H.S.T of A's
page -6-

Authority to apoint it's leaders NOR have I been excommunicated NOR have I made a complaint against the M.S.T. of A. Plaintiff's complant is confined to the defendants And there action as state empolyees, the defendants Are the ones that is in violation of the plaintiff FIRST Amendment Rights Not the M.S.T. of A, M. Doles-Bey gave up the Right to enforce the April 6th, 2014 Memporindum when he delegated this matter to the policies of the IDOC, administration, security, just As the IDOC gave up it's authority in its relation to this matter when it delegated the January 21, 2013 A.D. Affidavit to M. Doles-Bey, For Doles-Bey to persume that he may grant to defendants the authority to deny me my Right to practice my Religion on one day, but then say I "CAN" practice on another is a-kin to tomfoolery.     IV. Conclusion

In conclusion to the plaintiff's contest of Analysis. The defendants, it would seem believe that they have the Authority to allow the M.S.T. of A. to have its cake And eat it to, if the allege envoulement of the M.S.T. of A. is infact true this belief would be misplace / unlawful because such a belief has herein be shown to be unconstitutional.

The IDOC would not be violating the Rights of the M.S.T. of A when it does not enforce the allege Religious dereadtve, there can be no claim that the M.S.T. of A. has Rights that are equal to the Rights of the plaintiff but also Infer that those Rights are superior to that of the plaintiff when the claims that A secular institution such as the IDOC can protect the Rights of the M.S.T. of A but can protect the Rights of the plaintiff, this causes confusion. This is exactly why the United States Supeme Court has consistently upheld / maintained; that government must remain Neutral.

when it comes to claims such as the plaintiff's. When the defendants fail to comply with the law and some one is injured the defendants must be held responsible for the injuery, the plaintiff is fully aware of the fact that I may not seek to have the government intervene in the affaies that are between myself and my Religious organization, but on the other hand when the government invades such realms the law guarantees to the plaintiff the right to have this matter addressed by the civil courts because the civil government has declaired such action impermissible. The IDOC allows plaintiff the right to practices my Religion (see Hand Book of Religious Beliefs and Practices attached to motion in oppsition to motion for summery Judgement).

The defendants are making the claim that they did not violate my First Amendment Rights when they enforce the allege Religious derective. Plaintiff herein and herenow assert that they did violate my First Amendment Rights when they enforce the allege Religious derective and suspended me for one year. (See disciplinary document attach Motion in oppsition The action of the defendants have place a substantial burden on my right to practice my Religion, I was suspended for one year to which I was not allowed to attend my Religious services for six months and from the time I came back to the group I have not participated in our holy day meetings on Fridays for fear that I my be written up again such Report of conduct can affect other programs which could affect my Rehabilitative process, it has been embarrassing to have to Repeatedly answer question about why I can't pray with the Rest of the group is why I can't give prise to our Father God-Allah when the group Recites The Holy Covenant or why I can't be ask question or why I can answer question on Fridays

page-8-

All of these thing ARE APART of my Religious practice
to which the defendants ARE infringing.
Wherefore all the REASON herein cited the defendants
Motion for summary judgment should be denied, when the
defendants engaged in this, DANiel L. Cowley WAS AN employee
of the Correctional Industrial Facility which is Managed
by the Indiana Department of Correction which MEANS he
Acted under color of state law, When DAVid Smith
engaged in this he WAS AN employee of the Correctional
Industrial Facility which is Managed by the Indiana
Department of Correction which mean he Acted under the
color of state law, And when Richard Sidwell engaged
in this he was And Still is AN employee of the
Correctional Industrial Facility which is Managed
by the Indiana Department of Correction which mean
he Acted under the color of state law.

The plaintiff's Rights At the time of this Action
WAS clearly established by both State And Federal
law which entitles the plaintiff to have Judgment In my
FAVOR, And summary Judgment for the defendants
should be denied. As a matter of law, DAVid Smith wa
without the Authority to use AN ORGAN of the State government to
deprive me of my Right to practice my Religion which is protected
by the First Amendment to the U.S. Constitution, this was done when
he submitted the 8-21-2015 A.D. Report of conduct wherein he
Allege that I WAS Refusing AN order that he alleges came
from him but WAS Actually from M. Doles-Bey A M.S.T. of A.
volunteer who is not AN employee of the Correctional
Industrial Facility which is Managed by IDOC which MEANS
he M. Doles-Bey WAS without the Authority to give me AN order
that would violate my Constitutionally protected Rights

if DAVid Smith is without Authority to use the
disciplinary process to enforce the 4-6-2014 A.D.
Memorandum then that means DANiel L. Conley And
Richard Sidwell was also without Authority to
process And/or enforce DAVid Smith's 8-21-2015 A.D.
Report of Conduct, such enforcement compel me to
comply with David Smith's      8-21-2015 A.D. Report of
Conduct for the Rest of my time in the IDOC which
is unreasonable. IDOC can Restrict my Religious practice
but only if it is to enforce A penalogical intrest but
it is clear from the defendants Argument that there
intrest was strickly Religious An therefore impermissibl
And unlawful/unconstitutional. As long AS I was
Not leading the group I was Not violating Any IDOC
Rule, it is Not clear from David Smith 8-21-2015 A.D.
Report of Conduct what I was doing because he
only states that I was speaking And openly
participating but what that participation was is
Not made clear in his Report of Conduct.


Claiming to be A Sovereign Moorish National does Not
make me A Sovereign Citizen Nor have I every claim to
be A Sovereign Citizen And Any clasm to the contrary
is unfounded, the titled of Sovereign is one that was
given to MAN by Allah And in this country it is my
understanding that it is the official title held by
"We The People" to which I Am one of, with All due Respect.

V. Defendants Are Not Entitled to
qualified immunity

When establishing that the defendants are not entitled to qualified immunity I must show that the defendants conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. In the case of Aaron Isby-Israel vs. Bruce Lemmon, et al, this Court recognized that the First Amendment Free Exercise clause prohibits the government from imposing a substantial burden on a central Religious belief or practice.

David Smith at the time of this incident was the (C.I.F) chaplain and had been for more then a year. David Smith was fully aware of the practices of the M.S.T. of A's. faith group he was fully aware of the ceremonies of our faith group he was aware that we are required to stand and face the east and recite the Moorish American Prayer twice per service both on Fridays and Mondays he was aware that at the end of our service we give praise to our Farther God-Allah when we recite Chapter 25 of our Holy KORAN and he was fully aware that all of the aboved mention action are a central part of my Religious practice. There is no way that he would not know/understand that enforcing the April 6, 2014 Memorandu would deprive me of my Right to due the above mention practice on Friday Holy day service, IDOC policy 01-03-101 is clear that "[O]ffenders shall be free to practice and adhere to the requirements of a personal Religious belief within the the limitations of these Administrative procedures." this same policy also makes it clear that the Restiction of a Religious practice can only be Administered by the Superintendent/designee (see Page 17 section 15/XV of policy 01-03-101 Attach to this motion). to which David Smith was aware of And this is due to the fact that the authority

Page -11-

to suspend me from my Religious services come from this same policy (see page 19 section 17/XVII B. Attach to this motion); Indiana Code 11-11-4-1. Also makes it clear that the observance of a Religious day of worship is a Right/entitlement This is also guaranteed to me per policy (see the first page of policy 01-03-101 Attach to this motion), with all of the above cited authority. It is Reasonably clear that David Smith's was not performing a discretionary function; Blacks Law Dictionary defines Discretionary Function as:

"Those acts wherein there is no hard and fast rule as to course of conduct that one must or must not take. And, if there is clearly defined rule, such would eliminate discretion; cited in-pai

Due to there being clearly established statutory, constitutional and administrative policies that establish my Right to practice my Religion. These authorities also establish my Right to be free from the interference from government with my Religion, Although the government may Restrict my Right to practice my Religion when it come to enforcing an penialogical intrest, David Smith has not made No such Assertion in this matter nor has he given any authority that supports his claim that as an employee of C.I.F which is managed by the I.D.O.C. that he could participate in the affairs of a Religious organizations or group' openly or secretly (see Torcaso v. Watkins, 367 us 488, 6 L Ed 2d 982, 81 S Ct 1680 (1961); David Smiths claim of qualified immunity must fail.

At the time of this incident both Daniel L. Conley and Richard Sidwell where a part of the same disciplinary body at C.I.F. Daniel L. Conley was responsible for conducting the screening procedure of the disciplinary process his job description is defined by both law and the administrative policies of the State of Indiana, Indiana Code 11-11-5-1. and 11-11-5-2. Also 11-11-5-5. the

"Disciplinary Code For Adult Offenders" NONE of the Authority herenow cited grants to Daniel L. Conley the Authority to Participate in the Affairs of a Religious Organization, such Participation is impermissible (see Torcaso v. Watkins, 367 US 488 6 L Ed 2d 982, 81 S Ct 1680 (1961);

In Daniel L. Conley's Responses to my Request for Admissions he admitted that he had reservation about the 8-21-2015 A.D. Report of Conduct that was submitted by David Smith, he-Daniel L. Conley Also admitted in his Responses to my Request for Admissions that he was instructed by the Assistant Superintendent of Re-Entry to proceed with the screeing process (see Daniel L. Conley's Responses to Request for Admissions that is attach to this motion), Daniel L. Conley admitted this to me on 8-24-2015 A.D. when he was screening me for the 8-21-2015 A.D. Report of Conduct, he did not convey his reservation to me until after I brought to his attention that the chplains memo was unconstitutional and could not be enforced in the Facility (c.I.F) this is the point wherein he informed me that he was told to proceed with the screen process. Daniel L. Conley was aware that there was something wrong with what David Smith was attempting to do to me, once it was brought to his attention that the enforcement of the 8-21-2015 A.D. would violate my right to practice my religion he had the authority to disprove the Report of Conduct and he could of returned it back to David Smith's immediate supervisor, also the language that David Smith used in the 8-21-2015 A.D. Report of Conduct along with the 3-23-2015 A.D. chaplain's Memo that was attach to the 8-21-2015 A.D. Report of conduct gave notice to Daniel L. Conley that the alleage violation was of a Religious Nature, I believe this is what drew his suspicion, this suspicion invoke a behavior that was contrary to Daniel L. Conley Job description, when he bypassed the immediate supervisor and took his suspicion to the Assistant Superintendent of Re-Entry who is also over the Religious

Page -13-

services, which means that he was aware of my Rigth to practice my Religion as well as my Right to be free from govarnment enterference with that practice Daniel L. Conley's claim of qualified immunity must fall.

Richard Sidwell was also aware of the fact that this incident was one of a Religious nature, and this was due to the fact that he was the disciplinary hearing officer at this (C.I.F) facility. He was the fact finder which means he reviewed the same Report of Conduct that Daniel L. Conley reviewed from David Smith.

The language that was used in the 8-21-2015 A.D. Report of conduct made it clear that alleage violation was of a Religious nature, there was no evidence submitted at the 9-2-2015 A.D. hearing for the 8-21-2015 A.D. Report of conduct from David Smith that proved that the alleage violation cited by David Smith in his 8-21-2015 A.D. Report of conduct was a violation of a facility Rule David Smith prescented no evidence that the alleage conduct that he claim was a violation was actually a violation of a facility (C.I.F) Rule, infact the evidence that was presented at the hearing made a clear showing that my Religious practice was clearly established. And Executive Directive #14-55 dated 10-28-2014 A.D. on page 2 of 3 the sentence next to the third dot at the bottom of that page shows that the I.D.O.C's policies are in conjunction with the principals that have been established by the Establishment Clause of the First Amendment to the U.S. Constitution as well as the multitude of U.S. Supreme Court Decisions (see Executive Directive #14-55 that is attach to this motion). With all of the aboued stated Richard Sidwell's claim of qualified immunity must fall.

My Right to practice my Religion was clearly establish by the U.S. Constitution First Amendment, Indiana Statute, And the I.D.O.C Administrative policies / Executive Directive, these herein cited Authority Also show that defendants where Aware of their action, but they chose to disregard the mandates of the Above cited Authority, this disregard for the Above cited Authority did And still is placeing An substantial burden on the  exercise of my Religion.

With All of the Above cited Authority I believe that I have proven that All of the defendants where Aware of my Rigth to practice my Religion which had been clearly established, All of the defendant job description made them Reasonably Aware that their Action was violating my Rights to practice my Religion As well As my Right to be free from gournment interferece with my Religion As it relates to this matter....

Therefore the defendants Are not entitled to qualified immunity And judgment should not be granted in their FAVOR, I herein And here now Request that this Court deny the defendentnts summary judgment, I Request that this court Allow my First Amendment claim to proceed.

Respectfully Submitted:

David D'Neely, Bey (Trick-El

Respectfully Submitted:

*Derrick D. Neely-Bey Tarik-El*

DERRICK D. Neely-Bey TARIK-EL #973338
CORRECTIONAL INDUSTRIAL FACILITY
5124 W. Reformatory Road
Pendleton, Indiana 46064


Certificate of Service

I hereby certify that on May 22, 2017 A.D. the foregoing
was E-Filed with the clerk of the court using the
facilities E-File system at the correctional industrial
Facility. I Also mailed the documents to the Deputy Attorney
General Jennifer E. Lemmon via U.S. Postal Service At:

Office of the Attorney General
Indiana Government Center South - 5th Flour
302 W. Washington Street,
Indianapolis, Indiana 46204



**STATE OF INDIANA**
**Department of Correction**
Indiana Government Center - South
302 W. Washington Street • Indianapolis, Indiana 46204-2738
Phone: (317) 233-6984 • Fax: (317) 232-6798 • Website: www.in.gov/idoc/

Michael R. Pence
Governor

Bruce Lemmon
Commissioner

October 28, 2014

## EXECUTIVE DIRECTIVE # 14-55

This Executive Directive presents and authorizes a revision to Policy and Administrative Procedure 01-03-101, "The Development and Delivery of Religious Services." The revision replaces the version of the policy and administrative procedure with an effective date of June 1, 2012 that was distributed with Executive Directive # 12-23, which is hereby rescinded. The revision has an effective date of November 10, 2014 and is applicable to all facilities in the Department housing offenders or youths.

Significant changes to the policy and administrative procedure include:

Section XI:

> Clergy confidentiality does not apply when reporting is required by State or federal law; when an offender has disclosed information to clergy that reasonably identifies a serious threat to the safety and security of the facility, staff, offenders, or general public; when the communication is made outside of clergy's professional role; and communication is made by mail, telephone, email, or other means.

Section XII:

> An offender wishing to change his/her religious preference shall submit a written notification on State Form 47686, "Statement of Offender's Religious Preference."

Section XIV:

> During leisure or recreation periods, offenders may gather for religious discussion and/or prayer, provided the gathering is not disruptive to the area or operation of the unit or facility. No offender shall be coerced into participating. No extra movement lines shall be authorized to facilitate a gathering.

Section XVII:

- If found guilty of an offense related to a religious program, the offender may be restricted from the religious service for the following:

  1.   First guilty finding: Fifteen (15) day restriction;

IDOC Executive Directive # 14-55
October 28, 2014

    2.      Second guilty finding: Thirty (30) day restriction; and,

    3.      Third guilty finding: Six (6) month restriction.

- A facility directive shall be developed and implemented to outline attendance/participation in religious services

- Generally, each faith grouping will receive two ceremonial meals per calendar year

- A reasonable amount of alcohol or tobacco, such as communion wine, may be utilized for religious faith groups requiring its use for a sacramental rite in compliance with Indiana Code 7.1-1-2-3. A Facility Directive shall be develop to provide guidelines for bringing in, or storing, alcohol or tobacco for religious use.

- All services are subject to monitoring by Department staff. This may include staff presence, covert/overt audio and/or video surveillance, and any other approved methods. Any attempt to block staff from entering or monitoring a service shall result in disciplinary action, and may result in suspension of the service.

A facility directive shall be developed and implemented by each facility. The facility directive shall:

- Provide guidelines for bringing in, or storing, alcohol and tobacco for religious use;
- Provide guidelines regarding attendance at worship services (the procedures shall be the same for all faiths); and,
- Allow an offender to temporarily attend worship services of a faith other than that recorded in OIS (Offender Information System).

This Executive Directive also authorizes a revision to the December 2008 *Handbook of Religious Beliefs and Practices*. The revision rescinds the subsection titled, "Minimum Requirements for the Incarcerated," Due to the wide variety of individual beliefs, it is not feasible for the Department to set such requirements. It should be noted that the *Handbook* does not carry the weight or authority of policy and administrative procedures.

The basic principles of the Department's Religious Services are as follows:

- An offender is free to hold whatever religious beliefs he/she desires
- For convenience, the most commonly encountered religious preferences are assigned codes in the OIS
- The Department does not endorse or recognize any particular denomination, sect, or faction as the "correct" manner to practice a particular religion
- Offenders come from a wide variety of backgrounds. Some have practiced their faith for years; other have recently converted in prison. Some offenders may have advanced theological degrees. When questions of theology or practice arise, the Department shall defer to ordained staff or outside volunteers.

Please ensure that all appropriate staff members, volunteers, and offenders are made aware of, and have access to, this Executive Directive.

IDOC Executive Directive # 14-55
October 28, 2014

If there are any questions in regards to this Executive Directive or accompanying documents, please contact the Director of Religious Services and Community Involvement at 317-232-1545.

signature on file
Bruce Lemmon, Commissioner

**11-11-4-1.  Rights of confined person.**

(a) A confined person is entitled to believe in the religion of his choice; and attendance at religious services or belief in any religion is not required. To the greatest extent possible, consistent with the security of facilities and programs and departmental resources, a confined person is entitled:

(1) To a diet sufficient to sustain good health, consistent with the dietary practices of his religion;

(2) To observe the religious days of worship or holidays of his religion;

(3) To possess and wear religious artifacts;

(4) To receive and possess religious literature; and

(5) To communicate, correspond with, and be visited by a clergyman or religious counselor of his choice.

(b) Except at a confined persons request, the department may not release information about his religious practices or affiliation in a way that would be individually identifiable.

**HISTORY:**
IC 11-11-4-1, as added by Acts 1979, P.L. 120, 4.

IN THE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DERRICK D. NEELY-BEY TARIK-EL )
)
     Plaintiff, )
)
v. ) Case No. 1:15-CV-01522-WTL-DML
)
DANIEL L. CONLEY, RICHARD SIDWELL )
and DAVID SMITH, )
)
     Defendants. )

## DANIEL CONLEY'S RESPONSES TO REQUEST FOR ADMISSIONS

Defendant Daniel Conley, by counsel, pursuant to Rule 36 of the Federal Rules of

Civil Procedure, responds to Plaintiffs' Request for Admissions to the Defendant's, as

follows:

### GENERAL STATEMENT

By responding to these Request for Admissions, Defendant does not waive his

right to object to the use of the following Responses at any time, on any ground, in this

or any other proceeding.  Further, Defendant has not completed preparation for trial.

Thus, these Responses are limited to the information known to Defendant at this time

and do not constitute a waiver of Defendant's right to introduce additional evidence at

trial.  Defendant reserves the right to supplement or amend these Responses in the

event further information is obtained and to supplement or amend these Responses

based on information that may be obtained during the pendency of this case.

**DEFENDANT DANIEL CONLEY'S RESPONSES TO REQUEST FOR ADMISSIONS**

1.      When you received the State form 39590 (R6/9-00) case number 15-02-

0224 you had reservation about the conduct report.  Admit or Deny.

    **Response:** Admit.


2.      You did seek confirmation from your immediate supervisor as it related to the

State form 39590 (R6/9-00) case number 15-08-0224 conduct report.  Admit or Deny.

    **Response:** Objection. This admission is vague as it does not state what

Defendant was allegedly "confirming" with regards to State form 39590 case number

15-08-0224.  Subject to and without waiving this objection Defendant Conley's

immediate supervisor was a Lieutenant and he doesn't recall if he spoke with his

supervisor regarding case number 15-08-0224.  Defendant Conley would have

attempted to speak with his supervisor if he had a question regarding a conduct report

but does not recall if he spoke with his supervisor regarding case number 15-08-0224.


3.      You were told in so many words to proceed with the screening process.

Admit or Deny.

    **Response:** Objection. This admission is vague as it does not indicate who

allegedly told Defendant Conley to proceed with the screening process and lacks

necessary specificity as to the phrase "in so many words". Subject to and without

waiving these objections Defendant Conley admits the Assistant Superintendent of Re-Entry instructed him told him to proceed with screening process.

4.     Offender Derrick Neely did point out to you that David Smith was enforceing a sanction that wan not authorized by the policy.  Admit or Deny.

Response: Objection. This admission is vague as it does not specifically identify which "sanction" or action of Co-Defendant David Smith was allegedly not authorized by policy, the time or place that the statement was allegedly made to Defendant Conley by Plaintiff Neely or what was specifically stated.  Therefore, Defendant Conley is unable to admit or deny this admission. Subject to and without waiving the objection Defendant Conley is further unable to admit or deny this admission because Defendant Conley does not recall if Offender Derrick Neely stated a sanction was not authorized by policy.

5.     You did receive the staff training that's required pursuant to The Disciplinary Code For Adult Offenders fount at 02-04-101.  Admit or Deny.

Response:  Objection this admission calls for information outside the scope of Fed. Rules of Civil Procedure 26(b)(1) as pursuant to this Courts Order of May 12, 2016, Dkt 13, "plaintiff has stated a claim under the First Amendment against David Smith, Officer Conley, and Officer Richard Sidwell for being deprived of his ability to attend religious services on August 21, 2016. No claim has been made regarding the policies and procedures of the Indiana Department of Correction, the enforcement of

3

the policies and procedures of the Indiana Department of Correction or the training of Indiana Department of Correction employees. Further, Plaintiff's claim has been brought under 42 U.S.C. 1983 and "[t]he violation of a prison policy does not state a claim under § 1983. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001). Objection. This request for admission is vague and lacks necessary specificity. Indiana Department of Correction Policy 02-04-101 speaks for itself and provides for several different trainings for Indiana Department of Correction staff depending on several different factors including their position within the Indiana Department of Correction. It is unclear which training is being referenced in this request for admission. Subject to and without waiving said objections Defendant Conley admits he received training while employed by the Indiana Department of Correction.

6. You did serve the State form 39585 (R6/9-00) Notice of Disciplinary Hearing (screening report) on my on 8-24-2015. Admit or Deny.

**Response:** Objection to the extent if any Plaintiff is attempting to verify the genuineness of a document he has failed to attach the document as required pursuant to Fed. R. Civil Procedure 36(a)(2). Subject to and without waiving said objection Defendant Conley admits that is his signature on Notice of Disciplinary Hearing (Screening Report) State Form 39885 for Case Number CIC 15-08-0224 bate stamped page 000023 and attached hereto for clarity as Exhibit 1. Defendant Conley admits Exhibit 1 attached hereto states he provided Offender Neely on 8/24/15 with

4

notification by handing him Exhibit 1. Defendant Conley denies all remaining

allegations and assertions in this Request for Admission.


7. If it is brought to your attention that a conduct report is not authorizsd by the

Disciplinary Code for Adult Offender you are required to return the report of conduct

or dismiss the report of conduct. Admit or Deny.

**Response:** Objection. This request is vague, imprecise, indirect and is a

hypothetical and therefore Defendant Conley is unable to admit or deny the request as

he is unable to ascertain sufficient information to answer the vague hypothetical.


8. You did in fact at the time (8-24-2015) have a working knowledge of The

Disciplinary Code for Adult Offender. Admit or Deny.

**Response:** Admit.


9. Disciplinary sanction can only be imposed after the offender has been

afforded due process and a determination of guilt is made, unless the the offender

waives this right by signing a State form 39589 Informal Conduct Report. Admit or

Deny.

**Response:** Objection this admission calls for information outside the

scope of Fed. Rules of Civil Procedure 26(b)(1) as pursuant to this Courts Order of May

12, 2016, Dkt 13, "plaintiff has stated a claim under the First Amendment against David

Smith, Officer Conley, and Officer Richard Sidwell for being deprived of his ability to

attend religious services on August 21, 2016. No claim has been made regarding the

policies and procedures of the Indiana Department of Correction or the enforcement of

the policies and procedures of the Indiana Department of Correction. Further, Plaintiff's

claim has been brought under 42 U.S.C. 1983 and "[t]he violation of a prison policy does

not state a claim under § 1983. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001).

Objection. This request for admission is vague and lacks necessary specificity. Indiana

Department of Correction Policy 02-04-101 speaks for itself and provides for the

procedures to be followed when an offender violates the rules of conduct. Objection to

the extent if any this request for admission is not referring to IDOC policy this

admission is asking for a legal conclusion which is inappropriate for a request for

admission.


   10.  When an offender fails to comply with the informal conduct report he must

be giving a formal conduct report and the informal conduct report must be attached as

evidence to the formal conduct report.  Admit or Deny.

   **Response:**  Objection this admission calls for information outside the

scope of Fed. Rules of Civil Procedure 26(b)(1) as pursuant to this Courts Order of May

12, 2016, Dkt 13, "plaintiff has stated a claim under the First Amendment against David

Smith, Officer Conley, and Officer Richard Sidwell for being deprived of his ability to

attend religious services on August 21, 2016. No claim has been made regarding the

policies and procedures of the Indiana Department of Correction or the enforcement of

the policies and procedures of the Indiana Department of Correction. Further, Plaintiff's

claim has been brought under 42 U.S.C. 1983 and "[t]he violation of a prison policy does

not state a claim under § 1983. *See Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001).

Objection. This request for admission is vague and lacks necessary specificity. Subject to

and without waiving these objections the Indiana Department of Correction's Policy

and Procedures regarding offender discipline and religious services speak for

themselves.

11. On 8-24-2015 wen you screened offender Derrick Neely there was in fact a

Informal Conduct Report attach to the 8-21-2016 Report of Conduct. Admit or Deny.

  **Response:** Objection. This request is vague and imprecise and proposes

an impossibility. It is impossible to "screen" a conduct report prior to the conduct

report being written. Subject to and without waving this objection Defendant Conley

denies.

12. Can a religious volunteer imposed sanction on a offender in the facility

without first having that offender go through the disciplinary process? Admit or Deny;

  **Response:** Objection this request for admission is improper as it asks

Defendant to admit or deny a question which is not a fact, the application of law to fact,

or an opinion about either and therefore does not conform with Fed. Rule of Civil

Procedure 36. Objection the request for admission is vague and is unable to be

understood and therefore as Defendant Conley does not understand what Offender

Neely is asking Defendant Conley is unable to admit or deny the question and is also

unable to answer the question.

   **Response to Interrogatory:**  To the extent if any Offender Neely meant for this Request for Admission to actually be an Interrogatory Defendant Conley objects to the interrogatory as vague and uncomprehend-able.  The terms "volunteer imposed sanction" and "disciplinary process" are not defined and the question is grammatically unable to be understood.

  13.  Is a religious volunteer required to follow the same policy and administrative procedures as all other staff at the facility?  Admit or Deny;

   **Response:**  Objection this request for admission is improper as it asks Defendant to admit or deny a question which is not a fact, the application of law to fact, or an opinion about either and therefore does not conform with Fed. Rule of Civil Procedure 36.

   **Response to Interrogatory:**  To the extent if any Offender Neely meant for this Request for Admission to actually be an Interrogatory Defendant Conley states that the polices and procedures of the Indiana Department of Correction speak for themselves and govern the responsibilities and actions of volunteers at the Indiana Department of Correction.

  14.  If a religious volunteer fails to follow The Disciplinary Code For Adult Offender, can sanctions imposed by that volunteer still be enforce by the facility.  Admit or Deny.

**Response**:  Objection this request for admission is improper as it asks Defendant to admit or deny a question which is not a fact, the application of law to fact, or an opinion about either and therefore does not conform with Fed. Rule of Civil Procedure 36.  Further, objection. This request is vague, imprecise, indirect and is a hypothetical and therefore Defendant Conley is unable to admit or deny the request as he is unable to ascertain sufficient information to answer the vague hypothetical.

15.   To impose sactions on offenders in the facility the volunteer would have to submeit a State form 39590 (R4/11-13) Report of Conduct, and then he must weight for a determination of guilt.  Admit or Deny.

**Response**:  Deny.

Respectfully submitted,

GREGORY F. ZOELLER
Attorney General of Indiana
Atty. No. 1958-98


By: _____
Jennifer E. Lemmon
Deputy Attorney General, Atty. No. 28653-49
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-4848
Facsimile: (317) 232-7979
E-mail: Jennifer.Lemmon@atg.in.gov

I HEREBY AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE

FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT.

Daniel Conley

## CERTIFICATE OF SERVICE

I hereby certify that on October _11_ 2016, the foregoing *Daniel Conley's Responses to Request for Admissions* was mailed via first class United States Postal to the following:

Derrick D. Neely-Bey Tarik-El
DOC# 973338
Pendleton – CIF
Correctional Industrial Facility
Inmate Mail/Parcels
5124 West Reformatory Rd.
Pendleton, IN 46064
*Pro-Se*

_s/ Jennifer E. Lemmon_____
Jennifer E. Lemmon
Deputy Attorney General

OFFICE OF INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:  (317) 232-4848
Fax:  (317) 232-7979
Email:  Jennifer.Lemmon@atg.in.gov



**NOTICE OF DISCIPLINARY HEARING
(SCREENING REPORT)**
State Form 39585 (R6 / 9-00)

INDIANA DEPARTMENT OF CORRECTION

| Name of offender | Offender's DOC number | Facility |
|---|---|---|
| Neely Derrick | 973338 | C.I.F |
| Alleged offense | Code number | Offense date |
| Refusing an order | 347 | 8/21/15 |
| Reported by | | Housing unit |
| D. Smith | | 4A-1B |

You are being referred for a hearing on the above code violation. You may enter a plea of *guilty* or *not guilty* to this offense, as indicated below. A plea of guilty or a finding of guilt may result in the imposition of sanctions in accordance with the sanctioning guidelines in Policy 02-04-101, "The Disciplinary Code for Adult Offenders." If you choose to plead guilty, you are admitting the material allegations and thus waive the rights indicated below; you will be scheduled to appear, by yourself, for a disposition hearing. If you choose to plead not guilty, you will be scheduled to appear before the appropriate disciplinary hearing body. If you plead not guilty, the following rights shall apply to your hearing:

　❋ The right to lay representation, in accordance with the administrative procedures for Policy 02-04-101.
　❋ The right to request a witness(es) in your behalf, subject to approval.
　❋ The right to a fair hearing before impartial decision makers.
　❋ The right to a minimum of twenty-four (24) hours notice prior to appearing on a given charge.
　❋ The right to present documentary evidence in your behalf.
　❋ The right to be present at the hearing, except while deliberations are in progress.
　❋ The right to speak in your own behalf at the hearing. If you choose to remain silent, your silence may not be held against you.
　❋ The right to a written copy of findings of fact in your case.

*K.D.N*

| My plea in the above cited case is: | Notification date | Notified by | Time |
|---|---|---|---|
| ☐ Guilty   ☒ Not Guilty | 8/24/15 | S. Curby | 8.07 ☒ AM ☐ PM |
| I wish to have a lay advocate | Name and number of advocate | | |
| ☐ Yes   ☒ No | | | |

☐ I do not wish to call any witnesses.
☒ I wish to call the following witness(es):   (Specify name(s) and number(s) or name(s) and title(s) for staff and the expected testimony)

CHAPLAIN SMITH

WHY AM I NOT ALLOWED TO SPEAK AT THE — ALREADY
MST of A MEETINGS BUT EVERYONE ELSE CAN? — ANSWERED

DID YOU GIVE ME AN ORDER ON 8/21 TO
REMAIN SILENT? — ALREADY ANSWERED

BOTH QUESTIONS WERE ALREADY ANSWERED BY CHAPLAIN SMITH
WITH AN ATTACHMENT TO CONDUCT REPORT.   *D.N.Neely sr*

☐ I do not request any physical evidence.
☒ I wish to request the following physical evidence: (Specify the evidence to be considered)

CHAPEL CAMERA BY CHAPLAINS OFFICE BETWEEN 8.00A–10.00A (9:20)
DOES THE CHAPLAIN EVER SPEAK WITH ME? IS HE PRESENT
AT OUR MEETING?

NOTE: Failure to request witness(es) or physical evidence may waive your right to have the witness' testimony or physical evidence presented / considered at your hearing.

| Case number | Date assigned | Earliest date of hearing | Nature of hearing | Waive 24 hour notice of hearing |
|---|---|---|---|---|
| CIF-15-08-0224 | 8/21/15 | 8/28/15 | ☒ Full  ☐ Disposition | ☐ Yes  ☒ No |

Your case is scheduled for hearing / disposition as noted. You will be notified to appear on or after that date, subject to postponement.

I have been notified of the above cited case filed against me and have been advised of my rights under due process as enumerated above.

| Signature of witness | Signature of offender |
|---|---|
| *D.N.Neely sr* | *Derrick Neely* |

DISTRIBUTION: White - Facility Packet;  Canary - Central Office;  Pink - Offender

**EXHIBIT**

000023

|  State of Indiana<br>Indiana Department of<br>Correction | Effective Date<br><br>11/10/2014 | Page 1 of<br><br>35 | Number<br><br>01-03-101 |
|---|---|---|---|

## POLICY AND ADMINISTRATIVE PROCEDURE
Manual of Policies and Procedures

| Title |
|---|
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** |

| Legal References<br>(includes but is not limited to)<br><br>IC 7.1-1-2-3(a)(3); 11-8-2-5(a)(8); 11-11-4-1 | Related Policies/Procedures<br>(includes but is not limited to)<br><br>00-02-301; 01-03-102; 01-03-104; 02-01-101, 02-01-103; 02-01-104; 04-01-301 | Other References<br>(includes but is not limited to)<br>ACA:<br>ACI: 4-4018; 4-4039; 4-4300; 4-4381; 4-4456; 4-4463<br>JTS: 5G-02 thru 5G-08 |
|---|---|---|

I.   PURPOSE:

This policy establishes standards for an offender's exercise of religious freedom and the delivery of religious services within the Department of Correction.

II.   POLICY STATEMENT:

Offenders are entitled to exercise the right of religious freedom in accordance with all applicable laws. The Department shall not require participation in any religious belief and/or practice.

Offenders' exercise of religion and the provision and delivery of religious services shall be guaranteed consistent with current law.

Adequate resources shall be made available by the facilities to support the Department's religious program.

The Department shall provide chaplaincy services at the facilities. The goal of the chaplaincy services is to serve the religious needs of the offenders, to provide professional expertise on religious belief and practice in the correctional environment and to provide impartial leadership in the facility's religious services program.

The Department shall establish a monitoring and evaluation system that ensures compliance with this policy.

III.   DEFINITIONS:

For the purpose of this policy and administrative procedure, the following definitions are presented:

000025

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 2 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

A.     ACCREDITED REPRESENTATIVE: A person authorized by the central or local governing body of a faith group or denomination to perform religious services, rituals or programs.

B.     CHAPLAIN: An endorsed religious professional employed by the Department of Correction to provide for the delivery of spiritual care and the management of a facility religious services program.

C.     CLERGY OF RECORD (CLERGY): A single spiritual advisor designated by the offender who is an accredited representative or minister of the offender's personally designated religion or another person, not a family member, designated by the offender to provide spiritual advice. *Match with visitor policy*

D.     CONFIDENTIALITY: Privileged communication between an ordained clergy and a client/confessor not disclosed regardless of the content of the communication, except by permission of client/confessor or by law.

E.     CONVERSION (RITE OF): The ceremony associated with the experience of a definite and decisive adoption of a religion.

F.     CORPORATE RELIGIOUS PRACTICE: Group religious practice prescribed by the designated religion, and which includes rituals of worship.

G.     DIRECTOR: The Director of Religious Services & Community Involvement.

H.     DOCTRINE: A principle of faith considered as true and beyond dispute by a specific faith group.

I.     FAITH GROUP: A religious body sharing the same or similar beliefs, practices, rites, etc.

J.     INDIVIDUAL RELIGIOUS PRACTICE: A religious practice prescribed by a religion and performed individually, (e.g. prayer).

K.     IMMEDIATE FAMILY MEMBER: The immediate family of an offender is his/her father, mother, siblings, spouse, children, grandparents, grandchildren, including those with a "step," "half" or adoptive

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number<br>01-03-101 | Effective Date<br>11/10/2014 | Page<br>3 | Total Pages<br>35 |
| Title<br>**THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

relationship and those persons with the same relationship to the offender's spouse."

L.   OFFENDER INFORMATION SYSTEM (OIS): The IDOC automated offender information computer system.

M.   ORDAIN: To invest with ministerial, priestly or rabbinical authority.

N.   PROSELYTIZE: A willful attempt to pressure an individual to convert from his/her religion to another's religious beliefs or practices.

O.   RELIGION: The service and worship of a god or the supernatural; organized system of faith and worship; profession and/or practice of religious beliefs personally or corporately.

P.   RELIGIOUS ITEMS (ARTICLES): Items required for, or used in, the practice of religious traditions.

Q.   RELIGIOUS BELIEF: A principle, dogma, belief, or doctrine held by its adherents as true.

R.   RELIGIOUS CEREMONY, TRADITIONAL OR SACRAMENTAL RITE: A formal act or series of acts, often symbolic, prescribed by a religion.

S.   RELIGIOUS FREEDOM: The right to choose one's beliefs, to worship, and to live in accordance with those beliefs without external constraint or coercion.

T.   RELIGIOUS LITERATURE: Material pertaining to religious belief and/or practice.

U.   RELIGIOUS PROGRAM: A group activity conducted by or under the supervision of religious services staff and designed specifically for offender worship, religious study, faith development, spiritual and/or personal growth.

V.   RELIGIOUS PUBLICATIONS: Publications of a religious nature printed and issued from a religious or secular press and distributed free of charge or for sale, including, but not limited to, books, periodicals, tracts, newspapers, music/song books, video/audio recordings, or computer software.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number 01-03-101 | Effective Date 11/10/2014 | Page 4 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

W.  RELIGIOUS SERVICES ASSOCIATE:  A volunteer recognized by a religious body and recruited by the facility to provide religious services as directed by a facility Chaplain or Superintendent/designee.

X.  RELIGIOUS SPECIALIST:  A contractual religious professional employed by the Department of Correction to provide for the delivery of religious worship/study programs and spiritual care for a particular faith group of offenders.

Y.  RELIGIOUS SYMBOLS:  A visible sign representing a belief or an association with a particular religion.  (Example: A religious medallion in the form of or on which is imprinted a symbol related to a particular faith, and which may be worn or carried).

Z.  SPIRITUAL CARE:  Ministry provided or authorized by a Chaplain that develops, supports, or enhances the spiritual or personal growth of offenders, without prejudice, regardless of faith preference or lack thereof.

AA.  VOLUNTEER:  Any person who freely provides a facility with a service with no significant monetary or material gain from the Department.

BB.  WORSHIP SERVICE:  The exhibition by acts of mind, body, or both for honor and reverence that the particular religion deems appropriate.

IV.  SCOPE OF RELIGIOUS SERVICES PROGRAM:

The Religious Services Program shall include programming and services related to the support and growth of offenders' spiritual, religious and moral development as well as services to offender families and staff as appropriate.

V.  ADMINISTRATION:

The Department shall appoint a Director of Religious Services and Community Involvement to administer the Religious Services Program.  This Director shall report to the Assistant to the Commissioner.

It is the responsibility of the Director:

A.  To determine standards for religious services programs and Chaplaincy staff;

000028

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction **Manual of Policies and Procedures** | | | |
| Number 01-03-101 | Effective Date 11/10/2014 | Page 5 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

B.　　To determine the programmatic components and procedures for religious programming throughout the Department;

C.　　To provide guidance to facilities in the interpretation of and compliance with this policy and administrative procedure and in the development and management of their religious services programs and staff;

D.　　To serve as a consultant on religious belief and practice to the Department; and,

E.　　To advise facilities on the structural and working relationship between religious services and community involvement.

The Director shall recommend, in consultation with Superintendents and the Executive Director/Adult Facilities, the Executive Director of Programs, the Executive Director/Inspector General and Public Safety Liaison, or the Executive Director/Youth Services, to the Deputy Commissioner the religious services staffing patterns for each facility.

The Director shall prepare and keep current a Departmental *Handbook of Religious Beliefs and Practices* which shall provide basic information on the various religious faiths commonly claimed by offenders. A copy of the Handbook shall be distributed to appropriate facility staff.

The Director and the Division of Staff Development and Training shall develop training (video and/or written material) related to religious beliefs and practices in the correctional setting. This training shall be provided at the Correctional Training Institute New Employee Orientation training. It is the responsibility of the Superintendent/designee to ensure that staff members having direct offender contact are provided new employee and in-service training in religious practice. Religious services information specific to a facility shall be developed by the Chaplain and facility training staff for this purpose.

The Superintendent shall be responsible for ensuring the development and administration of the operational components of the facility religious services program. The Chaplain(s) shall be responsible for the development, management, and supervision of the facility religious services program. If the facility does not have a full or part-time Chaplain, these duties shall be assigned to a designated staff person who, in consultation with the Director, shall act as coordinator of the religious services program. Selection of the religious program coordinator shall be based upon:

| POLICY AND ADMINISTRATIVE PROCEDURE<br>Indiana Department of Correction<br>**Manual of Policies and Procedures** | | | |
|---|---|---|---|
| Number<br>01-03-101 | Effective Date<br>11/10/2014 | Page<br>6 | Total Pages<br>35 |
| Title<br>**THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

- Related experience in program development, implementation, and supervision;
- Ability to communicate well verbally and in writing;
- Adequate time to perform required functions; and,
- Related community experience and/or education.

Communication is encouraged between the Superintendent/designee, the Chaplain and the Director regarding issues and/or concerns related to the delivery of the religious services program and staff. The Superintendent/designee shall notify the Director in a timely manner of any violations of security regarding religious programming and/or volunteers.

The Director shall consult with the Chaplain and/or Superintendent/designee, and other staff as necessary, when responding to complaints or problems concerning facility religious services staff, programming, and/or volunteers.

The Superintendent/designee shall consult the Chaplain and/or Director regarding facility questions or concerns about religious beliefs or practices.

VI.   RELIGIOUS SERVICES COMMITTEE:

The Superintendent/designee shall appoint a Religious Services Committee. The intent of this committee is to assist in the coordination of the religious services program with other program and operational areas. This Committee shall be composed of the following persons:

A.   Chaplain(s) or Religious Program Coordinator (Chairperson);
B.   Community Involvement Coordinator;
C.   Custody Supervisor or designee;
D.   Program Staff representative;
E.   Assistant Superintendent/Re-Entry;
F.   Other staff, at the discretion of the Superintendent/designee, impacted by or whose operations support the religious services program; and,
G.   Religious Services Volunteer(s).

The Religious Services Committee shall:

- Provide assistance and feedback in the operational, programmatic and volunteer issues related to the religious services program.
- Review progress of religious services performance objectives.
- Make recommendations regarding religious programs and services.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction **Manual of Policies and Procedures** | | | |
| Number 01-03-101 | Effective Date 11/10/2014 | Page 7 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

- Review and recommend action regarding any restriction or limitation of authorized religious practices, items, or literature consistent with Procedure XV.

The Religious Services Committee shall meet at least quarterly. Minutes of these meetings shall be prepared. A copy of the minutes shall be provided to the Superintendent and the Director.

VII.   RELIGIOUS SERVICES PERSONNEL:

A.   Personnel Qualifications:

Staff Chaplains shall meet the minimum qualifications for employment as a Chaplain, as established by the Indiana State Personnel Department (SPD).

The Staff Chaplain shall maintain the endorsement of his/her religious body as a condition for continuing employment as a Chaplain. In the event an endorsement lapses or the Chaplain wishes to change his/her ecclesiastical endorsement to a different endorsing body, the Chaplain shall provide written notification to his/her supervisor and the Director of the rationale for change and provide documentation of the process of re-endorsement. The endorsement must be obtained within a reasonable amount of time. A copy of the new endorsement shall be retained in the Chaplain's personnel packet, with a copy to the Director.

B.   Employment of Personnel:

The Director shall assist the facilities in the recruitment of religious services personnel. The Director and the Superintendent/designee shall work cooperatively to ensure the employment of competent and qualified persons. The Director shall be informed of and, at the discretion of the Director, shall participate in the interview process.

The Superintendent/designee shall inform the Director in a timely manner of any vacancies and/or personnel issues that have an impact on religious services program delivery.

Adequate support staff shall be employed to facilitate the delivery of the religious services program, including clerical services, offender clerks, and/or program supervisory staff (e.g., custody).

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 8 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

Facilities may use the contractual services of religious specialists to provide leadership of a particular religious faith group; to supplement the Chaplaincy staff; or, when there is no staff Chaplain, to develop and manage the religious services program. The Director shall review all contracts prior to submission to the Fiscal Division for approval. Persons contracted to provide religious services shall be ordained, commissioned, or approved to function as a qualified accredited representative (consistent with the practice of the faith group); authorized to serve in the prison setting by an appropriate religious authority; and, experienced in leadership of a related faith group. Contract religious specialists shall be supervised by the facility Chaplain or, in facilities with no Chaplain, the appropriate program manager.

C.   Professional Development:

The professional development of Religious Services program staff shall be encouraged and endorsed. Professional development activities may include conferences, visitations and intra-departmental and inter-facility religious services staff meetings. Religious Services personnel may attend professional development activities with the approval of the Superintendent/designee and in accordance with all applicable state travel rules and regulations.

The Superintendent/designee may consult the Director to verify the effectiveness of the professional development program. All conference attendance requests shall be submitted in accordance with the Department's fiscal procedures.

The Director, in collaboration with the Director of Staff Development and Training, shall develop intra-departmental training. Attendance shall be required. Fiscal impact shall be considered in the scheduling of intra-departmental training.

In order to maintain an ecclesiastical endorsement, Chaplains are expected to attend retreats, clergy meetings, and judicatory meetings with their respective faith groups. During the course of a year, this paid leave time normally will not exceed ten (10) working days. Attendance of up to five (5) days shall require the approval of the Superintendent/designee and shall be in accordance with applicable state travel rules and regulations. Any additional days may be subject to review by the Director, at the request of the Superintendent/designee. The Director is considered as having Chaplain status, and shall be accorded these days with the approval

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
| --- | --- | --- | --- |
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 9 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

of the Executive Director of Programs in accordance with applicable state travel rules and regulations.

Continuing endorsement also requires Chaplains to maintain a strong link with the local faith community. Chaplain's work schedules shall allow for regular attendance at his/her primary community worship service, <u>except when this conflicts with religiously required times of worship</u> for which the Chaplain provides leadership.

D.   Religious Services Staff:

 Chaplains are to function as religious professionals within the correctional setting and shall not undertake or be required to undertake roles that are contrary to that of spiritual care provider.

Chaplains exercise their profession in a multi-faith setting, which requires cooperation with representatives of religious expressions different from their own. The Chaplain shall provide  for the spiritual care of all requesting offenders regardless of faith preference or lack thereof, and with the same commitment and regard shown to members of his/her own faith preference.

Chaplains (or designated staff in the absence of a staff Chaplain) are responsible for the development, coordination, assignment of resources, and management of the religious programming and the community resources necessary to meet the assessed needs of offenders. Duties include but are not limited to:

1.   Maintain a visible presence in a facility;
2.   Serve as the Religious Services Department Head.
3.   Provide for services of worship, study, and spiritual care to the offender population, with the intent to strengthen the participation of offenders in the faith life of their own communities; provides services of worship/study and sacramental rites for their own faith group;
4.   Coordinate and manage approved religious programs and associated volunteers;
5.   Coordinate access to appropriate facility space and equipment, religious publications (print, audio, and audio/visual), and approved religious materials;
6.   Submit religious services reports as required or requested by the Director;

| POLICY AND ADMINISTRATIVE PROCEDURE | | | | |
|---|---|---|---|---|
| Indiana Department of Correction | | | | |
| **Manual of Policies and Procedures** | | | | |
| Number | Effective Date | | Page | Total Pages |
| 01-03-101 | 11/10/2014 | | 10 | 35 |
| Title | | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | | |

7. Advise the Superintendent/designee on the interpretation of this policy and administrative procedure.

8. Articulate the spiritual needs and rights of offenders to facility administration and staff.

9. Integrate Chaplaincy services into the life of the facility through routine involvement with other staff and attendance at appropriate staff meetings;

10. Interpret to the community the needs and concerns of incarcerated persons and the community's role in support of ministry to this population.

11. Provide services to offender families as approved by the Superintendent/designee consistent with duties related to this policy and administrative procedure and the SPD job description for Chaplain.

12. Act in an advisory capacity to the Superintendent/designee regarding pastoral services to staff, and may perform other services as approved by the Superintendent/designee.

13. Verify a prospective Clergy, or Clergy of Record's status as a spiritual advisor and his/her relationship to the offender, if requested by the Superintendent or designee.

14. Maintain positive, continuous interaction with the facility administration in the areas of spiritual, moral welfare, and ethical concerns.

15. Provide for follow-up spiritual care upon offender request or staff referral within a reasonable time. The Chaplain shall provide training to staff in the appropriate delivery of death/illness notices and the grief process. In the event of an offender death at a facility or hospital, Chaplains shall be notified, and may be requested to notify the offender's family. The Chaplain may provide for follow-up care with offenders and/or staff affected by the offender's death.

16. In the event of the death of an immediate family member of an offender the Chaplain or designated staff receiving notification shall:

    a. Complete State Form 3810, DEATH NOTICE, and make special note if the request is to visit a seriously ill immediate family member;

    b. Verify the death or serious illness and relationship to the offender;

    c. Forward request to facility Chaplain if taken by staff other than the Chaplain;

000034

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 11 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

        d.   Discuss the issue with the affected offender and explain the temporary leave process and the offender's options (e.g., video of the service);

        e.   Assist the offender in the completion of State Form 7797, APPLICATION FOR TEMPORARY LEAVE FOR COMMITTED OFFENDER, if the offender is requesting a bedside visit or to go to the funeral;

        f.   Receive State Form 7797 from the Offender;

        g.   Record the verification on State Form 7797;

        h.   Forward the request, with appropriate notification, to the Supervisor of Classification/designee; and,

        i.   In the absence of a facility Chaplain, Procedures a through h shall be performed by a staff member designated by the Superintendent.

17.   Provide spiritual care to staff as appropriate.

At those facilities with more than one staff Chaplain, duties shall be shared as directed by the Superintendent/designee.

E.   Evaluation

The Superintendent/designee shall notify the Director of the Chaplain's annual performance appraisal. The Director may provide documented input to the Superintendent/designee related to the Chaplain's professional services. The Director shall be provided with a copy of the completed annual performance appraisal for each staff Chaplain.

Evaluation of religious services personnel shall include the observation of staff in the performance of assignments.

The Superintendent/designee shall provide the Director with a copy of any documents detailing disciplinary action taken against a staff Chaplain.

VIII.   RELIGIOUS SERVICES INFORMATION:

The Director may prepare a brochure regarding religious programs offered within the Department. This brochure shall be made available to offenders in the intake units and shall address the availability of Chaplains and religious programming and may also be made available to the public. This brochure shall be updated annually or as necessary to maintain current and accurate information.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 12 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

In addition, the Chaplain(s) or other designated staff shall prepare a descriptive summary, including time and location, of facility religious programs and the availability of pastoral care. This summary shall be made available to offenders during the facility Admission and Orientation process and shall be posted in each housing unit. This summary shall be updated as often as necessary to maintain current and accurate information.

Chaplains shall be included in the facility orientation of new offenders, to facilitate dissemination of religious information and invite participation in religious programming. When an in-person presentation is not feasible, a written or videotaped orientation may be used.

IX.  **PROGRAM BUDGET PREPARATION:**

In order to facilitate religious program planning and management decisions at the facility level, the Chaplain shall advise the Superintendent/designee of the perceived religious services program needs to be considered in the development of the facility budget. Religious services program needs include:

A.  Personnel services (Chaplaincy staff; clerical, offender clerks/maintenance assistance);
B.  Program curricula, supplies and materials (printed, audio/video, etc.);
C.  Office equipment (computers, printers, copiers, etc.);
D.  Other equipment (audio-visual, musical instruments, sound system, etc.);
E.  In-state and Out-of-state travel (to meetings, conferences, etc.);
F.  Physical Plant maintenance or construction needs; and,
G.  Items required for group religious practices.

Religious Services funding may be made available from the Recreation Fund, consistent with Policy and Administrative Procedure 04-01-105, "Recreation Fund Administration." Funds allocated in support of faith groups shall be used in an equitable manner. Items purchased with recreation funds are for the use of the chapel in general, or a particular service. Items for personal use/possession (medallions, Bibles/Korans, kuffis, yarmulkes, etc.) shall not be purchased with recreation funds, but are the responsibility of the individual.

X.  **COMMUNITY INVOLVEMENT:**

The Director and facility Chaplains shall develop and maintain a relationship with community religious resources for the enhancement of facility religious services programming. This action shall be pursuant to Policy and Administrative

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 13 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

Procedure 01-03-103, "The Development and Delivery of Community Involvement Program".

The Superintendent/designee shall ensure that utilization of community volunteers in religious programs is encouraged, is in accordance with all applicable procedures, and shall ensure that volunteer religious programs are provided adequate resources, supervision, and management support. Religious services volunteers and religious programs shall be approved by the Chaplain prior to their submission to the Superintendent/designee for final approval. Chaplains shall participate in the orientation and in-service training of all volunteers participating in religious programs.

State Form 8603, CLERGY AND RELIGIOUS PROFESSIONAL APPLICATION, shall be used to determine the suitability of applicants who apply to lead programs of worship, religious ceremonies, traditional or sacramental rites. Questions regarding an applicant's qualifications may be referred to the Director.

Access to offenders by approved religious volunteers shall be limited to the designated religious services program area(s). Access to offenders in other areas of the facility shall occur only as recommended by the Chaplain and approved by the Superintendent/designee.

Religious services volunteers, lay or professional, may not be on an offender's visiting list at the same facility. Exceptions to this provision may be made upon the recommendation of the Chaplain and with the approval of the Superintendent/designee, in conjunction with a specific religious program, such as the Purposeful Living Units Serve (PLUS) program.

Staff shall not touch personal religious items, such as medicine bags, considered sacred by the wearer and worn as part of the traditional or religious dress of a volunteer or religious specialist. These items may be thoroughly inspected visually, with the volunteer handling the items. When a visual inspection indicates no threat to security, these items may be worn into the facility for the scheduled programming.

In the event there is a security concern about a particular item, the Custody Supervisor/designee and the Chaplain, if present, shall be consulted. The Superintendent/designee shall make the final decision as to whether or not the items may be worn into the facility. This decision shall be documented with a copy provided to the Superintendent/designee and the Chaplain.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number<br>01-03-101 | Effective Date<br>11/10/2014 | Page<br>14 | Total Pages<br>35 |
| Title<br>**THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Facility search procedures/post orders shall reflect these considerations.

XI. PRIVILEGED COMMUNICATION:

As a doctrine of some faiths, clergy must maintain the confidentiality of pastoral communications. Face to face, private spiritual conversations between clergy and an offender shall generally be considered confidential.

However, there are significant restrictions in a correctional setting. Clergy confidentiality does not apply when:

- Reporting is required by state or federal law (i.e. child abuse)
- An offender has disclosed information to clergy that reasonably identifies a serious threat to the safety and security of facility, staff, offenders, or the general public.
- Communication is made outside of clergy's professional role
- Communication is made by mail, telephone, email or other means.

Clergy shall be informed of this policy and complete State Form 47031, AGREEMENT: CLERGY CONFIDENTIALITY.

XII. PROSELYTIZING:

Offenders shall be free to practice and adhere to the requirements of a personal religious belief within the limitations of this policy and administrative procedure. No offender shall be required to, or coerced into, adopting or participating in any religious belief or practice.

The sharing of information by Chaplains, volunteers, and offenders regarding religious belief and practice is acceptable.

Staff and volunteers shall not criticize or ridicule the religious beliefs or practices of others, nor shall they attempt to pressure offenders to change their religious belief or preference.

In those instances in which faith groups holding similar beliefs and practices worship and/or study together, doctrines expressed shall be commonly held or shall be identified as distinct to that faith group.

**POLICY AND ADMINISTRATIVE PROCEDURE**

Indiana Department of Correction

**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 01-03-101 | 11/10/2014 | 15 | 35 |

| Title |
|---|
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** |

XIII.   OFFENDER RELIGIOUS PREFERENCE:

Offenders shall be limited to designating one (1) religious preference at a time.

A.   Offenders Committed To Adult Facilities:

Upon admission to an intake unit, offenders may designate a faith preference to be registered in the Offender Information System (OIS). OIS Designations include:

| | | |
|---|---|---|
| A: Native/Indigenous | J: Jewish | T: Islamism (MSTA) |
| B: Buddhist/Eastern | M: Muslim/Islam | W: Wicca |
| C: Catholic | N: None | X: Decline to Answer |
| E: Eckankar | O: Other | G: General Christian |
| R: Rastafarian | Z: Asatru/Odinism | I: Hebrew Israelite |
| S: Satanism | D: Orthodox Christian | |
| Y: Yahwist/Messianic | | |

If "Other" is utilized, a note describing the offender's religious identity shall be emailed to the Director. The Director may classify the offender in an existing category and/or make a note in the Offender Case Management System (OCMS).

An offender may change his/her religious preference in writing, once every six months.

Offenders wishing to change their religious preference shall provide written notification to the Chaplain or other designated staff. State Form 47686, STATEMENT OF OFFENDER'S RELIGIOUS PREFERENCE, shall be used for this purpose.

If the facility Chaplain or religious specialist or religious service volunteer has performed the required rites of membership/inclusion, this may be noted on State Form 47686.

When the completed State Form 47686 has been received the offender's religious preference shall be changed in OIS. This information shall be retained in the offender's packet and appropriate staff notified.

If the offender possesses religious items pertaining to the former religious preference, these items shall be sent out of the facility or otherwise

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 16 | 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

disposed of by the offender prior to the receipt of religious items related to the current preference.

Neither race nor national/tribal identity shall be used as criteria for participation in religious programs or verification of religious preference.

Denial of a change of religious preference must be approved by the Superintendent/designee, in consultation with the Chaplain and/or Director. The reason for the denial shall be stated in writing and attached to State Form 47686.

B.  Offenders Committed To Division of Youth Services Facilities:

Offenders under the jurisdiction of the Division of Youth Services may designate a religious faith preference at intake. This designation shall be changed only with the written permission of the Superintendent/designee, based upon a consultation with the youth and/or the youth's parent (s) or guardian.

XIV.  AUTHORIZATION OF RELIGIOUS GROUP ACTIVITY, OFFENDER POSSESSION OF RELIGIOUS SYMBOLS AND/OR ITEMS ESSENTIAL TO THE PRACTICE OF A RELIGIOUS FAITH:

Religious practice and symbols/items related to a religion unfamiliar to the Department and for which a request for services or religious symbols/items has been made shall undergo an authorization process. Such requests shall be referred to the Director. State Form 47684, REQUEST FOR AUTHORIZATION shall be used.

The Director shall recommend authorization or denial of religious practice and offender possession of religious items and symbols essential to the practice of the religion to the Deputy Commissioner, Executive Director of Adult Facilities, the Executive Director/Inspector General and Public Safety Liaison, Executive Director of Youth Services, Executive Director of Programs, and Executive Director of Legal Services, who shall make the final determination by consensus. This decision shall be subject to the approval of the Commissioner. State Form 47685, AUTHORIZATION OF RELIGIOUS GROUP ACTIVITY, OFFENDER POSSESSION OF RELIGIOUS SYMBOLS, LITERATURE AND ITEMS REQUIRED FOR THE PRACTICE OF RELIGION, shall be used for the purpose of authorization.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 17 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Authorization, restriction, or denial of such practices and items shall take into consideration operational and programmatic components; information provided by the religious authority, Superintendent/designee and Chaplains; the recommendation of the Director; the factors listed in Procedure XV and any other relevant information. An acceptable accommodation shall be considered prior to restriction or denial. Restrictions or denials shall be substantiated in writing as indicated in Procedure XV.

During leisure or recreation periods, offenders may gather for religious discussion and/or prayer, provided the gathering is not disruptive to the area or operation of the unit or facility. No offender shall be coerced into participating. No extra movement lines shall be authorized to facilitate a gathering.

XV.   FACILITY RESTRICTION OR DENIAL OF AN AUTHORIZED RELIGIOUS PRACTICE OR POSSESSION OF AN AUTHORIZED RELIGIOUS ARTICLE:

When a Superintendent/designee considers that an authorized religious practice, item, or symbol should be restricted based upon facility mission, identifiable security concerns, and/or management concerns, the Superintendent/designee shall notify the Director of the request for an exemption.

Exemptions shall be justified in a written report and shall include the following:

A.   What is being restricted or denied;

B.   The purpose of the restriction or denial; and,

C.   Whether the restriction or denial places a substantial burden on the offender's right to practice the religion.

If the restriction or denial places a substantial burden on the offender's practice of the religion, the report shall include the following:

- That a compelling state interest substantiates the restriction or denial (in most cases this interest will be facility security which courts have recognized);
- Substantiation that the restriction or denial is the least restrictive means available for achieving the compelling state interest; or, that there is an acceptable method of accommodating the offender's right to practice the religion in lieu of the restriction or denial; and,
- If there is an acceptable accommodation, the report should specify the method of accommodation.

000041

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 18 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Authorization or denial of the restriction by a facility shall be on based on the consensus of the Director, the Executive Director of Programs, the Deputy Commissioner, the Executive Director of Youth Services, the Executive Director of Adult Facilities, the Executive Director/Inspector General and Public Safety Liaison, and the Executive Director of Legal Services.

If the Superintendent considers an authorized religious practice/article an immediate threat to safety and security, the practice/article may be temporarily restricted pending resolution of the review process.

XVI.   RELIGIOUS DISPUTE PROCEDURE:

Whenever possible, disputes related to religious practice shall be resolved by the facility Chaplain with the concurrence of the Superintendent/designee.   The Chaplain shall consult with the Director to ensure uniformity of religious practice throughout the Department.   If the facility has no Chaplain, the Superintendent/designee shall refer such matters to the Director.




A.     If assistance is required in resolving a dispute, the Director shall consult with other religious authorities who will be considered appropriate if:

1.     The individual is recognized as having special knowledge or insight within the specific religious tradition;
2.     The individual is an accredited representative of the religion; and,
3.     The individual is not under the jurisdiction of the criminal justice system.

B.     The Director shall advise the Superintendent/designee regarding the relevant information and authoritative outside sources with whom the Director has consulted.

C.     The Superintendent/designee shall determine whether the matter in question involves a threat to security, safety, or orderliness.

D.     Whenever there is a conflict between a legitimate religious interest and a facility interest relating to facility security, safety, health, or orderliness, the matter shall be resolved consistent with Section XV.

E.     An offender may grieve the resolution in accordance with Policy and Administrative Procedure 00-02-301, "The Offender Grievance Process."

| **POLICY AND ADMINISTRATIVE PROCEDURE** Indiana Department of Correction **Manual of Policies and Procedures** | | | |
|---|---|---|---|
| Number 01-03-101 | Effective Date 11/10/2014 | Page 19 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

XVII.  RELIGIOUS PROGRAMS:

A.  APPROVAL OF RELIGIOUS PROGRAMS

Religious programs approved by the Superintendent/designee shall be scheduled in a fair manner with regard to facility security, order, resources, and manageability. Staff shall be assigned to supervise religious programs as needed to provide adequate security and orderliness. Provisions for approval and/or continuation of programs include, but are not limited to:

1. Offender interest in the program;
2. The maintenance of supervision consistent with the facility security level;
3. Facility and volunteer resources; and,
4. Scheduling and program area availability.

Worship and study activities may be consolidated to include all like groups which share reasonably similar beliefs and practices, i.e. General Christians may worship/study as a group. For these consolidated groups, preference shall be given to volunteers who indicate the willingness and ability to worship and teach in a non-sectarian manner.

B.  RESTRICTIONS FROM APPROVED RELIGIOUS PROGRAM:

Conditions for restriction of an offender from an approved and scheduled religious program or activity include, but are not limited to:

1. The offender's designated religious preference is other than that related to the activity;
2. The offender is not listed in the facility sign-up/count letter for that program; or,
3. Space limitation, when to include offenders designating another religious preference would preclude the attendance of offenders designating the religious faith associated with the program.

A "Report of Conduct" may be written for any offense related to the religious programs consistent with Policy and Administrative Procedure 02-04-101, "The Disciplinary Code for Adult Offenders," or Policy 03-02-101, "Code of Conduct for Juvenile Offenders." Offenders may be removed from religious services programs for a reasonable time if found guilty by the Disciplinary Hearing Body.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 20 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

If found guilty of an offense related to a religious program, the offender may be restricted from the religious service for the following:

1. First guilty finding: Fifteen (15) day restriction;
2. Second guilty finding: Thirty (30) day restriction; and,
3. Third guilty finding: Six (6) month restriction.

- Offenders may be removed from a corporate religious worship service for disruptive behavior, behavior deemed inappropriate with the practices of the particular faith group, or for behavior that is inconsistent with safety and security. Any such action shall be documented, but does not require a "Report of Conduct." The Offender shall submit a written request to the Chaplain/Religious Program coordinator for return to the program.

- The Superintendent may restrict attendance by particular housing units or individuals if he/she believes it is necessary to ensure safety and security. In such situations, attendance may be rotated to ensure reasonable access to services.

Offenders assigned to a protective custody, administrative restrictive status housing, administrative hold or disciplinary restrictive status housing shall be restricted to programs approved specifically for these units.

C.     RELIGIOUS PROGRAM LEADERSHIP:

To protect the integrity and authenticity of belief and practice, Chaplains, religious specialists or qualified volunteers, shall provide leadership of religious programs whenever possible.

Upon approval of the Superintendent/designee and when authorized and supervised by the Chaplain or other staff, an offender(s) may assist with religious programs.

When a staff Chaplain is not empowered to conduct a religious program or ceremony according to the tenants of a particular faith or custom, and there is sufficient offender interest, the Chaplain or the Community Involvement Coordinator may seek to recruit appropriate individual(s) from the community. Offenders may provide names of possible resource persons and/or the Director may be contacted for assistance.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction **Manual of Policies and Procedures** | | | |
| Number 01-03-101 | Effective Date 11/10/2014 | Page 21 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

If approved staff or qualified volunteer leadership is not available, the Superintendent or designee may select an offender to assist with the facilitation of the faith group's service provided:

1.    Similar services do not already exist at the facility;
2.    There is sufficient offender interest; and,
3.    Staff supervision is provided.

An offender selected by the Superintendent to facilitate a service shall:

- Be free of findings of guilty of Class A conduct reports for one (1) year and Class B for six (6) months:
- Be approved by the facility Security Threat Group Coordinator;
- Not delegate responsibilities to another offender; and,
- Comply with other requirements as deemed necessary by the Superintendent

Offenders approved to assist in this matter may be limited to a set term of twelve (12) months. If the Superintendent wishes to extend an offender's facilitation past twelve (12) months, he/she may do so after consultation with the Director. Facilitation may be rotated among a small group of approved offenders.

When possible, facilities shall consult with outside authorities before selecting offender facilitators.

Study material used by offender facilitated programs shall be published by the particular faith group, and is subject to the approval of the Chaplain/Religious Program coordinator.

The Superintendent/designee may immediately restrict offender facilitation of worship/study programs if the designated offender(s):

1.    Misuses or abuses this privilege;
2.    Disparages the beliefs and practices of others;
3.    Uses intimidation; or,
4.    Gives cause for concern for the safety or security of the facility, staff or other persons, or the public.

An offender approved to facilitate a religious program shall not be afforded any authority, special privileges, or status related to this activity.

000045

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 22 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

Offenders are not authorized to use titles such as Pastor, Rabbi, Imam or Grand Sheik, etc.

D.   WORSHIP SERVICES:

Each facility shall develop a facility directive guiding attendance at worship services. The procedures shall be the same for all faiths. Options include, but are not limited to:

1.   At-will attendance at services;
2.   Attendance by count letter;
3.   Attendance, with or without a count letter; restricted to those with appropriate OIS religious preference; and,
4.   Other procedures consistent with the security and operational needs of the facility.

Each facility which restricts attendance shall also develop a facility directive to allow an offender to temporarily attend worship services of a faith other than that recorded in OIS.

An offender religious music program may be developed when feasible. Instruments and other equipment may be purchased or received as donations, and shall be for the general use of chapel programs.

When possible, worship services shall be scheduled so as not to conflict with offender work schedules. If a schedule conflict exists, the offender is responsible for making arrangements with other assignments. In some cases, an offender may have to choose between attending services and holding a particular assignment.

If the faith group's style of worship is culturally or ethnically diverse, an attempt shall be made to include these expressions as represented within the offender population.

Regularly scheduled worship services may include traditional sacramental rites (i.e., pipe ceremony, Eucharist, or rite of conversion).

Special worship services may be approved consistent with resources and common practice within the outside religious community (e.g., Christmas, Passover, Ramadan).

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number 01-03-101 | Effective Date 11/10/2014 | Page 23 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Some religious articles used in approved corporate worship are sacred, and shall not be used for other purposes.

E.   OBSERVANCE OF RELIGIOUS HOLIDAYS, CELEBRATIONS AND FASTS AND FEASTS:

Religious holidays, celebrations and fasts are designated holy days that usually commemorate a special event or discipline within the religion.

1.   Programs related to, manner of, and accommodations for observance associated with the religious holiday, celebration or fast, are subject to the approval of the Superintendent/designee consistent with security, facility, and volunteer resources.

2.   Participation in programs associated with the observance of religious holidays or celebrations may be restricted to those offenders participating in the related program.

3.   Accommodations made for religious fasts/feasts may be limited to those claiming the related religious preference.

4.   Depending on facility security level, physical facilities, security and order, guests may be invited to religious holiday celebrations with the approval of the Superintendent/designee.

5.   In general, each religious grouping will receive two ceremonial meals per calendar year.

6.   Department Central Office Religious Services Staff, the Executive Director of Contract Compliance or designee, and the Contracted Food Services Provider shall develop a master menu for approved ceremonial meals.

A request for group observance of or special accommodation for a religious holiday, celebration or fast shall be referred to the Director.

F.   RELIGIOUS CEREMONY, TRADITIONAL OR SACRAMENTAL RITES:

Religious ceremonies/rites related to the facility religious programming shall be offered on a regularly scheduled basis, subject to the availability of a religiously authorized official.   Notice of these activities shall be included in the facility calendar of religious activities.

If a worship service other than that which is regularly scheduled is needed to accommodate the observance of the ceremony/rite, those attending the service (offenders, volunteers, or guests) shall be approved by the

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number 01-03-101 | Effective Date 11/10/2014 | Page 24 | Total Pages 35 |
| Title **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Superintendent/designee. Criteria for special services to accommodate these practices shall include, but not be limited to:

1. There is no regularly scheduled program related to the designated faith group;
2. An approved religious official is not available during the regularly scheduled program;
3. The facility is not equipped to provide the ceremony/rite during the regularly scheduled program;
4. Security concerns related to the involved offender(s) and/or the area of the regularly scheduled religious program; or,
5. Management concerns related to the practice.

Implements required for the observance of these ceremonies/rites may be acquired and inventoried as facility property, with the approval of the Superintendent/designee, and securely stored; or the person(s) administering the ceremony/rite may provide these items.

Administration of the ceremonies/rites shall be made available to offenders in restrictive status housing, subject to the approval of the Superintendent/designee and in accordance with the safety and security of the facility.

A reasonable amount of alcohol or tobacco, such as communion wine, may be utilized for religious faith groups requiring its use for a sacramental rite in compliance with Indiana Code 7.1-1-2-3. A Facility Directive shall be develop to provide guidelines for bringing in, or storing, alcohol or tobacco for religious use.

Denial of the observance of an authorized religious ceremony/rite shall be subject to the procedure in Section XV.

G.   RITES OF RELIGIOUS CONVERSION:

Religious rites of conversion, such as baptism, shall be available to offenders in adult facilities on a scheduled or as needed basis, pursuant to any required instruction. An effort shall be made to include such a rite in the related religious program, if available. Facility restrictions on or denial of authorized conversion rites shall be subject to the procedures in Section XV.

000048

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 25 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Division of Youth Services facilities may provide for such rites when a local religious community of the youth's choice is available to provide for any required instruction and the performance of the rite. The Chaplain or a religious services volunteer may assist the youth in locating a local religious community. The permission of a parent or guardian and/or Superintendent/designee shall be required for the rite to be administered.

**Offender facilitators, as discussed in Section XVII, C, shall not perform conversion rites.**

H.   MONITORING OF RELIGIOUS SERVICES/PROGRAMS

All religious services are subject to monitoring by Department staff. This may include staff presence, covert/overt audio and/or video surveillance, and any other approved methods.

Any attempt to block staff from entering or monitoring a service shall result in disciplinary action, and may result in suspension of the service.

XVIII. SPECIAL RELIGIOUS PRACTICES:

 Offenders may use State Form 48243, FACT SHEET: OFFENDERS REQUEST FOR ASSISTANCE WITH RELIGIOUS PRACTICE, to request assistance with religious matters not covered in this policy and administrative procedure and to obtain authorized items or services. The completed form shall be reviewed by the Chaplain who shall respond consistent with established procedures or refer the request to the Director for review and advisement. 

A.   RELIGIOUS OILS

Any adult offender may possess up to two (2) ounces of religious oils in his or her personal property, regardless of religious preference, or lack there of. Religious Oils shall be made available for purchase through the commissary only. The Religious Services Department shall not be responsible for ordering, storing, or dispensing religious oils. An attempt will be made to provide a variety of fragrances. Oils will be free of alcohol and animal by-products.

B.   PERSONAL PREFERENCE DIETS

Offenders shall be allowed to request and receive, when feasible, a Personal Preference Diet for religious purposes in accordance with Policy

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 26 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

and Administrative Procedure 04-01-301, "The Development and Delivery of Food Service Program." The offender shall specify his/her moral or religious reasons in writing to the Chaplain for approval or denial.

Offenders requesting a Kosher diet shall submit a written request through the chaplain to the Kosher Review Committee at Central Office in accordance with Section XXVI, Personal Preference Diets, of Policy and Administrative Procedure 04-01-301.

A personal preference diet card granted for religious/moral reasons may be suspended or confiscated if the offender:

1. Demonstrates a repeated pattern of consuming the self-prohibited food item(s);
2. Orders self-prohibited items from the facility commissary; or,
3. Abuses or misuses the diet-card in any manner.

C.    SMOKE PRODUCING SUBSTANCES:

The religious expression of some faith groups includes the burning of smoke and/or aroma-producing substances such as sage, cedar, sweetgrass, and incense. The burning of smoke and/or aroma-producing substances is allowed, consistent with facility operational procedures. Facility restrictions on or denial of the use of authorized substances shall be consistent with Procedure XV.

The ceremonial use of tobacco is a legitimate group religious practice for Native American offenders. The most common use is the pipe ceremony in which a small amount is mixed with other herbs. Approved Native American volunteers shall be permitted to bring an appropriate amount of tobacco into the facility for ceremonial use. Individual offenders shall not be allowed personal possession of tobacco.

Facilities that have Native American religious programs shall allow for the ceremonial use of tobacco under the guidance of a Native American accredited representative/religious specialist. Tobacco shall not be smoked, except as part of the pipe ceremony with an authorized Native American representative present.

The religious use of smoke-producing substances shall not be prohibited as a result of the Department's no-smoking requirements, however, the location in which these substances may be used may be restricted.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | | |
|---|---|---|---|---|
| Indiana Department of Correction | | | | |
| **Manual of Policies and Procedures** | | | | |
| Number | Effective Date | | Page | Total Pages |
| 01-03-101 | 11/10/2014 | | 27 | 35 |
| Title | | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | | |

D.   WORK RESTRICTIONS

Offenders who adhere to a work restriction on a prescribed religious holy day (e.g. the Sabbath) must seek a work assignment that does not conflict with this restriction.

Offenders given extra work detail as a result of a conduct report or temporary work assignment schedule change shall not be required to work on a religiously restricted day consistent with the offender's documented religious preference.

Restriction from work due to the observance of a religious holiday may be approved upon written request by the offender to his or her work supervisor. Requests should be made no less than two weeks in advance of the holiday.

E.   FUNERAL OR MEMORIAL SERVICE:

When an offender is to be buried on facility grounds, a facility Chaplain, other staff, or an accredited representative shall conduct a memorial service as approved by the Superintendent/designee. The memorial service shall reflect the practice of the offender's religious preference, if known, consistent with safety and security. If approved, this service shall be conducted for the offender population within an appropriate time and according to facility operational needs.

Those persons attending the funeral or memorial services shall be approved by the Superintendent or designee. No costs shall be incurred by the facility regarding the officiant at an offender funeral/memorial service. An accredited representative acting as officiant shall be approved consistent with Policy and Administrative Procedure 01-03-103, "The Development and Delivery of Community Involvement Program."

The facility Chaplain shall accompany the remains/cremains if they are to be transported to a different facility for burial.

When an offender is to be buried on facility grounds, a facility Chaplain or approved accredited representative shall conduct a committal service at the gravesite. The Superintendent/designee shall approve those in attendance and shall advise the Chaplain of the name, religious preference, and other relevant information at least 48 hours prior to the scheduled services.

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 01-03-101 | 11/10/2014 | 28 | 35 |

| Title |
|---|
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** |

F.    ORDINATION:

No offender shall be granted services of ordination, or shall be invested with ministerial, priestly or rabbinical authority; nor shall an offender be recognized to perform as an accredited representative while incarcerated, (i.e., performing baptisms, administering sacraments, officiating weddings, etc). Religious leadership credentials such as ordination or commissioning as a minister, rabbi, imam, etc. received by offenders prior to incarceration will not be recognized during the incarceration period. In the event an offender is approved to lead a religious study or worship service, as in Procedure XVII, the offender shall not be considered or recognized as having special status or authority related to religious practice.

**Offenders are not authorized to use titles such as Pastor, Rabbi, Imam or Grand Sheik, etc.**

XIX.   OFFENDER POSSESSION OF RELIGIOUS ITEMS OR SYMBOLS:

Authorization of religious items and symbols shall be consistent with Procedures XIV and XV.

Offenders may wear or have in their assigned living quarters, as appropriate, religious items and symbols related to their designated religious preference. Possession of these items and/or symbols shall be in accordance with Policy and Administrative Procedure 02-01-101, "Offender Personal Property." The wearing or carrying of a religious item or symbol may be restricted to designated areas of the facility, as determined by the Superintendent.   All authorized religious symbols must be worn under the shirt anywhere outside the immediate bed area. If an authorized item/symbol is to be denied, Section XV shall be followed.

All approved offender property associated with the exercise of religion shall be:

A.    The responsibility of the offender;
B.    Subject to all possession and search procedures; and,
C.    Identified as sacred or religious and separated from non-religious or sacred items.

All personal religious property, when not in use or in the offender's possession shall be stored in the offender's housing unit. Facilities may provide offenders

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 29 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

with a laminated card or memo indicating authorized items the offender may have in his/her possession.

When offenders are transferred from one facility to another, they shall retain their religious property, unless restrictions at the receiving facility specifically prohibit such item(s).

Items related to religious practice may be confiscated if used in a manner other than their intended and authorized purpose or the items threaten the safety and security of the facility or persons.  Offenders who use religious practices in a manner that threatens the safety and security of the facility, staff, volunteers or other offenders are subject to disciplinary action.

Offender possession and use of approved religious property may be restricted or withdrawn if the offender abuses, alters or inappropriately uses the item(s), or the offender gives, loans, sells an item of religious property to another offender.

State Form 47685, REQUEST FOR AUTHORIZATION OF RELIGIOUS GROUP ACTIVITY, OFFENDER POSSESSION OF RELIGIOUS SYMBOLS..., shall be used for the review of an unfamiliar religious item or symbol and referred to the Director for consideration.

The originals or copies of the religious records required by the offender's designated religious preference, or those maintained by the religious group and/or an accredited agent of the religious group administering religious rites (e.g., baptism), shall be maintained in the offender's Re-Entry Portfolio.  Originals of these documents may be sent out of the facility by the offender to family or friends.  If the original is sent out of the facility, a copy shall be placed in the offender's Re-Entry Portfolio.

XX.   RELIGIOUS PUBLICATIONS:

Offenders shall have reasonable access to publications related to religious belief and practice.  No publication received by an offender shall be denied solely because its content is religious, or because its content is unpopular with or repugnant to other offenders or staff.  All religious publications shall be processed in accordance with Policy and Administrative Procedure 02-01-103, "Offender Correspondence" and Policy and Administrative Procedure 02-01-101, "Offender Personal Property".

Religious publications which may pose a threat to security or safety may be denied in accordance with the administrative procedure for Policy 02-01-103,

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number<br>01-03-101 | Effective Date<br>11/10/2014 | Page<br>30 | Total Pages<br>35 |
| Title<br>**THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Religious publications or literature donated for distribution to offenders may be refused if the material demeans or criticizes another faith group, advocates religious, racial or national hatred or violence or is a threat to safety and/or security.

Authoritative religious texts (e.g., Bible, Koran) and publications donated to or purchased by the facility shall be organized and accessible to the offender population.

1.  These books and publications may be available through the facility or Chapel library services or through other methods approved by the Superintendent/designee.

2.  Multiple copies of donated books and publications may be dispensed to housing units or offenders as approved by the Superintendent/designee.

3.  Religious study material (e.g., Bible studies) received by correspondence or through approved religious programs may need to be accompanied by a memorandum of approval from the Chaplain or designated staff. Possession of educational/study materials shall be consistent with Policy 02-01-101.

Religious literature written by offenders, or provided through volunteers or staff, may not be distributed within a facility unless specifically recommended by the Chaplain and approved by the Superintendent/designee.

XXI.   INSPECTION/SEARCH PROCEDURES:

Searches of religious items and/or symbols shall be administered in a manner that is respectful. This provision includes equipment, items and/or symbols retained by religious services staff, offenders, and religious volunteers and those maintained in the religious services area.

Native American prayer/medicine bags and feathers are religious property that is considered sacred and should not be handled by anyone other than its owner except in an emergency. For routine searches, staff shall direct the offender to display their religious property in such a way that it can be examined without being touched. If contraband is found, then the contraband item shall be confiscated.

An attempt shall be made to conduct non-emergency searches of religious services areas in the presence of the Chaplain.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 31 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

Within five (5) working days of the search, the Shift Supervisor shall provide the Chaplain an incident report of the search of the religious services area stating what items, if any, were confiscated and of any security breaches that were found.

XXII.   SUSPENSION OF REGULARLY SCHEDULED RELIGIOUS PROGRAM:

Suspension of a regularly scheduled group religious program(s) shall be the least restrictive means necessary to protect facility concerns, according to the judgment of the Superintendent/designee.  Suspension of the scheduled religious program(s) shall be lifted once corrective action has been taken or the facility concerns no longer exist.

XXIII.   RELIGIOUS VISITATION:

Staff Chaplains shall routinely have access to all areas of the facility and to all offenders, and shall visit each area of the facility on a regular basis.

Contract religious specialists and religious services volunteers shall have access to areas and offenders as approved by the Superintendent/designee.

Offenders, including those in special facility units (i.e. restrictive status housing, detention, death row), may receive visits from an approved accredited representative of their designated religious preference during normal visiting hours, pursuant to Policy and Administrative Procedure 02-01-102, "Offender Visitation", and facility visitation rules and regulations.

A reasonable limit may be placed on the number of offenders visiting the same approved Accredited Representative or Clergy of Record. Clergy of Record shall not visit with more than one offender at a time without written authorization of the Superintendent.  Department staff may not serve as Clergy of Record.

Except in cases of emergency and authorized by the Superintendent or designee, State Form 14387, "APPLICATION FOR VISITS," shall be required for Clergy of Record.

The Superintendent may limit the number of offenders selecting the same individual as their Clergy of Record.

XXIV.   RELIGIOUS SERVICES ASSOCIATES:

A Religious Services Associates program may be established at a facility, with the approval of the Superintendent/designee.    The program shall outline the

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 32 | 35 |
| Title | | | |
| **THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

guidelines, responsibilities and limitations for participating volunteers and a job description shall be developed for each Religious Services Associate approved.

A Religious Services Associate (formerly known as Volunteer Assistant Chaplains) may assist the Chaplain in the provision of religious programming and spiritual care, as appropriate to their education, experience, and the recommendation of their religious authority, consistent with the needs of the facility.

Potential Religious Services Associates shall complete and submit State Form 8603, CLERGY AND RELIGIOUS PROFESSIONAL APPLICATION.

Approved Religious Services Associates shall be notified of and subject to all applicable facility and Departmental policies and procedures, including but not limited to: Policy and Administrative Procedure 01-03-103, "The Development and Delivery of Community Involvement Program," Policy and Administrative Procedure 01-03-101, "The Development and Delivery of Religious Services Program," and, Policy and Administrative Procedure 04-03-103, "Information and Standards of Conduct for Department Staff." Training requirements exceeding those required by the Policy and Administrative Procedure 01-03-103 shall be in accordance with Policy and Administrative Procedure 01-05-101, "Staff Development and Training," and consistent with the facility security level and approved activities

Minimum qualifications for those approved as Religious Services Associates shall include:

A.  Ordained, commissioned, licensed or otherwise designated as an accredited representative by an appropriate religious authority;
B.  Current recommendation from a related religious authority as having good standing within the faith group and appropriate for the position;
C.  Continued maintenance of a supervisory relationship with an outside faith group;
D.  Education and training as specified by the facility and/or religious authority;
E.  Ability to work in an inter-religious setting; and,
F.  Recommendation of the facility Chaplain.

Religious Services Associates shall be directly accountable to the facility Chaplain and under the authority of the Superintendent/designee. Volunteers who do not meet the criteria of Religious Services Associate may be approved

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number | Effective Date | Page | Total Pages |
| 01-03-101 | 11/10/2014 | 33 | 35 |
| Title | | | |
| THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES | | | |

according to the administrative procedures for Policy 01-03-103 and assigned tasks by the Chaplain consistent with their training and interest.

At facilities without staff Chaplains, designated staff shall supervise any approved Religious Services Associate.

Staff shall not serve in a volunteer capacity related to the religious services program.

XXV. DONATIONS:

A facility may designate, in a sub-account of the Recreation Fund, an account to which offenders may voluntarily contribute to provide religious publications and items needed for corporate practice and/or study of their faith. No attempts shall be made by staff, offenders, or volunteers to coerce contributions to this fund.

These Recreation Fund sub-accounts shall include the faith groups represented in the religious programming of the facility (e.g., General Christian, Catholic, Islamic, Buddhist) and are subject to Policy and Administrative Procedure 04-01-105, "Recreation Fund Administration." The Chaplain shall consult with offenders and volunteers associated with the faith group in deciding how these funds shall be used. All expenditures are subject to the approval of the Superintendent/designee.

Donations to the religious services program may be received from outside sources, consistent with Policy and Administrative Procedure 04-01-105, Policy and Administrative Procedure 01-03-103 and Policy and Administrative Procedure 04-01-101, "Inventory and Asset Management." Monetary donations to a facility religious services program shall be assigned to the Recreation Fund sub-account as designated by the donor. Expenditure of these funds shall be as designated by the donor, or if not so designated, as recommended by the Chaplain and approved by the Superintendent/designee.

Donations from staff or offenders of religious materials shall be made directly to the Chaplain for consideration for distribution to offenders. In-kind donations from staff or outside sources shall be accepted in accordance with Policy and Administrative Procedure 04-01-101. In-kind donations from offenders shall be in accordance with Departmental Administrative Procedures and the facility's operational needs

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number<br>01-03-101 | Effective Date<br>11/10/2014 | Page<br>34 | Total Pages<br>35 |
| Title<br>**THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

## XXVI. RELIGIOUS SERVICES PROGRAM AREA(S):

Physical facilities and provision for an atmosphere conducive to corporate worship shall be provided. A general activity area may be used in the absence of a designated religious services area. Religious services space shall be clean and, when possible, maintained in keeping with a devotional nature.

Space for other scheduled religious programming and pastoral care services shall be provided within the limitations of supervision and physical facilities, as approved by the Superintendent/designee.

The use of the religious services program areas(s), equipment and furnishings shall be scheduled by the facility Chaplain(s) or as designated in the absence of a Chaplain, and subject to the approval of the Superintendent/designee. An effort shall be made to accord all approved corporate religious practices equitable status and protection.

Facilities shall provide the Chaplain(s) with the necessary office, space, equipment, supplies, support services, and program space required to implement a religious services program that serves the assessed religious needs of the offender population. Facilities will attempt to provide individual and group space conducive to confidentiality to accommodate spiritual care and counseling as Chaplains and volunteers are available and qualified to provide.

## XXVII. PROVISION FOR GROUP RELIGIOUS ITEMS AND STORAGE:

Items and/or symbols approved for scheduled offender corporate religious practice (i.e. kneeling pillows, sacramental articles) may be purchased as appropriate through general or recreation funds, recreation fund faith group sub-accounts and/or received as donations from the outside religious community.

Items shall be registered with, and maintained by, the Chaplain or as designated. These items are subject to facility inspection, which shall maintain respect for the religious nature of the items. If not registered, these items may be considered prohibited property and subject to confiscation.

As space allows, reasonable, secure, and separate storage space for group religious items/symbols shall be provided and maintained. Access to the storage space shall be determined by facility operational procedures. The facility shall not be responsible for the destruction, damage or loss of stored items.

| **POLICY AND ADMINISTRATIVE PROCEDURE** | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| **Manual of Policies and Procedures** | | | |
| Number<br>01-03-101 | Effective Date<br>11/10/2014 | Page<br>35 | Total Pages<br>35 |
| Title<br>**THE DEVELOPMENT AND DELIVERY OF RELIGIOUS SERVICES** | | | |

XXVIII. RELIGIOUS SERVICES REPORTS:

The Director shall receive reports of facility group religious activity and shall annually review facility religious programs.

The Director shall develop standard report forms consistent with information required for program assessment and policy adherence. These forms shall be completed by religious services staff and submitted to the Superintendent or designee for review. Following review the Superintendent or designee shall submit the report to the Director by the date requested.

The Director shall compile an annual religious services report for submission to the Deputy Commissioner of Re-Entry. Subsequent to this review, the annual report shall be submitted to the Executive Staff, Division Directors, and Superintendents.

XXIX. RELIGIOUS SERVICES AUDIT:

Religious Services audits shall be consistent with the administrative procedures for Policy 00-02-101, "The Development and Delivery of Program Reviews/ACA Audits and Fiscal Audits."

Supplemental audits for quality assurance purposes may be developed and implemented by the Director as needed and as approved by the Deputy Commissioner.

XXX. APPLICABILITY:

This policy and administrative procedure is applicable to all facilities in the Department housing offenders or youths.

_____signature on file_____          _____
Bruce Lemmon                          Date
Commissioner

10:29:27 Thursday, March 09, 2017

```
OIFIPER1    * INQUIRY *   OFFENDER INFORMATION SYSTEM      03/09/17    10:28:51
                          PERSONAL DATA          USER: CIU896 STEP  MODE

DOC NUMBER: 973338      NAME: NEELY, DERRICK D.                 LOC: CIC
TRUE NAME: LAST: NEELY              FIRST: DERRICK      MI: D  SUFFIX:
OBTS ID:                            PREV DOC NUMBER:
FBI ID:                             FINGERPRINT CLASS:
AGE AT FIRST CONVICT:      SOURCE:
SEX:  M      DOB: 02 06 1979        US CITIZENSHIP:    B  BIRTH
RACE:  B   BLACK                    CITIZEN OF COUNTRY: US


SSN1:  486  82  3972  SSN2:            RELIGIOUS PREF:      T   MSTA/MOOR
SSN3:                 SSN4:            MARITAL STATUS:      S   SINGLE
HEIGHT:FT:   6  IN:  1.00  HAIR: BK  WEIGHT: 220.0  LBS   EYE N  BUILD: M
COMPLEXION: D                       LAST PHYSICAL CHAR UPDATE:  02  21  1997

ADDRESS STREET: 2159 N KEYSTONE AVE       CITY: INDIANAPOLIS   STATE: IN
     ZIP CODE: 46204     PHONE: 317  923  7890    SINCE: 00 / 00 / 0000
     LAST COUNTY OF RESID: 49  MARION           EXPECTED STATE OF RELEASE: IN
DATE OF DEATH:        /      /       ---------- PLACE OF BIRTH -----------
CAUSE OF DEATH:                     CITY: ST LOUIS      ST: MO  CTRY: US
NEXT RESPONSE:            RESPONSE VALUE:
DC901280 REQUESTED OFFENDER INFORMATION IS DISPLAYED.
 PF2=MOD   PF4=INQ   PF9=OFF FLAGS   PF11=REL PREF HIST   PF12=COUNTRY CDS   PF13=HE
```

# CHAPLAINS MEMO
## Correctional Industrial Facility

To: Ofd. Derrick Neely     DOC# 973338

From: Chaplain Smith, CIF Religious Services

Re: Suspension from Corporate Religious Services

Date: 9/3/2015

Following your disruptive and argumentative behavior on 11/11/2013 you were informed by the facility chaplain that you may not speak on a Friday Holy Day Service and were not allowed to dominate, debate or give instructions as to operations of the Branch Temple at CIF.

You violated these instructions on 9/25/2014 and were found guilty of a C-360 for disruptive behavior during this Holy Day Service. As a result you were suspended for 6-months.

You requested to be reinstated to the program on 3/23/2015 and allowed to attend MSTA services as a guest, under the same guidelines, beginning on 3/26/2014.

You chose to continue your disruptive behavior and received verbal reprimands from the Facility Chaplain at MSTA Holy Day Services on 7/10/2015 and 7/17/2015.

In defiance of clear and direct orders from chapel staff, you received formal conduct reports on 8/21/2015 and 8/28/2915. As a result, on 9/2/2015, you were found guilty of the C-347 violation that occurred in the chapel.

DOC policy 01-03-101 (pages 19-20) allows for offenders to be removed from religious services for disruptive behavior,

Effective September 3, 2015, due to multiple incidents, including conduct violations for disruptive behavior and direct interference with chapel operations at CIF, you are suspended from corporate religious worship. This includes all corporate religious services for a period of 12 months (365 days) from the date of this notice. You may submit a written request to the Facility Chaplain for return to the program following your time of suspension.

000001



### Moorish Science Temple of America, Inc. ®
### PROPHET NOBLE DREW ALI, FOUNDER



Salvation    BROTHER C. KIRKMAN-BEY, 1ST SUPREME GRAND ADVISOR AND MODERATOR (S.G.A.M.) (PAST)    Unity

BRO. F. NELSON-BEY, PAST S.G.A.M    BRO. J. BLAKELY-BEY, PAST S.G.A.M.    BRO. R. LOVE-EL, (FORMER) GRAND SHEIK M.S.T. of A

BROTHER R. JONES-BEY, GRAND SHEIK of M.S.T. of A.

Sunday, April 6th, 2014

26B-1E

MEMORANDUM

(Attachment)

TO:    Mr. David Liebel, Director of
       Religious and Volunteer Services
       Chaplains: Alan McCraine & David Smith
       Superintendent Wendy Knight
       Chief of Security
       Offender B. Crosby-Bey Facilitator
       Offender D. Neely-Bey
       Brother V. Jones-Bey, Minister of
       Institutional Mission Affairs

FROM:    Brother M. Doles-Bey
         Minister & IDOC Volunteer

RE:    Brother Derrick Neely #973338 AKA Brother D. Neely-Bey
       Tarik-El

This memorandum is intended to inform all concerned parties that a
certain practice that exists at Correctional Industrial Facility (CIF),
under the Affirmation of Authority of the Moorish Science Temple of
America, Inc. can no longer be tolerated; as it poses a threat to our
Divine Creed and Doctrine as it was given to us by the Noble Prophet
Drew Ali; and further poses a threat as it fosters in the minds of
the offenders in attendance that the greatest documents of all time-
the American Constitution doesn't apply to us, nor do we have to
recognize it's jurisdiction over us as citizens.

When I was at CIF on November 11th, 2013; I informed the Moors of
what happened at ISF as a result of an offender with a STG attachment
facilitating a service, or in a station of facilitation in any meeting
of the M.S.T. of A. Inc. Institutional Branch Temple. ISF's whole
group was shut down.

I humbly request that a copy of this memorandum be given to Brother
B. Crosby-Bey, Brother D. Neely-Bey; and it should be read to the
whole group as they should be made aware of their accountability in
this matter. According to the Prophet Noble Drew Ali "Every member
should do their part in protecting the Prophet and the Temple".

(continued)

 

## Moorish Science Temple of America, Inc. ®
### PROPHET NOBLE DREW ALI, FOUNDER

**Salvation**

BROTHER C. KIRKMAN-BEY, 1ST SUPREME GRAND ADVISOR AND MODERATOR (S.G.A.M.) (PAST)

BRO. F. NELSON-BEY, PAST S.G.A.M.      BRO. J. BLAKELY-BEY, PAST S.G.A.M.      BRO. R. LOVE-EL, (FORMER) GRAND SHEIK M.S.T. of A

BROTHER R. JONES-BEY, GRAND SHEIK of M.S.T. of A.

**Unity**

Sunday, April 6th, 2014   Page II

FACT:    Brother D. Neely-Bey # 973338 is classified with S. STG attachment.

FACT:    Brother D. Neely-Bey # 973338 by his own written statement has proclaimed himself as a "Moorish National Sovereign", therefore denouncing the status of being a Moorish-American, or a member of the Moorish Science Temple of America, Inc. founded by the Holy Prophet Noble Drew Ali.

### RESOLUTION

Brother D. Neely-Bey # 973338 is not under any circumstances, authorized to teach, facilitate or serve in a station of facilitation. He is a "GUEST" and should be treated as such. A guest can participate in Sunday School but cannot be allowed to dominate, debate, or give instructions as to the operation of the Temple. A guest cannot speak on a Friday Holy Day Service. A guest is in attendance to hear the Instructions of our Holy Prophet.

Brother B. Crosby-Bey (Acting Grand Sheik) is in charge of seeing to it that that the laws of the Prophet are strictly adhered to. If you cannot be attendance at the meeting, the Assistant Acting Grand Sheik, according to your instructions carry out the duties of the Acting Grand Sheik. If you have someone capable of teaching on Sunday in your absence, see to it that they are in "Good Standing", ie. STG/Conduct, etc. by clearing your choice through the Chaplains who can access the needed information to determine "Good Standing".

The Acting Chairman presides over ther meetings and makes sure that the meeting is opened and closed according to the laws and Customs of the Moorish Science Temple of America, Inc. and sets the tone for services to flow smoothly and without from the body/membership, and guests.

Be advised that any violation of the instructions contained in this memorandum opens the door for the administration, security or the IDOC to deal with that violation according to the policies they have in place.

Peace

Brother M. Doles Bey Minister &
Religiuos Volunteer

000012



**REPORT OF CONDUCT**
State Form 39590 (R4 / 11-13)
INDIANA DEPARTMENT OF CORRECTION

Case number
*CIC 15-08-0224*
Date assigned (month, day, year)
*8/21/15*

**INSTRUCTIONS:** Type or Print clearly

**NOTE TO REPORTING EMPLOYEE:** This report is to be filled out in triplicate. All copies shall be forwarded to the screening officer, in accordance with the Disciplinary Code for Adult Offenders.

| Name of offender Derrick Neely | DOC number of offender 973338 | Facility CIF | Housing unit 04A-1B |
|---|---|---|---|

| Date of incident (month, day, year) 8/21/2015 | Time of incident 9:20 ☑AM ☐PM | Place of incident CHAPEL | Date report written (month, day, year) 8/21/2015 |
|---|---|---|---|

| Offense REFUSING AN ORDER | Code number 347 |
|---|---|

DESCRIPTION OF INCIDENT (if more space is needed, attach additional sheets in triplicate.)
On 08/21/2015 at approximately 9:20AM, Offender Derrick Neely, DOC 973338 Bed Location 4A-1B

I witnessed this offender speak and openly participate during the Friday MSTA Holy Day meeting.

Ofd. Neely deliberately refused a direct order from me, which was provided to him both verbally

and in writing (attached) to remain silent. Clearly, by his actions he demonstrated his intention to

interfere and disrupt MSTA services on Holy Days.

His conduct constitutes a Code 347 "Refusing an Order" violation.

Disposition of physical evidence, if any

Witness(es), if any

| Signature of reporting employee | Name and title (please print) David Smith   Chaplain | Screening officer |
|---|---|---|

| Signature of immediate supervisor | Name and title (please print) CO A. Frenan | Date (month, day, year) 8-21-15 | Time 1005 ☐AM ☐PM |
|---|---|---|---|

**FOR SCREENING OFFICERS ONLY**

| Copy of report delivered to offender by | Date report delivered (month, day, year) 8/24/15 |
|---|---|

| Signature of offender receiving copy | Note here if offender refuses to sign |
|---|---|

DISTRIBUTION: Original - Offender; Copy - Central Office; Copy - Facility Packet

000020



**NOTICE OF DISCIPLINARY HEARING
(SCREENING REPORT)**
State Form 39565 (R6 / 8-00)

INDIANA DEPARTMENT OF CORRECTION

| Name of offender Neely Derrick | Offender's DOC number 973338 | Facility C.I.F |
|---|---|---|
| Alleged offense Refusing an order | Code number 347 | Offense date 8/21/15 |
| Reported by D. Smith | | Housing unit 4A-1B |

You are being referred for a hearing on the above code violation. You may enter a plea of *guilty* or *not guilty* to this offense, as indicated below. A plea of guilty or a finding of guilt may result in the imposition of sanctions in accordance with the sanctioning guidelines in Policy 02-04-101, "The Disciplinary Code for Adult Offenders." If you choose to plead guilty, you are admitting the material allegations and thus waive the rights indicated below; you will be scheduled to appear, by yourself, for a disposition hearing. If you choose to plead not guilty, you will be scheduled to appear before the appropriate disciplinary hearing body. If you plead not guilty, the following rights shall apply to your hearing:

❋ The right to lay representation, in accordance with the administrative procedures for Policy 02-04-101.

❋ The right to request a witness(es) in your behalf, subject to approval.

❋ The right to a fair hearing before impartial decision makers.          K.D.N

❋ The right to a minimum of twenty-four (24) hours notice prior to appearing on a given charge.

❋ The right to present documentary evidence in your behalf.

❋ The right to be present at the hearing, except while deliberations are in progress.

❋ The right to speak in your own behalf at the hearing. If you choose to remain silent, your silence may not be held against you.

❋ The right to a written copy of findings of fact in your case.

| My plea in the above cited case is: ☐ Guilty ☑ Not Guilty | Notification date 8/24/15 | Notified by S. Curby | Time 8:07 ☑ AM ☐ PM |
|---|---|---|---|
| I wish to have a lay advocate ☐ Yes ☑ No | Name and number of advocate | | |

☐ I do not wish to call any witnesses.

☑ I wish to call the following witness(es):  *(Specify name(s) and number(s) or name(s) and title(s) for staff and the expected testimony)*

CHAPLAIN SMITH

WHY AM I NOT ALLOWED TO SPEAK AT THE — ALREADY ANSWERED
MSTFA MEETINGS BUT EVERYONE ELSE CAN?

DID YOU GIVE ME AN ORDER ON 8/21 TO
REMAIN SILENT? — ALREADY ANSWERED

BOTH QUESTIONS WERE ALREADY ANSWERED BY CHAPLAIN SMITH
WITH AN ATTACHMENT TO CONDUCT REPORT.

☐ I do not request any physical evidence.

☑ I wish to request the following physical evidence: *(Specify the evidence to be considered)*
CHAPEL CAMERA BY CHAPLAINS OFFICE BETWEEN 8:00A-10:00A (9:20)
DOES THE CHAPLAIN EVER SPEAK WITH ME? IS HE PRESENT
AT OUR MEETING?

NOTE: Failure to request witness(es) or physical evidence may waive your right to have the witness' testimony or physical evidence presented / considered at your hearing.

| Case number CIC 15-08-0224 | Date assigned 8/21/15 | Earliest date of hearing 8/25/15 | Nature of hearing ☑ Full ☐ Disposition | Waive 24 hour notice of hearing ☐ Yes ☑ No |
|---|---|---|---|---|

Your case is scheduled for hearing / disposition as noted. You will be notified to appear on or after that date, subject to postponement.

I have been notified of the above cited case filed against me and have been advised of my rights under due process as enumerated above.

| Signature of witness | Signature of offender |
|---|---|

DISTRIBUTION: White - Facility Packet;  Canary - Central Office;  Pink - Offender

000023



**REPORT OF DISCIPLINARY HEARING**
State Form 39586 (R6 / 9-00)

INDIANA DEPARTMENT OF CORRECTION

| | |
|---|---|
| Case number | CIC 15-08-0224 |
| Date assigned | 8/21/15 |

Name of offender: NEELy, Derrick

DOC number: 973338  Facility: C.I.F  Date of hearing: RM 9-2-15

Offense: Refusing an order   Code number: 347   Date of alleged offense: 8/21/15   Plea: Not Guilty

Offender's comment:
They can Not Give me an order that violates my rights. To stand up and practice my religion. They can Not give me an order that came from MSTA

The evidence and / or witness statements that you requested at your screening or were otherwise requested by staff was / were considered. The following evidence was relied on to reach the decision in this hearing:

☑ Staff Reports   ☐ Statement of Offender   ☐ Evidence from Witnesses   ☐ Other (specifically _____

☐ Physical Evidence (specifically _____

| Decision: | ☐ Dismissed | ☑ Guilty | ☐ Not Guilty | Continuance requested | ☐ Yes | ☑ No |
|---|---|---|---|---|---|---|

Reason for decision: Was given Numerous orders from Both chaplains

If finding is guilty, the following sanction(s) is / are hereby imposed / Recommended:

**NON-GRIEVOUS LOSS**
☑ Written reprimand specifically: Do Not violate code 347
☐ Change in work / housing assignment, specifically: _____
☐ Disciplinary segregation (less than 15 days) specifically: _____
☑ Extra work duty, specifically: 20 hours extra duty due by 10-2-15
☐ Inter-Facility transfer recommendation, specifically: _____
☐ Loss of privileges, specifically: _____
☐ Restitution, ($200.00 or less) specifically: _____

**GRIEVOUS LOSS**
☐ Disciplinary segregation, specifically: _____
☐ Restitution, (over $200.00) specifically: _____
☐ Recommended earned credit time deprivation of _____ days.
☐ Recommended credit class (CC) change: retain / demote / promote _____ To CC _____
☐ Imposition of suspended sanction: case number: _____
Sanction Imposed: _____

APPROVED

Reason for sanctions imposed: ☐ Seriousness   ☑ Frequency / Nature   ☐ Offender's attitude and demeanor during hearing
☐ Degree to which violation disrupted/endangered security of facility   ☑ Likelihood of sanction having a corrective effect on offender's future behavior

| Effective date (month, day, year) | New PRD (month, day, year) | Remaining ECT to date (after this action) |
|---|---|---|
| 10-2-15 | | |

I have been made aware of this disposition / recommendation and of my rights to appeal.

Signature of offender: Derrick Neely

Name of member: _____   Name of chairman: _____ 240   Name of officer: _____

DISTRIBUTION: White - Facility Packet;  Canary - Central Office Packet;  Pink - Offender

000019

**DISCIPLINARY HEARING APPEAL** RECEIVED
State Form 39587 (R3/4-04)

SEP 04

CORRECT...
FACILITY

**INDIANA DEPARTMENT OF CORRECTION**

Case number
C.I.F  15-08-0224

**INSTRUCTIONS:** Type or Print clearly    Offender's DOC number

| Name of offender | | Offender's DOC number | Facility | Housing unit |
|---|---|---|---|---|
| DERRICK NEELY | | 973338 | C.I.F | B-Unit 4A-1B |
| Date of hearing 9-2-2015 | Offense Refused A Order | | Code number 347 | Date of first appeal 9-3-2015 |

**INSTRUCTION:**
Appeal must first be made to the facility head within ten (10) working days of the hearing. The individual making the appeal will do so in Section 1 and forward to the facility head, who will make his response in Section 2. The facility head is the final reviewing authority for appeals not involving grievous loss sanctions. (If the response is unfavorable and involves grievous loss sanctions, the offender may then forward the appeal, within fifteen (15) working days of the date the response is received from the facility head, to the appropriate Final Reviewing Authority).

**SECTION 1**
Appeal to Facility Head (Be specific in stating reason(s) for appeal)

On 9-2-2015 I was found guilty of Refuseing A order A code C-347 And I was given 20 extra duty hours, the finding of guilt And the sanction imposed are in error for a number of reasons; First, documents submitted with conduct report showed tha the order was A direct Action related to the 4-6-2014 sanction placed on me by the H.S.T. of A. Inc, these sanction cannot be enforced here due to the fact that the State cannot get evolved in H.S.T. of A Affairs... I could not express this to the D.H.B Chairman because he told me that I could not ask him any question. This Action violated State form 39585 (RG/4-00)  I was denied the Rights granted by that document, because I was denied my Right to speak on my own behalf, and the right to a fair hearing by an impartial decision maker, A impartial decision cannot be made if all the fact are not made Available... Pleas Reverse code 347 violation

Signature of offender
*Derrick Neely*

Date 9-3-2015

**SECTION 2**
Response of Facility Head to appeal.

Signature of Facility Head                                      Date

**NOTE:** Offender is responsible for sending copy to Central Office if final review and decision is required.

# INDIANA DEPARTMENT OF CORRECTION



## CORRECTIONAL INDUSTRIAL FACILITY
## "RESPONSE OF FACILITY HEAD TO DISCIPLINARY APPEAL"

| NAME | DOC # | HOUSING |
|------|-------|---------|
| NEELY, DERICK | # 973338 | 1B 4A |

| Disciplinary Case Number: | CIC #15-08-0224 | Code: 347 |
|---|---|---|

Your Disciplinary Appeal has been received and reviewed. I have considered your statement, disciplinary procedure, and disciplinary consistency.

You were charged with code 347 "Refusing to obey an order from staff" and you were found guilty by the DHB Chairman.

I find the Report of Conduct to be descriptive and credible, and the statement provided by staff within the body of the report did support the finding. When any staff member gives you an order, you need to follow it. After you have followed the staff member's order, if you do not agree with that order or any order from staff, then you have a right to follow the department's grievance procedures. I find no errors in your case and the Report of Conduct is clear. You have provided me with no statements or evidence to cause me to change the decision of the Disciplinary Hearing Officer, therefore: your appeal is denied.

As you suffered no loss of Liberty this is your final level of appeal.

**DENIED**

_____                     9-14-15
Wendy Knight, Superintendent                  Date

_____                     _____
Offender                                      Date

000009

# CHAPLAINS MEMO
## Correctional Industrial Facility

**To: Ofd. Derrick Neely  973338  4A-1B**

**From: Chaplain Smith, CIF Religious Services**

**Re: Suspension from Corporate Religious Services**

**Date: 3/23/2015**

I received your request to be added to the MST of A Religious Services group.

<u>I will need you to understand that by returning to this group you agree to fully cooperate with and follow the April 6, 2014 sanctions placed on you by MST of A, Inc.</u>

Namely,

1.      You are recognized as a guest of MST of A.
2.      You will not stand, speak or facilitate any of the Friday/Holy Day Service – just listen to the Instructions of the Prophet.
3.      On Monday meetings, you may only address the group when recognized by the person presiding over the meeting.
4.      When speaking you must not debate, instruct, dominate or speak against the teaching of the Prophet,  MST of A, Inc., or the U.S. Constitution.

Please forward me this statement of understanding, as soon as possible.   Thank you.

To: old Necly

**DOC Policy 01-103-101  Section XVII, paragraph C with Regard to Offender Facilitators:**

C.  RELIGIOUS PROGRAM LEADERSHIP:

To protect the integrity and authenticity of belief and practice, Chaplains, religious specialists or qualified volunteers, shall provide leadership of religious programs.

Upon the approval of the Facility Head/designee and when authorized and supervised by the Chaplain, religious specialist or volunteer group leader, an offender(s) may assist with religious programs.

When a staff Chaplain is not empowered to conduct an authorized and approved religious program or ceremony according to the tenants of a particular faith or custom, and there is sufficient offender interest, the Chaplain or the Community Involvement Coordinator may seek to recruit appropriate individual(s) from the community.  Offenders may provide names of possible resource persons and/or the Director may be contacted for assistance.

If approved staff or qualified volunteer leadership cannot be obtained, the Facility Head or designee may select an offender to assist with the facilitation of the faith group's primary worship service provided:

1.  The religious program is authorized in the *Handbook of Religious Beliefs and Practices*;
2.  There is sufficient offender interest;
1.  A recognized authority of that religious belief and the Chaplain  have indicated approval for the designated offender to conduct the program;
2.  Staff supervision is provided.

An offender selected by the Facility Head to facilitate a primary worship service shall:

- Be free of Class A conduct reports for one (1) year, and Class B for six (6) months;
- Maintain regular communication with a recognized religious authority;
- Not be an identified member of a security threat group;
- Not delegate responsibilities to another offender; and,
- Comply with other requirements as deemed necessary by the Facility Head

Offenders approved to assist in this matter may be limited to a set term of 12 months.  If the Facility Head wishes to extend an offender's facilitation past 12 months, he/she may do so after consultation with the Director.  Facilitation may be rotated among a small group of approved offenders.

Religious programs other than worship services require the leadership of a Chaplain, volunteer or religious specialist.  Exceptions that allow offenders to provide facilitation of these religious programs shall require the approval of the Facility Head/designee.  Criteria for offenders so approved shall be the same as for facilitation of a primary worship service.  Study material used by offender facilitated programs shall be published by the particular faith group, approved by the facility accredited representative or religious specialist, and is subject to the approval of the Chaplain/religious program coordinator.

The Facility Head/designee may immediately restrict offender facilitation of worship/study programs if the designated offender(s):

1.  Misuses or abuses this privilege;
2.  Disparages the beliefs and practices of others;
1.  Encourages beliefs or practices inconsistent with the authorized faith group as determined by the Chaplain in consultation with the Director and/or an accredited representative of the faith group;
2.  Uses intimidation; or,
3.  Gives cause for concern for the safety or security of the facility, staff or other persons.

An offender approved to facilitate a religious program shall not be afforded any authority, special privileges or status related to this activity.

**Offenders are not authorized to use titles such as Pastor, Rabbi, Imam or Grand Sheik, etc.**



**NOTICE TO LAY ADVOCATE/WITNESS**
State Form 35447 (R6/9-00)

| Name of Offender: *Derrick Neely* | DOC Number: *973338* | Case Number: *CIC 15-08-0224* |
|---|---|---|
| Offense: *Refusing an order* | Code Number: *Chapel* | Date of Alleged Offense: *8-21-15* |

☐ **LAY ADVOCATE**

| Name of Requested Lay Advocate: *Sanders* | DOC Number: *100365* | Housing Unit: *A* |
|---|---|---|

The above named offender has requested your assistance as a Lay Advocate in a Disciplinary Hearing. As the Lay Advocate, you will assist the accused offender in the preparation of the case and you may be requested to assist in an appeal of this case. You are not required to represent this offender as a Lay Advocate.

☒ I AGREE to be a Lay Advocate.     ☐ I REFUSE to be a Lay Advocate.

| Signature: *Michael A. Sanders* | Date: *9-1-15* | Witness: *Al Al 240* | Date: *9-1-15* |
|---|---|---|---|

☐ LAY ADVOCATE WAS DENIED:

REASON FOR DENIAL:

☐ **WITNESS**

| Name of Witness: | DOC Number: (if applicable) | Housing Unit: (if applicable) |
|---|---|---|

You have been requested by the above-named offender to appear as a witness and testify as to your knowledge of the above-named alleged violation of the Appropriate Disciplinary Code. If you do not appear, you must give a written statement as to your knowledge of this alleged offense. Whether you appear in person or provide a written statement, you are required to tell the truth or be subject to disciplinary action.

☐ WRITTEN STATEMENT IN LIEU OF WITNESS APPEARING AT HEARING.     ☐ STATEMENT OF WITNESS TAKEN AT DISCIPLINARY HEARING.

**The written statement is a true and accurate summary of my knowledge of the incident.**

| Signature of Requested Witness: | Date: | Witness: | Date: |
|---|---|---|---|

WITNESS DID NOT APPEAR AT HEARING DUE TO:

☐ Offender in Segregation.
☐ Presence of witness would subject witness to substantial risk of harm.
☐ Testimony of witness would result in irrelevant or repetitive testimony.
☐ Witness not available to attend hearing (Reason: _____)
☐ Other (Reason: _____)

| Name of staff person recording witness statement: | Title: | Date: |
|---|---|---|

DISTRIBUTION: White - Facility Packet; Canary - Central Office Packet; Pink - Offender

000024

 **REPORT OF DISCIPLINARY HEARING VIDEO EVIDENCE REVIEW**
State Form 55721 (R / 2-15)
DEPARTMENT OF CORRECTION

| Name of offender<br>NEELY, DERRICK | | DOC number<br>973338 | Case number<br>CIC 15-08-0224 |
|---|---|---|---|
| Date of incident (month, day, year)<br>8/21/15 | Time of incident<br>9:20 AM | Place of incident<br>CHAPEL | |
| Date of review (month, day, year)<br>8/21/15 | Physical location (server) of video file<br>DISC ON FILE, VIDEO ON EXACPVISION FILES | | |

The Disciplinary Hearing Board has determined that allowing the offender to view video recorded evidence  ☑ would  ☐ would not jeopardize the safety and/or security of the facility as set forth in Policy and Administrative Procedure 02-04-101, "The Disciplinary Code for Adult Offenders."

---

**SUMMARY OF VIDEO RECORDING BY THE DISCIPLINARY HEARING BOARD**
*If the video was not used as evidence in the hearing, please explain why.  If more space is needed, please use a separate sheet of paper.*

I Ofc Sidwell  did review the camera  by the Chaplains office. Chaplain was walking around this area during the times requested.

| Signature of reviewer<br>240 | Date reviewed (month, day, year)<br>8/26/15 |
|---|---|
| Printed name of reviewer<br>RICHARD SIDWELL | Time reviewed<br>2:00 pm |

DISTRIBUTION: Original – Disciplinary Hearing Board file; Copy – Offender packet, facility; Copy - Offender

 **POSTPONEMENT OF DISCIPLINARY HEARING**
State Form 49521 (R / 12-98)

| Name of offender | DOC number | Case number |
|---|---|---|
| *Neely Derrick* | *973338* | *CIC 15-08-0224* |
| Offense *Refusing an order* | Code number *347* | Original date of hearing *8-28-15* |

☐ Request for postponement denied. *(Explain reason(s) in Comments.)*

☒ The Disciplinary Hearing on the above named case is being postponed. The reason for this postponement is:

☐ Due to unavailability of ☐ offender ☐ staff ☐ witness ☐ other (specify: _____)

*(Reason for unavailability:* _____)

☐ Due to need for further investigation.

☐ Due to pending criminal charges / prosecution.

☐ Due to facility emergency.

☐ Due to reassignment of lay advocate.

☒ Due to offender's request.

COMMENTS: *Video*

| Name of person postponing hearing | Title | Date (month, day, year) |
|---|---|---|
| *RL R 240* | *DHB* | *8-28-15* |

I understand that the Disciplinary Hearing for the above named case has been postponed. The new date for this Disciplinary Hearing is:

DATE: *9-4-15*

By my signature, I agree that I have been notified as to the postponement of my Disciplinary Hearing.

| Signature of offender | Date (month, day, year) | Witness to offender's signature | Date (month, day, year) |
|---|---|---|---|
| *Derrick Neely* | *8-28-2015* | *M.S.* | *8-28-15* |

DISTRIBUTION: White - Facility Packet; Canary - Central Office Packet; Pink - Offender

000021



**REPORT OF CONDUCT**
State Form 39560 (R4 / 11-13)
INDIANA DEPARTMENT OF CORRECTION

Case number
CIC 15-08-0292.
Date assigned (month, day, year)
8/28/15

*INSTRUCTIONS: Type or Print clearly*

NOTE TO REPORTING EMPLOYEE: This report is to be filled out in triplicate. All copies shall be forwarded to the screening officer, in accordance with the Disciplinary Code for Adult Offenders.

| Name of offender | | DOC number of offender | Facility | Housing unit |
|---|---|---|---|---|
| Derrick Neely | | 973338 | CIF | 04A-1B ✓ |

| Date of incident (month, day, year) | Time of incident | ☑ AM ☐ PM | Place of incident | Date report written (month, day, year) |
|---|---|---|---|---|
| 8/28/2015 | 9:48 | | CHAPEL | 8/28/2015 |

| Offense | Code number |
|---|---|
| REFUSING AN ORDER | 347 |

DESCRIPTION OF INCIDENT (if more space is needed, attach additional sheets in triplicate.)

On 08/28/2015 at approximately 9:48AM, I witnessed Offender Derrick Neely, DOC 973338  Bed Location  04A-1B

speak and openly confront the leaders during the Friday MSTA Holy Day meeting.

Ofd. Neely, continues to deliberately refuse a direct order to remain silent as he is a guest.

Clearly, by this action he demonstrated refusal of a direct order not to interfere or disrupt

MSTA services on Holy Days.

His conduct constitutes a Code 347 "Refusing an Order" violation.

Disposition of physical evidence, if any

Witness(es), if any

| Signature of reporting employee | Name and title (please print) | Screening officer | |
|---|---|---|---|
| | DJ Smith, Chaplain | D. Conley gr | |
| Signature of immediate supervisor | Name and title (please print) | Date (month, day, year) | Time |
| Capt. K. Woods | K. Woods Captain | 4-28-15 | 10:18 ☑ AM ☐ PM |

| FOR SCREENING OFFICERS ONLY | | |
|---|---|---|
| Copy of report delivered to offender by: | | Date report delivered (month, day, year) |
| | | 8/28/15 |
| Signature of offender receiving copy | Note here if offender refuses to sign | |

**DISTRIBUTION:** Original - Offender; Copy - Central Office; Copy - Facility Packet

000006

10-5



**OFFENDER COMPLAINT - INFORMAL PROCESS LEVEL**
State Form 52897 (6-14)
DEPARTMENT OF CORRECTION

INSTRUCTIONS: Offender completes Section 1 ONLY and returns the form to the Offender Grievance Office for Processing.

| SECTION 1 - OFFENDER COMPLAINT (To be completed by offender) | |
|---|---|
| * Information is required. | |
| Name of Offender * DERRICK NEELY | DOC Number * 973338 |
| Dormitory * B-Unit 4A-1B | Job * School G.E.D. A.M. |
| List the department OR the name of the staff person(s) about which you are complaining, if any. Chaplain D. Smith | |

Provide a brief explanation of your complaint. * (Your complaint MUST be legible. Multi-page statements are NOT acceptable.)

ON 9-3-2015 I received from Chaplain D. Smith a memo wherein it was writing that because I was found guilty of two C-347 conduct reports that I am being suspended for 12 months, He cited as authority policy 01-03-101, but this is an error Executive Directive #14-55 this suspension is excessive, You need to modify this to its appropriate time...

Thank you for your time in this matter...

| Signature of Offender * Derrick Neely | Date (Month, Day, Year) * 9-3-2015 |
|---|---|
| Signature of Grievance Specialist upon acceptance | Date received at Grievance Office (Month, Day, Year) Sept 3 15 |

| SECTION 2 - REVIEWING STAFF | |
|---|---|
| (To be completed by department head or custody supervisor. Response is due within ten (10) working days.) | |

I, Ch. Smith _____, have reviewed the above informal complaint and recommend:
                Printed name

☑ Resolution (Explain below.)     ☐ Unable to resolve this informal complaint because: (Explain below)

Explanation and how resolved. If unable to resolve, explain why not. (Please write legibly)

Policy 01-03-101 provides for progressive discipline. Previous suspension was for 6 months. Current suspension is for a reasonable time period beyond 6 months, which is 12 months.

| Signature of Staff D.J.Smith | Date (Month, Day, Year) 9/4/15 |
|---|---|

| SECTION 3 - ACKNOWLEDGMENT | |
|---|---|
| This informal complaint has been resolved as acknowledged by the signatures below. | |
| Signature of Offender | Date (Month, Day, Year) |
| Signature of Grievance Specialist | Date (Month, Day, Year) |

| SECTION 4 - DISAGREEMENT | |
|---|---|
| I, the offender, by signing in this section, DO NOT agree with the findings/actions of the informal response listed in Section 2 above. | |
| ☑ I disagree with the resolution | |
| Signature of Offender Derrick Neely | Date (Month, Day, Year) 9-8-2015 |

| | State of Indiana<br>Indiana Department of Correction | Effective Date | Page 1 of | Number |
|---|---|---|---|---|
| | | 6/1/2015 | 55 | 02-04-101 |

## POLICY AND ADMINISTRATIVE PROCEDURE
**Manual of Policies and Procedures**

**Title**
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

| Legal References<br>(includes but is not limited to) | Indiana Policies/Procedures<br>(includes but is not limited to) | Other References<br>(includes but is not limited to) |
|---|---|---|
| IC 11-8-2-5(a)(8)<br>IC 11-11-5-1 *et seq.*<br>IC 35-50-6-7<br>HEA 1006 | 01-04-101<br>02-04-102 | ACA:<br>ACE: 4-4206, 4-4226 through 4-4248, 4-4281, 4-4320<br>CO: 2-CO-3C-01 |

### I. PURPOSE:

This policy and administrative procedure establishes the rules of conduct for adult offenders committed to the Department of Correction and the procedures to be followed by staff and offenders when offenders violate these rules of conduct.

### II. POLICY STATEMENT:

The Department shall develop procedures to govern the behavior of adult offenders and for the imposition of sanctions when these procedures are violated. These procedures shall encourage self-discipline and self-control and shall assist in preparing the offender for re-entry into the community. Additionally, these procedures serve as a means for the Department to manage offenders in a just and fair manner to ensure the safety and security of the facilities, staff, offenders and the public.

The disciplinary procedures shall be presented in a clear and understandable manner. Each committed offender and staff person who has routine contact with offenders shall have access to the disciplinary procedures. The Department shall insure that copies of these disciplinary procedures are posted or maintained in prominent locations so that staff and offenders may have access.

The Department shall assist offenders to understand the rights and provisions of the disciplinary process. The Department shall provide any offender who may have literacy or language barriers the opportunity to have these procedures explained to him/her and copies of these disciplinary procedures may be made available to the offender in his/her native language if the offender is not able to understand English.

Disciplinary sanctions for major offenses shall only be imposed after the offender has been afforded due process and a determination of guilt is made. The sanctions imposed shall be given in such measure and degree as to regulate the offender's

---

## POLICY AND ADMINISTRATIVE PROCEDURE
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 2 | 55 |

**Title**
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

behavior and shall be consistent with established guidelines. Disciplinary action shall not be vindictive or retaliatory. Corporal punishment shall be strictly prohibited.

Training shall be provided to staff to ensure compliance with this policy and the following administrative procedures and consistency in their application. Offenders shall be informed of this policy and administrative procedure in a manner appropriate to ensure understanding and the opportunity for compliance.

### III. DEFINITIONS:

For the purpose of this policy and administrative procedure, the following definitions are presented.

A. **AIDING and ABETTING:** When an offender commits any of the following acts to assist in the violation of these administrative procedures or a Department or facility rule, procedure or directive:

- Telling, hiring, commanding, inducing, counseling another person to commit a violation;
- Assisting another person in planning or preparing for a violation;
- Assisting another during the commission of an offense, whether or not the assistance was planned in advance; or,
- Assisting another to prevent the discovery of a violation or the identity of the person who committed the violation.

B. **APPEAL:** A written request by an offender to have a disposition and/or sanction imposed under the Disciplinary Code for Adult Offenders reviewed by a higher authority.

C. **ATTEMPT:** Planning to do something that would be a violation of these administrative procedures or any Department or facility rule, procedure or directive if the act had actually been committed or when an offender commits acts which showed a plan to violate these administrative procedures or a Department or facility rule, procedure, or directive when the acts occurred.

D. **AUTHORIZED:** Any of the following:

- According to Department and facility rules, policies, procedures or directives;
- According to the direction or orders of a staff person;

---

## POLICY AND ADMINISTRATIVE PROCEDURE
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 3 | 55 |

**Title**
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

- According to an established facility custom approved by the facility administration; or,
- With permission from an appropriate staff person.

E. **BODILY INJURY:** Any injury or illness which causes a physical impairment, including physical pain.

F. **BUILDING CONFINEMENT:** A sanction for violation of Department or facility procedures or rules which requires the offender to remain in the building in which the offender resides.

G. **CONDUCT REPORT:** A summary of an alleged violation committed by an offender as documented by staff.

H. **CONSPIRACY:** Two (2) or more offenders or other persons planning or agreeing to commit acts which are prohibited by Department or facility rule, procedure or directive.

I. **DISCIPLINARY REVIEW OFFICER:** Staff designated by a Superintendent, either full-time or part-time, to review conduct reports and conduct Screening hearings in accordance with these administrative procedures.

J. **DISPOSITION:** The result of a disciplinary proceeding.

K. **DUE PROCESS:** These rights consist of:

- At least 24 hours written notice of the charged violation before a disciplinary hearing;
- The opportunity to have the disciplinary case heard before an impartial decision maker (Hearing Officer);
- The opportunity to call witnesses and present documentary evidence when consistent with facility safety and security; and,
- A written statement by the fact-finder (Hearing Officer) of the evidence relied on and the reasons for the disciplinary action.

L. **EFFECTIVE DATE:** The date of the finding of guilt as a result of a violation of the Disciplinary Code.

M. **FACILITY COMMUNITY SERVICE GOALS:** Objectives approved by the Superintendent for the betterment of the facility or community. Examples include, but are not limited to, facility sanitation projects and participation in community/facility fundraisers.

---

## POLICY AND ADMINISTRATIVE PROCEDURE
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 4 | 55 |

**Title**
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

N. **APPEAL REVIEW OFFICER:** The Commissioner's designee charged with reviewing and rendering final administrative decisions concerning adult offender disciplinary appeals that involve a grievous loss.

O. **GRIEVOUS LOSS:** A sanction imposed, as the result of a disciplinary action, which results in the loss of earned credit time or a demotion to a lower credit class, disciplinary restrictive status housing in excess of 60 days and/or restitution in excess of $200.00.

P. **HEARING:** An administrative process to receive and review evidence and testimony and determine an offender's guilt or innocence and, if found guilty, the sanction(s) imposed.

Q. **HEARING OFFICER:** The staff person(s) designated by the Superintendent and charged with the responsibility to hear disciplinary cases.

R. **INCIDENT DATE:** The date on which the alleged rule infraction occurred or staff became aware of the violation.

S. **INCLUDED OFFENSE:** An offense that:

- Is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
- Consists of an attempt to commit the offense charged or an offense otherwise included therein; or,
- Differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

T. **INTERNAL AFFAIRS OFFICER:** A staff person appointed on a full-time, part-time or case-by-case basis by a Superintendent to conduct investigations of alleged offender violations or illegal activities in accordance with Policy 00-01-103, "The Operation of the Internal Affairs Unit."

U. **INTIMATE PARTS:** Breasts, penis, buttocks, scrotum, or vaginal area or any other part of the body that may result in sexual arousal or gratification for either party.

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|--------|----------------|------|-------------|
| 02-04-101 | 6/1/2015 | 9 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

    (1)    The offender is provided a copy of the document indicated in IV. B. 1;

    (2)    A receipt indicating that this policy and administrative procedure was read and explained to the offender is signed and dated by the staff person or volunteer and the offender; and,

    (3)    The acknowledgement shall be filed in the offender's facility packet.

2.    Staff Training:

All staff persons who have regular or routine contact with offenders during the course of their assigned duties shall receive training in this policy and administrative procedure during new employee orientation and in subsequent in-service training.

Staff who serve as a Disciplinary Review Officer, Hearing Officer, or Appeal Responder shall be provided specialized training to ensure that they are aware of their responsibilities and that they understand the requirements of this policy and administrative procedure.

The Division of Staff Development and Training shall be responsible for developing and implementing a staff training program for both the general training of staff and for the specialized training provided to those staff that have a role in the Disciplinary Process.

C.    APPEAL REVIEW OFFICER

The Commissioner shall designate a staff person in the Department's Central Office to serve as the Appeal Review Officer for the Disciplinary Code for Adult Offenders. The staff person designated as the Appeal Review Officer shall be thoroughly knowledgeable of the Disciplinary Code for Adult Offenders. The duties of the Appeal Review Officer shall include, but shall not be limited to:

1.    Serving as the Department's resource person for matters relating to the operation of the Disciplinary Code for Adult Offenders, by answering questions and responding to inquiries;

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|--------|----------------|------|-------------|
| 02-04-101 | 6/1/2015 | 10 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

2.    Assist in the development and presentation of training in the Disciplinary Code for Adult Offenders, as requested by the Executive Director of Staff Development and Training; and,

3.    Review and decide on appeals of offender disciplinary cases that include a grievous loss, disciplinary restrictive status housing in excess of 60 days and/or restitution in excess of $200.00 and which have been denied at the Superintendent level.

V.    REPORTING VIOLATIONS:

A.    MINOR OFFENSES (CLASS C AND D)

1.    WARNING:

a.    Staff who witnesses or is made aware that an offender has committed a Minor Offense may determine that an INFORMAL CONDUCT REPORT (State Form 39589) or a REPORT OF CONDUCT (State Form 39590) is not required. In these cases, the staff member may counsel and warn the offender.

b.    Staff may merely inform an offender that the offender's behavior is against Department and/or facility procedures or rules and discuss the offender's behavior and give a warning if:

    (1)    The alleged offense committed by the offender is a Minor Offense (Class C or D);
    (2)    The offender is unfamiliar with the procedure or rule;
    (3)    The offender has not violated the same or a closely related procedure or rule within the last year to the best of the staff member's knowledge (whether or not a REPORT OF CONDUCT or INFORMAL CONDUCT REPORT was written);
    (4)    The offender is unlikely to repeat the offense if warned and counseled; or,
    (5)    Even though the offender's actions were technically a violation of Department or facility procedures or rules, the intent of this policy and administrative procedure would not be served by writing a REPORT OF CONDUCT or INFORMAL CONDUCT REPORT in this case.

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|--------|----------------|------|-------------|
| 02-04-101 | 6/1/2015 | 11 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

c.    Staff shall give warnings to offenders as soon as possible after witnessing or becoming aware of the violation but no later than 24 hours after the staff person becomes aware of the offense.

2.    INFORMAL CONDUCT REPORT:

a.    Staff who witnesses an offender commit a Minor Offense may prepare an Informal Conduct Report if the staff believes that the offender's behavior does not meet the requirements for a Warning or a REPORT OF CONDUCT.

b.    State Form, 39589, INFORMAL CONDUCT REPORT, shall be used in these cases.

c.    Staff is encouraged to use an INFORMAL CONDUCT REPORT whenever appropriate.

d.    An INFORMAL CONDUCT REPORT shall be completed prior to the end of the staff person's shift on the day of the incident whenever possible and in no case more than 24 hours after the date of the alleged offense.

e.    If the offender agrees to accept the INFORMAL CONDUCT REPORT, the Shift Supervisor, Department Head, or Unit Team Manager or designee shall be notified of the INFORMAL CONDUCT REPORT and shall review the INFORMAL CONDUCT REPORT to ensure that it is appropriate and that the sanction(s) is/are consistent and in accordance with this policy and administrative procedure.

f.    Staff offering the INFORMAL CONDUCT REPORT shall advise the offender:

    1.    As to the nature of the alleged offense and the contemplated penalty; and,

    2.    That the incident may be handled as an INFORMAL CONDUCT REPORT or through the formal disciplinary process.

g.    The offender shall be advised that if he/she accepts the INFORMAL CONDUCT REPORT the following rights regarding a disciplinary hearing are waived:

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|--------|----------------|------|-------------|
| 02-04-101 | 6/1/2015 | 12 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

    (1)    A hearing before a Disciplinary Review Officer or Hearing Officer;
    (2)    Presentation of witnesses and other evidence;
    (3)    Assistance of a lay advocate;
    (4)    Impartial decision maker;
    (5)    Confrontation and cross-examination of witnesses;
    (6)    Findings of fact; and,
    (7)    Appeal of the sanction(s) imposed.

h.    The offender shall continue to maintain the ability to speak on his/her own behalf and, if the offender does not understand these disciplinary proceedings or does not understand English, to have someone assist him/her to understand the proceedings.

i.    The offender shall acknowledge, in writing, understanding his/her rights by signing the INFORMAL CONDUCT REPORT.

j.    The sanctions that may be imposed for an INFORMAL CONDUCT REPORT may include up to 20 hours of extra duty (up to four [4] hours of extra work per a 24 hour period) and/or up to 30 days restriction of privileges, in accordance with Procedure IX. E. 3. e.

k.    If the offender agrees to the INFORMAL CONDUCT REPORT, the staff person shall inform the offender of the sanction(s). Once the offender agrees to the INFORMAL CONDUCT REPORT, the agreement cannot be appealed.

l.    If the offender does not agree to the INFORMAL CONDUCT REPORT, the staff person shall prepare a REPORT OF CONDUCT and shall indicate in this report that the offender did not agree to an informal resolution. The REPORT OF CONDUCT shall follow the procedures indicated in V. A. 3.

m.    If the offender agrees to the INFORMAL CONDUCT REPORT but fails to complete the imposed sanctions in the designated time period, the offender shall be charged formally with a Class C Code 347, "Refusing an Order," State Form 39590, REPORT OF CONDUCT, shall be

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 17 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

Pre-hearing restrictive status time shall be credited toward any disciplinary restrictive status housing time imposed by the Hearing Officer.

Offenders who have been charged with a disciplinary violation may not be removed from a work or program assignment pending the disciplinary hearing unless it is determined that:

- The offender meets the conditions to be temporarily confined in pre-hearing restrictive status housing pending the hearing; or,
- To allow the offender to remain in the work or program assignment would present a documented threat to the safety and security of the facility, staff, other offenders or the public.

VII.   DETAINING OFFENDERS WHO VIOLATE STATE LAWS OR DEPARTMENT RULES:

A.   Unless an offender reaches his/her maximum release date, with the approval of the Superintendent or designee, an offender who satisfies one or more of the following shall be reassigned immediately to Credit Class III, or Credit Class D if the committing offense was committed on or after July 1, 2014, have all earned credit time suspended, and shall be so notified:

1.   Is alleged to have committed a Class A or B offense within thirty (30) days of the offender's projected release date or turnover to a new sentence.

2.   Is charged with a new crime and Department action concerning the alleged incident has not been resolved by the offender's projected release date.

3.   Is apprehended for escape from the Department and disciplinary action concerning the escape has not been resolved by the offender's projected release date.

B.   The effective date of the reassignment to Credit Class III, or Credit Class D if the committing offense was committed on or after July 1, 2014, and suspension of earned credit time shall be the date one (1) of the following documents is completed or the date of the earliest document when more than one (1) is completed:

1.   Law enforcement agency arrest report.

2.   Formal charge filed with a court of criminal jurisdiction.

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 18 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

3.   Parole Agent's report.

4.   Department of Correction warrant.

5.   State Form 39588, RESTRICTIVE STATUS HOUSING REPORT.

6.   State Form 39590, REPORT OF CONDUCT.

C.   Upon disposition of the allegation(s), the projected release date shall be recalculated in accordance with the results of the hearing.  If the offender is found not guilty, the previous credit class and earned credit time shall be restored.

D.   If found guilty, the offender shall:

1.   Be reassigned to the appropriate credit class, if the sanction includes a change in credit class.  The effective date of the sanction shall be the date of the original reassignment to Credit Class III, or Credit Class D if the committing offense was committed on or after July 1, 2014,  However, if the sanction does not affect credit class, the offender shall be restored to the former credit class effective on the date of reassignment to Credit Class III, or Credit Class D if the committing offense was committed on or after July 1, 2014, and shall earn the credit time that would have been earned had the offender not been reassigned to Credit Class III or Credit Class D if the committing offense was committed on or after July 1, 2014.

2.   Have earned credit time deprived in accordance with the approved sanction(s) or, if the sanction does not include deprivation of previously earned credit time, have any credit time deprived as a result of this action restored.

VIII.   CONDUCT REPORTS; REVIEW AND INVESTIGATION:

A.   REVIEW OF CONDUCT REPORTS:

1.   Each Superintendent shall appoint one (1) or more staff person(s) to serve as Disciplinary Review Officer(s).

a.   Any staff person designated to serve as the Disciplinary Review Officer shall complete the Department's training on

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 19 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

the offender disciplinary process prior to commencing these duties.

b.   The Superintendent shall submit the names of the staff persons appointed to serve as Disciplinary Review Officers to the Appeal Review Officer.

2.   The reporting staff person's immediate supervisor shall submit State Form 39590, REPORT OF CONDUCT, to the Disciplinary Review Officer in sufficient time (preferably within 24 hours from the date of the incident) to allow the Disciplinary Review Officer to meet with the offender and schedule a hearing within seven (7) working days from the date of the incident or from the date that the staff person first became aware of the alleged violation or after the completion of an investigation by the Internal Affairs.

Generally, the Disciplinary Hearing shall be held within seven (7) days (excluding weekends and holidays) of the alleged violation. However, there may be valid reasons why the Disciplinary Hearing cannot be held within that time frame.  Holding the Disciplinary Hearing outside this time frame is not grounds for a case to be dropped, dismissed, nor is it grounds for an appeal.

3.   Upon receipt of a REPORT OF CONDUCT the Disciplinary Review Officer shall:

a.   Review the contents of each REPORT OF CONDUCT.

b.   Consult with the report writer's immediate Supervisor as needed; change offense, title, and code number (the Disciplinary Review Officer may change the offense to an equal or lesser offense; however, the offense may not be upgraded); and/or correct errors (e.g. dates, misspelled words, numbers). Corrections or changes are to be initialed by the staff person making the changes or corrections. The Disciplinary Review Officer may return the REPORT OF CONDUCT to the reporting staff person's immediate supervisor with an explanation for the return and a determination as to resubmission.

c.   Determine if the REPORT OF CONDUCT includes a charge for sexual conduct.  If it is determined that the REPORT OF CONDUCT charges an offender with any type of sexual conduct, the Disciplinary Review Officer shall immediately notify the PREA Compliance Manager.  The REPORT OF

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 20 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

CONDUCT shall be reviewed by the PREA Compliance Manager to determine if the REPORT OF CONDUCT warrants such a charge or requires the initiation of the facility Sexual Assault Response Team (SART), an investigation of sexual abuse, and subsequent completion of a Sexual Incident Report.

d.   Dismiss duplicate charges when the reporting staff person files more than one (1) report on a particular incident and duplication of charges is evident.

e.   Approve or disapprove the final report.

f.   Assign a case number to the REPORT OF CONDUCT that consists of a facility abbreviation (ISP, WCC, ISF, IMW, etc.), year (e.g., 06, 07, 08), month (e.g., 01, 02, 03, etc.) and number of the report within the month (e.g., 001, 002, 003), (e.g. ISP 06-07-0100.)

g.   Determine if an Internal Affairs investigation is warranted and, if so, refer the REPORT OF CONDUCT to the Custody Supervisor or higher authority, requesting an Internal Affairs investigation.

4.   The review process shall be completed, if possible, in sufficient time to allow the disciplinary hearing to be held within seven (7) days (excluding weekends and holidays) from the date of the incident and shall consist of the following:

a.   Give the charged offender a copy of the REPORT OF CONDUCT.

b.   Determine the offender's plea and enter the plea in the appropriate box on State Form 39585, "NOTICE OF DISCIPLINARY HEARING."

c.   Advise the offender of the following:

(1)   Have at least 24 hours to prepare for the hearing, including time and place of the hearing;

(2)   The opportunity to have the disciplinary hearing heard by an impartial decision-maker;

(3)   The ability to appear and speak on his/her own behalf;

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 25 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

    (1) Have a demonstrated working knowledge of this policy and administrative procedure;

    (2) Be free of any pending disciplinary action;

    (3) Be free of a conviction for a Major rule violation for a period of six (6) months;

    (4) Be a resident of the Department for a period of sixty (60) days prior to appearing on the list; and,

    (5) Not be in any type of restrictive status housing, unless the Superintendent determines that it would be in the best interest of the safety and security of the facility to allow an offender in the same restrictive status housing unit as the accused offender to serve as a Lay Advocate.

Successful completion of the Department's training for Law Library Clerks may be considered when selecting offenders to serve as Lay Advocates and, if sufficient numbers of offenders complete the Law Library Training Course, these offenders shall be given priority should they request to be Lay Advocates.

An Intake Unit's Superintendent may exempt offenders desiring to be Lay Advocates from meeting the criteria indicated in (1) and (4) above.

f. The offender may request a specific Lay Advocate from the approved list, identified by name and number at the time of screening. However, if the requested Lay Advocate is not available, the Hearing Officer may appoint another Lay Advocate from the approved list.

g. An offender Lay Advocate must be housed or work at the same facility or complex within a facility where the charged offender's hearing is held. In facilities that house more than one (1) security level of offenders, the Lay Advocate must be from the same security level as the offender, unless otherwise approved by the Superintendent.

h. Lay Advocates shall not request, require, receive, or accept any form of compensation from an offender for advice or assistance.

i. The requested Lay Advocate is not required to assist the charged offender.

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 26 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

j. The duties of the Lay Advocate include ensuring that the charged offender understands the charge(s) and disciplinary process, assisting the charged offender with developing a defense to the charge(s) and explaining the charged offender's rights in regards to appealing any decision by the Hearing Officer. These duties do not include acting as the offender's legal representative during the hearing or speaking on behalf of the offender.

2. Witnesses:

a. Charged offenders may request that staff or other offender witness testimony be presented at the disciplinary hearing.

    (1) Witnesses who are not staff or other offenders shall not be permitted to attend the hearing.

    (2) Offenders shall be permitted to present in-person testimony at the hearing from no more than two (2) witnesses, unless the Hearing Officer determines that special circumstances exist which would indicate that additional in-person testimony is appropriate.

b. The offender or lay advocate may request that additional witnesses submit written statements to the Hearing Officer

c. If additional witness testimony is determined to be appropriate, the Hearing Officer or other designated staff may interview any such witness(es) and report the results of the interview at the hearing.

d. An offender may request a witness at the time of screening by advising the Disciplinary Review Officer of the request for a witness or a witness statement.

e. Additionally, the offender may contact the Disciplinary Review Officer or other designated staff any time prior to one (1) day (excluding weekends and holidays) before the scheduled disciplinary hearing and request a witness or a witness statement.

f. If the offender requests a witness(es), the Disciplinary Review Officer shall require the offender to summarize each witness' expected testimony and shall document the

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 27 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

offender's response on the State Form 39585, NOTICE OF DISCIPLINARY HEARING. Additional pages may be added, if necessary.

g. If a witness(es) is requested, State Form 35447, NOTICE TO WITNESS/LAY ADVOCATE, shall be used to notify the witness(es).

h. Witnesses notified by State Form 35447 shall be required to provide testimony to the Hearing Officer either in person or by written statement.

i. If a witness appears and testifies or provides a written statement, the witness is required to tell the truth or be subject to disciplinary action(s).

j. Unless the safety and security of the facility will be threatened, when possible, an offender should be permitted any witnesses who can present relevant and non-repetitive testimony at the hearing. All other requested witnesses shall be offered the opportunity to present a written statement based upon questions presented by the accused offender at the time he/she is screened.

k. A witness' personal appearance at a disciplinary hearing may be denied if the Hearing Officer finds:

    (1) The presence of the witness would subject the witness to a substantial risk of harm;

    (2) The testimony of the witness would result in the admission of irrelevant or repetitive testimony; or,

    (3) Based upon good cause and stated on the record, the witness is unavailable to attend the hearing or a written statement can be prepared which can adequately represent the witness(es)' expected testimony at the hearing.

    NOTE: Unavailable means that an offender witness is deceased, has been transferred to another facility, has been released from the Department, is hospitalized, is in restrictive status housing or has escaped. Staff unavailability means that the staff person is deceased, ill and on sick leave, on vacation, personal or other previously approved leave, on a

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 28 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

different shift or bracket, on a scheduled day off, or no longer employed at the facility.

l. There is no absolute right to confront and/or cross examine witnesses. However, the offender may submit questions to the Hearing Officer prior to the hearing. Nor does the accused offender have any right to obtain disclosure of the identity of such person.

m. If the Hearing Officer determines that the witness should not appear, whether or not the witness received a NOTICE TO WITNESS/LAY ADVOCATE, the Hearing Officer may:

    (1) Meet with the witness or contact the witness by telephone or other means;

    (2) Obtain a transcript of an oral statement;

    (3) Obtain a tape-recorded statement;

    (4) Obtain a written summary of a witness' testimony if:

        (a) The witness' testimony will be accepted as credible; and,

        (b) The testimony involves verification of alleged facts, including, but not limited to a witness who will testify to the authenticity of contents of a record or document, cell location, work assignment, staff work schedule or identification.

n. Witness statements shall be written or summarized in the appropriate section of State Form 35447, NOTICE TO WITNESS/LAY ADVOCATE and signed by the person making the statement.

    (1) Unless the witness statement is adverse to the offender and might cause a breach in the security of the facility or the statement was given under a request for confidentiality, the offender shall be given a copy of any witness statements presented at the hearing.

    (2) The Hearing Officer shall cause the filing of State Form 35447, NOTICE TO WITNESS/LAY ADVOCATE, in the appropriate section of the offender's facility packet. In cases where adverse testimony is provided or the statement was given

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 33 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

(2) A hearing may be postponed or continued multiple times if the facility documents the need for another postponement or continuance.

(3) Any postponement or continuance of the hearing shall be for a reasonable time period and shall be for good cause, including:

    (a) Preparation of a defense;
    (b) Illness or unavailability of the offender or staff;
    (c) Further review of factual matters relevant to the hearing; and,
    (d) Pending criminal court prosecution or investigation by an outside law enforcement agency.

h. If an offender is not available for a hearing (e.g. out to court), the hearing shall be postponed until the offender is available. The hearing shall be scheduled and held within seven (7) days (excluding weekends and holidays) from the date the offender becomes available at the facility.

i. The Hearing Officer may excuse him/herself from hearing a particular case if the Hearing Officer believes that there is any reason why he/she cannot give the offender a fair and impartial hearing. The fact that the Hearing Officer has heard other cases involving the same offender is not justification for the Hearing Officer to be considered unable to be fair and impartial. If the Hearing Officer asks to be excused from a particular case, another Hearing Officer shall be assigned to hear that case.

2. Deliberation and Decision:

a. The Hearing Officer shall consider all evidence (physical, written, and verbal) obtained in the disciplinary process. Observers shall not enter into discussions with the Hearing Officer or attempt to influence the Hearing Officer's decision.

b. The decision shall be guilty, not guilty, or dismissed. If an offender admits guilt or the evidence shows guilt of an equal or lesser related disciplinary code violation as indicated in ATTACHMENT I, the Hearing Officer may find the

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 34 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

offender guilty of such code violation and shall document on the REPORT OF DISCIPLINARY HEARING any change in the original charged offense. Any change in the charged offense must have a clear and reasonable relation to the original offense.

c. A not guilty or guilty finding shall be supported by a preponderance of the evidence.

(1) The decision shall be based solely upon information obtained during the hearing process, including staff reports, statements from the charged offender, evidence derived from witnesses and documents and physical evidence, if any.

(2) The evidence relied upon shall be documented in the "Evidence Relied Upon" section of the REPORT OF DISCIPLINARY HEARING.

(3) A written record of disciplinary hearings shall be made and maintained for a period of twelve (12) months by the Hearing Officer.

3. Sanction(s):

a. Sanction(s) shall be imposed in accordance with this policy and administrative procedure and shall take into account the following guidelines:

(1) Any allowable sanction or combination of sanctions may be imposed. However, consistent progressive discipline should be used before maximum sanctions are assessed, unless the offense itself is of such a serious nature as to warrant maximum sanctions.

(2) The rationale for imposing a sanction or combination of sanctions must be documented on the REPORT OF DISCIPLINARY HEARING.

(3) Any period of disciplinary restrictive status imposed as a result of a prohibited act committed while an offender is already in restrictive status housing shall be served consecutively to any other disciplinary restrictive status sanction the offender has previously received.

(4) No sanction of extra work may exceed twenty (20) hours for any one (1) rule violation or more than four

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 35 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

(4) hours in any 24 hour period. An offender shall not receive state wages for extra work.

(5) Seriousness of the instant offense.

(6) Frequency and nature of the offender's prior violations.

(7) The degree to which the violation disrupted or endangered others or the security of the facility or program.

(8) Offender's attitude and demeanor during the hearing.

(9) Likelihood of the sanction(s) having a corrective effect on the offender's future behavior.

(10) Current security level assignment.

(11) Current participation in education, rehabilitative or work programs.

(12) Sanctions imposed for comparable offenses and circumstances by other offenders with similar histories.

b. In determining the appropriate sanction(s) for an offender found guilty of a disciplinary offense, staff may consider as aggravating or mitigating factors such circumstances, but not limited to, the following:

(1) The offender's prior disciplinary record, especially during the past twelve (12) months;

(2) The offender's mental health status/state at the time of the violation, including the motivation for the offense and the offender's attitude toward the offense and the victim, if any;

(3) Whether the offender has previously been found guilty of the same or a similar offense and, if so, how often and how recently;

(4) The nature or value of the property involved, if the offense involved property of another;

(5) Whether the violation created a risk of serious disruption at the facility or whether the violation created a risk of serious injury to another person;

(6) Whether the offender was aware that his/her actions were an offense when the offense was committed;

(7) Mitigating factors, such as coercion, family difficulties, etc., which may have caused anxiety and any special circumstances;

| POLICY AND ADMINISTRATIVE PROCEDURE | | | |
|---|---|---|---|
| Indiana Department of Correction | | | |
| Manual of Policies and Procedures | | | |
| Number | Effective Date | Page | Total Pages |
| 02-04-101 | 6/1/2015 | 36 | 55 |
| Title | | | |
| THE DISCIPLINARY CODE FOR ADULT OFFENDERS | | | |

(8) Whether the offense created a risk to the safety and security of the facility, staff, other offenders or the community; and,

(9) Any other factors relevant to determining an appropriate sanction.

c. Recommended sanctions shall be within the disciplinary code guidelines [See Procedure IX. E. 3. (c)]. The recommended sanctions shall be limited to the following:

(1) Written or verbal reprimand.

(2) Extra work, not to exceed 20 hours for each offense.

(3) Loss or limitation of privileges.

(4) Placed on Room/Cell/Housing Assignment Confinement.

(5) Placed on Building Confinement.

(6) Change in work or housing assignment or status.

(7) Restitution.

(8) A change in security level or transfer to a more secure facility or program.

(9) Disciplinary restrictive status shall be for a fixed period of time. Disciplinary restrictive status time for multiple offenses may be given concurrently, except when given as a sanction for a violation which occurred while the offender was in disciplinary restrictive status housing.

(10) Reassignment to a lower credit class and/or deprivation of specified earned credit time, if the violation is of a Major (Class A or B) offense, except for offenders who have been sentenced to life imprisonment.

(a) If a demotion is recommended by the Hearing Officer, the offender shall be notified of:

    • The date of the action;
    • The next review date; and,
    • The projected release date as a result of the demotion.

(b) Earned credit time/release date calculations shall be in accordance with the administrative procedures for Policy 01-04-101, "Adult

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 41 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

(5) Restrictions on medical, mental health, and dental care, access to courts, legal counsel, government officials or grievance proceedings and access to personal papers and legal research materials.

(6) A deviation from the diet provided to other committed persons in the facility or program except:

(a) For documented medical reason(s); or,

(b) In cases where the offender abuses or misuses the diet, such as throwing food items at others or failure to return meal utensils when instructed, and a determination is made in writing to place the offender on an alternative diet as provided in the administrative procedure for Policy 04-01-301, "The Development and Delivery of Foodservices."

(7) Humiliation, mental abuse, or punitive interference with the daily functions of living, such as eating or sleeping.

g. Offenders who have been convicted of a criminal offense which does not provide earned credit time (e.g., capital offenses, life without parole) and who have been found guilty of a Major offense violation may be sanctioned with a loss of earned credit time, demotion in Credit Class, or both which shall be imposed if the offender's sentence is modified to a term of years. In such cases, the effective date of the imposition of the lost earned credit time or demotion in Credit Class shall be the date of the disciplinary hearing. An offender may submit an appeal in accordance with this policy and administrative procedure.

h. When sanctions involving loss of privileges are imposed, the facility shall ensure that the offender is provided at least minimal access to the privilege. For example, an offender who receives a loss of telephone privileges shall be permitted access to the Offender Telephone System in order to make calls to the offender "hotline" and to telephone his/her attorney or legal representative. An offender who is given a commissary restriction shall be permitted to purchase personal hygiene items and over-the-

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 42 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

counter medication. Offenders who are in restrictive status housing shall not be given a recreation restriction unless the violation involves the recreation program and in those cases, the offender shall continue to be offered a reduced recreation schedule permitting at least ¼ hour of recreation activity outside the restrictive status housing cell five (5) days per week.

4. Reports:

Upon completion of a disciplinary hearing, a written summary of the proceedings shall be made which shall include the findings of fact, the evidence relied upon, and the reasons for the sanction(s) imposed.

a. State Form 39586, REPORT OF DISCIPLINARY HEARING, shall be used for this purpose.

b. The Hearing Officer shall ensure that this form is completed correctly and with as much detail as possible and a copy provided to the offender.

c. All REPORT OF DISCIPLINARY HEARING forms shall be forwarded to the Superintendent or designee for review to ensure that the sanctions recommended are in accordance with this policy and administrative procedure. During this review, the sanctions may be reduced if appropriate but may not be increased.

d. Once the recommended sanction has been approved, the Superintendent or designee shall ensure that the approved sanctions are initialed and entered into the Offender Information System (OIS) and that the Hearing Officer is notified of the decision regarding the sanctions.

e. The Hearing Officer shall cause the REPORT OF DISCIPLINARY HEARING with the approved sanctions to be delivered to the offender and a copy placed in the offender's facility packet.

f. A copy of the hearing record and supporting documents shall be maintained in the hearing officer's records.

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 43 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

5. Correction of Errors:

a. Errors (e.g., misspellings, incorrect ID numbers, etc.) found on disciplinary reports (i.e., REPORT OF CONDUCT, REPORT OF DISCIPLINARY HEARING forms may be corrected at any time prior to the rendering of judgment when detected by or brought to the attention of the Disciplinary Review Officer or Hearing Officer.

b. The staff person making such changes or corrections shall initial these changes or corrections.

c. Failure to detect or correct such errors that do not have a substantial impact on the offender's ability to present a defense shall not be grounds for overturning a decision by the Disciplinary Review Officer or Hearing Officer.

6. Expunging of Records:

a. If an offender is found not guilty or, if upon review, a finding of guilt is reversed, or the charge is dismissed, the offender's record shall be expunged of any reference to the specific charge, and all sanctions rescinded within thirty (30) days of the not guilty finding or reversal. Correspondence from the Appeal Review Officer shall document the reversal of the case number. The Superintendent shall review the correspondence, cause the expungement of the charges from the offender's packet, and forward a copy to be filed in the offender's facility packet (Section 4).

b. Pre-hearing restrictive status housing records showing housing assignment or restrictive status housing unit logs shall not be expunged from records.

c. Each Superintendent shall assign staff to be responsible for these actions.

d. A copy of the records may be kept in a separate secure location for purposes of defending against litigation. Such expunged records may only be used to defend against litigation and not for purposes of classification, reports to the Parole Board, and/or to a court, or to determine an offender's past disciplinary records.

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
Manual of Policies and Procedures

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 44 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

7. Reimbursement of Lost Wages (Not including Work Release):

An offender otherwise entitled to state wages:

a. Who is released from pre-hearing restrictive status housing without being charged;

b. Whose charge(s) is(are) dismissed;

c. Who is found not guilty; or,

d. Whose guilty finding is overturned on appeal or by a court,

shall have those State wages, for which the offender is eligible, reimbursed for the period of time from the offender's removal from the work assignment due to the alleged disciplinary violation until the date of the disciplinary hearing. Such pay will be at the rate of State wages paid the offender prior to being removed from his/her work assignment or at the lowest rate of State wages for which the offender is eligible if previously assigned to a PEN Products work assignment in accordance with the Offender Employment-Operating-Standard. The Hearing Officer shall advise the Supervisor of Classification in these cases and the offender shall be returned to the previous assignment eligibility status as soon as possible and shall be given priority for a work assignment.

8. Credit Class Review:

The Hearing Officer shall review and timely process a disciplinary action which resulted in a credit class demotion. An offender who has been demoted in credit class shall be reviewed for promotion 90 days from the effective date of the last guilty finding by a Hearing Officer until the offender is:

- Promoted to Credit Class I, if the committing offense was committed prior to July 1, 2014;
- Promoted to Credit Class A, if the committing offense is a Level 6 felony committed on or after July 1, 2014; or,
- Promoted to Credit Class B, if the committing offense is a Level 1-5 felony committed on or after July 1, 2014

a. If an offender, while within a Department facility, has maintained a clear conduct record (i.e. NO findings of guilt

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 49 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

5. Forward all approved petitions for restorations to the appropriate staff for entry to the offender information system.

g. If approved, deprived credit time shall be restored only in the following manner:

1. A maximum of sixty (60) days of deprived credit time shall be restored upon approval of the first petition for restoration.

2. Approval of any subsequent petitions for restoration of earned credit time shall result in up to sixty (60) days of deprived earned credit time being restored for each successful subsequent petition, subject to the limitations in subsections 3 and 4, below;

3. The total maximum amount of deprived earned credit time that can be restored is fifty percent (50%) of the cumulative amount of restorable earned credit time;

4. Deprived earned credit time shall be restored, except to the extent that it would cause the offender's earliest possible release date (EPRD) to be less than forty-five (45) days from the date the earned credit time is to be restored.

5. Credit time that was never earned as a result of a demotion in Time Earning Credit Class cannot be restored as "deprived" credit time.

h. The facility-based community service goals to be accomplished by the offender to become eligible to file any petition for restoration of deprived earned credit time may, if established by the facility, include, but are not limited to:

1. Completion of a fixed number of hours of specifically-assigned housing unit or facility-based work assignments, above what would otherwise be expected of the offender;

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 50 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

2. Active and significant engagement inapproved volunteer projects designed to help others in need;

3. Completion of any specifically designed (non-credit time earning) rehabilitative activity or program approved by the Superintendent or designee; or,

4. Successful completion of any other educational orpro-social exercises (non-credit time earning) approved by the Superintendent or designee.

i. The effective date of the restoration of any deprived earned credit time shall be the date when the designated staff person signs the petition. Staff shall enter the restored days into the offender information system as soon as possible after the decision to restore time has been made.

j. Earned credit time deprived a Department offender housed in a county jail, while in a Community Transition Program (CTP), or while in a contracted facility may be restored when the offender is transferred to a Department facility.

1. Earned credit time deprived by a county sheriff or by court order shall be restored in the same manner as earned credit time deprived while in a Department facility.

2. When the offender is received at a Departmentintake unit or facility, staff shall review the offender's record to determine whether earned credit time has been deprived.

3. If the offender has been deprived earned credittime and the offender appears to be eligible for restoration, staff shall advise the offender on eligibility and the procedures to petition for restoration.

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 51 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

4. If it is determined that the offender would have been eligible for earned credit time restoration,the designated staff person shall determine the amount of earned credit time the offender would have been eligible to receive. In these cases:

a. The offender shall be granted all of the deprived earned credit time they would have received if the offender had been housed in a Department facility and timely petitioned for restoration; and,

b. Such petitions shall be processed consistent with this procedure.

k. The decision of the Superintendent or designee shallbe final. There is no appeal of the denial of the request for the restoration of deprived earned credit time; nor is there any appeal of the amount of earned credit time restored.

l. If an offender is transferred to another facility while a petition is under review, the facility holding the offender when the petition was submitted shall complete the review and forward the result to the receiving facility. The receiving facility shall ensure that the offender is notified of the final decision and that the petition for restoration of earned credit time is filed in the offender's packet and any restoration is recorded in the offender information system.

m. No offender shall receive a restoration of deprived credit time if the restoration results in placing the offender within forty-five (45) days of his/her EPRD, regardless of conviction.

X. **APPEAL OF DISCIPLINARY DISPOSITION:**

A. An offender who desires to appeal a disciplinary disposition shall complete State Form 39587, "DISCIPLINARY HEARING APPEAL," within fifteen

---

**POLICY AND ADMINISTRATIVE PROCEDURE**
Indiana Department of Correction
**Manual of Policies and Procedures**

| Number | Effective Date | Page | Total Pages |
|---|---|---|---|
| 02-04-101 | 6/1/2015 | 52 | 55 |

Title
**THE DISCIPLINARY CODE FOR ADULT OFFENDERS**

(15) days from the date of the disciplinary hearing or receipt of the REPORT OF DISCIPLINARY HEARING.

1. In the appeal, the offender shall state the specific reason(s) such a review is requested.

2. A disciplinary action may only be appealed for failure of the facility to follow the due process requirements in this policy and administrative procedure, where there is a question regarding the sufficiency of the evidence relied upon, or in cases where the sanctions given are outside the sanctioning guidelines in these procedures.

3. An offender may not appeal minor errors in the disciplinary reports unless the offender can show that the error resulted in a due process error.

B. Offenders who have entered a guilty plea may appeal only the sanction(s) imposed.

C. The first level of appeal shall be to the Superintendent or designee of the facility where the hearing was held who shall consider the offender's statements, review for any due process or sanctioning errors and disciplinary consistency.

1. The response shall be written on State Form 39587, "DISCIPLINARY HEARING APPEAL," and provided to the offender.

2. The Superintendent or designee is the final reviewing authority for appeals for Minor offenses (Class C and D offenses) and for Major offenses (Class A or B offenses) that do not involve the sanctions as indicated in X. D.

3. The Superintendent or designee shall respond to the appeal within 30 days from the date of receipt. A copy of the appeal decision shall be given to the offender and a copy placed in the offender's file.

D. An offender who has received sanctions involving a grievous loss, and who is not satisfied with the appeal response from the Superintendent or designee may appeal the Superintendent's response to the Appeal Review Officer.



Salvation

Unity



FROM THE MOORISH GUIDE.

REPRINTED BY REQUEST.

# "Humanity"

BY ----



# Prophet Noble Drew Ali

## THE CARES OF THE WORLD,
## SALVATION TO ALL NATIONS,
## A MESSAGE OF TRUTH,
## PEACE, FREEDOM AND JUSTICE.



# The Prophet Has Spoken.

### 🔱 🔱 🔱

### Friday, November 9, 1928

All Governors and Grand Sheiks and head officials that guide any body of Moors of any Temple of the Moorish Science Temple of America, he or she must be of moral standard and a heart of love and their works must be of love, truth, peace, freedom and justice. They are to imitate the Prophet in speech and teaching in any said Temple; they must not be under the influence of intoxicating liquors or any other harmful motive that will terminate to become a detriment to the organization. It must not be known that any leader is staying away from home or neglecting his duty at home or must allow the public to know of their wrong doings. They must forever live the life of love at home and it must be known by all the members. They must not speak rash words or use any profane language in the mildest form, before any other individuals. Because a leader without influence of good works cannot be a leader; and to be a real Moorish Leader you must study the Koran and the Divine Constitution, that is handed down unto you by me, the Prophet. No finance businesses are to be opened with any group of members of any Temple by the Governor or Grand Sheiks or whosoever in charge without the consultation of me, the Prophet.

All uplifting funds books are to be issued only through me, the Prophet, because that money is to finance the Moorish movement. The Head of any Temple can maintain an emergency funds which cannot exceed the amount of from twenty-five to fifty cents a week per member. All public collection and dues also to the supporting of each said Temple and its domestic works. No finance book is to be in any Temple except by the Prophet. The Head of every Temple must by Law obey the word of the Prophet and if any leader or Head of any Temple fails to obey these laws. Embezzlement is his charge and is subject to enforcement of the Law by the Grand Body, and the penalty may be a fine or removal from office, or placed under a very restriction of the Law. Supreme Words of the Prophet.

Noble Drew Ali

Friday, September 28, 1928

## PROPHET DREW ALI SPEAKS TO THE NATIONS
### NEEDS STRONG MEN AND WOMEN

If you have race pride and love your race, join the Moorish Science Temple of America and become a part of this divine movement. Then you will have power to redeem your race because you will know who you are and who your forefathers were, because where there is unity there is strength "Together we stand and Divided we fall." Come, good people, because I, the Prophet, sent to redeem this nation from mental slavery which you now have, need every one of you who think that your condition can be better.

This is a field open to strong men and women to uplift the nation and take your place in the affairs of men. If the European and other nations are helping me, why not you? It is your problem. The "Negro" problem is being solved only as it can and that is by the Moorish National Divine Movement. If you have a nation you must have a free national name in order to be recognized by this nation as an American citizen. This is what was meant when it was said: "Seek ye first the Kingdom of Heaven and all these things would be added unto you."

Prophet Noble Drew Ali

Friday, October 28, 1928

## A WARNING FROM THE PROPHET
### FOR ALL GOVERNORS AND GRAND SHEIKS
### AND HEAD OFFICIALS OF ALL TEMPLES

Renew you acts, amend your ways. Because the great conference is on its way and in it is where the Law will be enforced before the great grand body. The continuance of the present officers in the Temple will depend on your past good work. Those who have been delinquent may now know that they will not be tolerated any longer, because this great Divine and National movement must move on according to Law, these things shall be Proclaimed.

There is no favorite in any of the Temples, for the Law is laid down and everyone who claims a part of the work must be governed accordingly. All are one. There is but one Temple in this Nation and there is but one Prophet of the Temples. I come to speak to all Nations, bringing them a message of love, truth, peace, freedom and justice. In the Head of every Temple if any

2

one has violated these Divine Laws it will mean his discontinuance, for no man is to be under the influence of intoxicating liquors nor to seek to tear up the families while under the influence of any evil motive; nor must he speak anything that will prejudice the minds of the public against the Divine movement.

If any of the Laws are violated, any body of grand Sheik or Sheiks can file charge against the violation to grand body over which the Prophet presides. This power is vested in seven or more Sheiks for the protection of your Temple and the Divine Movement.

The Prophet Noble Drew Ali,
the Founder of the
Moorish Science Temple of America

## THE PROPHET PLEA TO NATION
### Friday, March 1, 1929

Our Divine and national movement stands for the specific grand principles of love, truth, peace freedom and justice. And I, the Prophet, am applying to all loyal, faithful Moors, members and the American citizens to help me in my great uplifting acts of uplifting fallen humanity among the Asiatic race and nation—for I have suffered much and severely in the past through misunderstanding of what the movement was dedicated to.

It is the great God Allah alone that guides the destiny of this Divine and national movement. I know all true American citizens are identified by national and national descent names to answer and apply to the free national Constitution of this free National Republic of the United States of America that's why I am calling on all true national citizens to help me morally and financially in my great work. I am going to help this national government, for without a free national name with a descent flag of your forefathers, there is not a national diving title of the government in which we live.

This is from your true and divine Prophet unto all American and foreign sympathizers.

Prophet Noble Drew Ali

## GENERAL LAWS AS SAID BY THE PROPHET
### Friday, November 9, 1928

Every Temple and the Head is to function by words, deeds and action, imitating the Prophet, especially when

3

STATE OF INDIANA
DEPARTMENT OF CORRECTION

# *HANDBOOK OF*
# *RELIGIOUS*
# *BELIEFS AND PRACTICES*



DIVISION OF RELIGIOUS AND VOLUNTEER SERVICES

November 2014

Qur'an Sharief translated by Maulvi Muhammad Ali, and the Bible, especially Daniel and Revelation.

5.   DIET

Adherents eat no pork.

6.   PRACTITIONERS

The Nation approves those to be designated Ministers.  Minister Louis Farrakhan is the recognized leader.

7.   SYMBOL

Crescent moon and star (star to the right of the crescent).  Flag is solid red with a crescent moon and star emblem.

A.   **MOORISH SCIENCE TEMPLE OF AMERICA, INC.**
1.   BELIEF

M.S.T. of A. was founded by Prophet Noble Drew Ali (1886-1929) in Detroit, Michigan.  Islam as Prophet Noble Drew Ali brought claims it is the "true and divine creed of Islam...that saving power that comes from Allah, through our ancient forefathers, by His Prophet Noble Drew Ali".  It is sometimes referred to as "Islamism".

An M.S.T. of A. follower is taught their nationality as a Moorish American and adopts his or her tribal name at the time of joining.  Tribal names are El or Bey (Moabite tribal names).  No existing records are to be changed, but Moors are admonished to use the newly adopted name in addition to their family name.  The Moors stress following the laws of the national and state government as well as their Divine laws.

Moors carry out the teaching of Prophet Ali and must carry out a lawful and divine mission of uplifting fallen humanity through love, truth, peace, freedom and justice. The teachings of Jesus, Mohammed, Buddha, Confucius and Zoroaster are also revered, as are the prophets from the Old Testament.  It is a monotheistic religion, recognizing Allah as God.

2.   HOLY DAYS

Holy Days include Prophet Ali's birthday on Jan. 8; the Moorish American New Year on Jan. 15; and the Moorish American Tag Day on March 17.

3.    WORSHIP

**Private**:  Moors are encouraged to pray daily and to study M.S.T. of A. religious literature.  They are to practice living the Five Divine Principles of Love, Truth, Peace, Freedom and Justice.

**Corporate**:  Meetings are conducted through a Branch Temple, which must be lawfully chartered and operate under a Warrant of Authority.  Public meetings include the unison recitation of the Moorish American prayer, praise to Allah, honor to Prophet Noble Drew Ali and others.  Reading of the Divine Constitution and By-laws and verses from the Holy Koran of the M.S.T. of A. are followed by speakers.  Other readings and business follow, concluding with the "Warning from the Holy Prophet" and the Moorish American Prayer.  Secret teachings of the third level of membership, the Adept Chamber, are not permitted by M.S.T. of A. in prisons.

When reciting the Moorish American Prayer, one stands, faces the East, heels together, feet   pointing in a 45 degree angle, arms at right angles with five fingers up on the left hand, and two fingers on the right hand.

4.    AUTHORITATIVE TEXT(S)

The Holy Koran as revealed to Prophet Noble Drew Ali is the authoritative text.  Other literature includes the M.S.T. of A. Questionnaire and Divine Constitution and By-Laws.

5.    DIET

Moors eat no pork.

6.    ACCREDITED REPRESENTATIVE

There are designated officials of a Temple.  The Grand Sheik is the head official of a Temple or Branch Temple, and is a minister.  Proceedings and responsibilities of the officials are prescribed.  No member is to function nor use the title of a M.S.T.A. office other than that which is designated and only when elected or appointed to an office by the Grand Sheik of the M.S.T. of A.  It is Moorish policy that a person who claims to hold an office to which he/she is not lawfully entitled is criminally and civilly liable for their actions.

Ministers are called "Brother" and "Sister".  The officials of a Temple are:  Grand Sheik, Assistant Grand Sheik, Chairman, Assistant Chairman, Secretary, Assistant Secretary, Treasurer, Assistant Treasurer, and Acting Muftis.

7.    SYMBOL

The symbol of M.S.T. of A. is a crescent moon and star.

8.      <u>MEMBERSHIP</u>

Membership is obtained by purchasing a Nationality and Identification Card.  There is no ceremony involved, and a member is not required to learn anything before he or she is entitled to receive their Card.  One is also to use his or her tribal name from the time of joining, although a member is not to go to court to have a name change nor change any existing records.  A tribal name, El or Bey, is given when joining a Temple.

Salvation  Our God  Unity 

# The Moorish Science Temple
## OF AMERICA
## The Divine Constitution and By-Laws

**ACT 1.**—The **Grand Sheik** and the chairman of the Moorish Science Temple of America is in power to make law and enforce laws with the assistance of the Prophet and the Grand Body of the Moorish Science Temple of America. The assistant Grand Sheik is to assist the Grand Sheik in all affairs if he lives according to Love, Truth, Peace, Freedom and Justice, and it is known before the members of the Moorish Science Temple of America.

**ACT 2.**—All meetings are to be opened and closed promptly according to the circle seven and Love, Truth, Peace, Freedom and Justice. Friday is our Holy Day of rest, because on a Friday the first man was formed in flesh and on a Friday the first man departed out of flesh and ascended unto his father God Allah, for that cause Friday is the Holy Day for all Moslems all over the world.

**ACT 3.**—Love, Truth, Peace, Freedom and Justice must be proclaimed and practised by all members of the Moorish Science Temple of America. No member is to put in danger or accuse falsely his brother or sister on any occasion at all that may harm his brother or sister, because Allah is Love.

**ACT 4.**—All members must preserve these Holy and Divine laws, and all members must obey the laws of the government, because by being a Moorish American, you are a part and partial of the government, and must live the life accordingly.

**ACT 5.**—This organization of the Moorish Science Temple of America is not to cause any confusion or to overthrow the laws and constitution of the said government but to obey hereby.



NOBLE DREW ALI
Founder

**ACT 6.**—With us all members must proclaim their nationality and we are teaching our people their nationality and their Divine Creed that they may know that they are a part and a partial of this said government, and know that they are not Negroes, Colored Folks, Black People or Ethiopians, because these names were given to slaves by slave holders in 1779 and lasted until 1865 during the time of slavery, but this is a new era of time now, and all men now must proclaim their free national name to be recognized by the government in which they live and the nations of the earth, this is the reason why Allah the Great God of the universe ordained Noble Drew Ali, the Prophet to redeem his people from their sinful ways. The Moorish Americans are the descendants of the ancient Moabites whom inhabited the North Western and South Western shores of Africa.

**ACT 7.**—All members must promptly attend their meetings and become a part and a partial of all uplifting acts of the Moorish Science Temple of America. Members must pay their dues and keep in line with all necessities of the Moorish Science Temple of America, then you are entitled to the name of, "Faithful". Husband, you must support your wife and children; wife you must obey your husband and take care of your children and look after the duties of your household. Sons and daughters must obey father and mother and be industrious and become a part of the uplifting of fallen humanity. All Moorish Americans must keep their hearts and minds pure with love, and their bodies clean with water. This Divine Covenant is from your Holy Prophet Noble Drew Ali, thru the guidance of his Father God Allah.

MOORISH AMERICAN PRAYER

Allah the Father of the universe, the Father of Love, Truth, Peace, Freedom and Justice. Allah is my protector, my guide and my salvation by night and by day thru his Holy Prophet Drew Ali. "Amen."

# THE MOORISH SCIENCE TEMPLE OF AMERICA
## Home Office: 48 Inches Street       Mt. Clemens, Michigan