UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DERRICK DION NEELY-BEY TARIK-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:15-cv-1522-WTL-DML |
| | ) | |
| OFFICER CONLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Discussing Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Derrick Neely-Bey Tarik-El ("Mr. Tarik-El"), an Indiana prisoner incarcerated at the Pendleton Correctional Facility ("Pendleton"), brings this action pursuant to 42 U.S.C. § 1983. He seeks an award of monetary damages against the defendants in their individual capacities for allegedly violating his First Amendment rights to practice his religion when the defendants enforced a Moorish Science Temple of America resolution that prohibited him from teaching, facilitating, or serving in the operation of religious services. The defendants are Daniel Conley, Richard Sidwell and Chaplain David Smith.

The defendants moved for summary judgment. The plaintiff filed a response in opposition and the defendants replied. For the following reasons, the motion for summary judgment, Dkt. No. 70, is **granted**.

1

## I. Undisputed Facts[1]

Construed in a manner most favorable to Mr. Tarik-El, the following facts are undisputed for purposes of summary judgment:

In 2013, Mr. Tarik-El submitted an affidavit to former Indiana Department of Correction ("IDOC") Commissioner Bruce Lemon which challenged the IDOC's authority to hold him in prison. He stated in the affidavit "I Derrick D. Neely-Bey Tarik-El, am a Sovereign Moorish National of the Missouri Republic of Nativity, thus of America (Al Morocco), and a Moorish American." Dkt. [70]-3. In this affidavit, Mr. Tarik-El challenged the IDOC's jurisdiction to incarcerate him.

On Sunday, April 6, 2014, Brother M. Doles Bey, Minister Volunteer, sent a memorandum to David Libel, IDOC Director of Religious Services; IDOC Chaplains Alan McCraine and David Smith; Pendleton Superintendent Wendy Knight; and Offenders B. Crosby-Bey and Tarik-El. Dkt. [1]-1, pp. 7-8. This memorandum contained a resolution issued by the Moorish Science Temple of America ("MSTA") that informed the recipients that Mr. Tarik-El was no longer permitted to teach, facilitate, or serve in the operation of the MSTA because he was designated with a Security Threat Group ("STG"). He was to be considered a guest and, as such, was permitted to participate in Sunday school but was prohibited from dominating, debating, or giving instruction as to the operation of the Temple. As a guest, Mr. Tarik-El was also not permitted to participate in Friday Holy Day Service. The resolution informed Mr. Tarik-El that any violation of the memorandum

---

[1] Mr. Tarik-El states in his response that the defendants' facts one through five are material facts in dispute. Dkt. No. 81, pp. 2-3. This statement is not supported by the record. Each of the defendants' facts one through five are statements set forth in Mr. Tarik-El's complaint, documents attached to the complaint, or Mr. Tarik-El's affidavit. He also has not complied with Local Rule 56-1 by supporting his statements that the defendants' facts are in dispute with citation to any evidence. As such, Mr. Tarik-El has conceded the defendants' version of the facts. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

would permit IDOC to punish any violations with any policies IDOC had in place. Dkt. No. 1-1, pp. 7-9.

On March 23, 2015, Chaplain David Smith sent a memorandum to Mr. Tarik-El that stated "I will need you to understand that by returning to [the MST of A] group you agree to fully cooperate with and follow the April 6 2014 sanction placed on you by MST of A, Inc." Dkt. No. 1-1, p. 3. The memorandum set forth the restrictions contained in the MSTA resolution which included:

> Namely,
> 1. You are recognized as a guest of MST of A.
> 2. You will not stand, speak or facilitate any of the Friday/Holy Day Service – just listen to the Instructions of the Prophet.
> 3. On Monday meetings, you may only address the group when recognized by the person presiding over the meeting.
> 4. When speaking you must not debate, instruct, dominate or speak against the teaching of the Prophet, MST of A, Inc., or the U.S. Constitution.

Dkt. No. 1-1, p. 3.

On August 21, 2015, Mr. Tarik-El received a report of conduct for refusing an order after he was observed speaking and openly participating in religious services on Friday Holy Day. Dkt. No. 70-2, p. 9. He was found guilty and received sanctions of a written reprimand and twenty hours of extra work duty. Dkt. No. 1, p. 3; 70-2, p. 11.

Mr. Tarik-El has a STG classification of sovereign citizen. Dkt. No. 70-1, pp. 4-6. Inmates with a STG classification are prohibited from participating in, recruiting for, talking or teaching about a STG. Dkt. No. 70-1, pp. 4-6.[2]

---

[2] The defendants state that Mr. Tarik-El was suspended from MSTA meetings for one year. Dkt. No. 71, p. 1. The record does not reflect this. Rather, the record reflects that Mr. Tarik-El received sanctions of a written reprimand and twenty hours of extra work duty. Dkt. No. 1, p. 3; 70-2, pp. 11-12. Nonetheless, this is immaterial because Mr. Tarik-El is not arguing that a one year restriction violated his rights under the First Amendment, but that his inability to participate violated his rights under the First Amendment.

3

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## III. Discussion

Defendants assert two grounds for summary judgment. First, they argue that Mr. Tarik-El's claim under the First Amendment fails as a matter of law. Second, they argue that the doctrine of qualified immunity precludes liability on Mr. Tarik-El's constitutional claim because it was not clearly established that defendants' conduct violated Mr. Tarik-El's constitutional rights. Qualified immunity "[i]s an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). "It is important to resolve immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). For this reason, the Court will address the immunity defense

first.

**Qualified Immunity**

When suit is brought against a government official in his or her individual capacity, the official may raise any relevant personal immunity defense. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 706 (7th Cir. 2001). In other words, a plaintiff must show that not only his constitutional rights were violated, but that any reasonable official under the circumstances would have realized his rights were being violated. It is a defense available to officials with discretionary or policymaking authority when sued in their individual capacities under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993).

The qualified immunity defense consists of two prongs, both of which Mr. Tarik-El must overcome to defeat the defendants' qualified immunity defense: 1) whether a constitutional right would have been violated on the facts alleged; and 2) whether the constitutional right was "clearly established" at the time of the official's alleged misconduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). This is, in almost every case, a high bar. Under current Supreme Court precedent, "[c]ourts may decide qualified immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all." *Pearson*, 555 U.S. at 226. We shall follow that analytical approach here.

As noted, Mr. Tarik-El must demonstrate a violation of his clearly established rights under

the First Amendment in order to defeat the defendants' qualified immunity defense. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). To be clearly established, a right must be specific to the relevant factual context of a cited case and not generalized with respect to the amendment that is the basis of the claim. *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008). However, a case with similar facts is not necessarily required; the violation may be so obvious in light of law existing at the time that a reasonable person would have known that his or her conduct was unconstitutional. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1023 (7th Cir. 2000). Mr. Tarik-El can demonstrate that the right he identifies was "clearly established" by presenting a sufficiently analogous case which establishes that the defendants' conduct was unconstitutional or by presenting evidence—even in the absence of applicable precedent—that the defendants' conduct was so patently violative of the constitutional right that a reasonable official would know without guidance from a court. *Hope v. Pelzer*, 536 U.S. 730, 739–40 (2002). Mr. Tarik-El need not cite a case that is factually identical to his case, but the "existing precedent must have placed the right or constitutional question beyond debate." *Al–Kidd*, 563 U.S. at 741.

Mr. Tarik-El argues that his rights under the First Amendment Free Exercise clause were violated when he received a disciplinary sanction for violating the MSTA resolution prohibiting him from actively engaging in MSTA religious services. Mr. Tarik-El directs the Court's attention to *Isby v. Lemmon* to show that the defendants' enforcement of the MSTA resolution banning him from participating in religious services was a clearly established violation of his First Amendment right. Dkt. No. 81, p. 5.[3] He states that the *Isby v. Lemmon* case stands for the proposition that "this

---

[3] Mr. Tarik-El does not provide a citation for the *Isby v. Lemmon* case. There is one Seventh Circuit case *Isby-Israel v. Lemmon*, 674 Fed. Appx. 569, (7th Cir. 2017) (unpublished) that dismissed his appeal for failing to disclose to the district court that he was a restricted filer. The district court case that Mr. Isby-Israel appealed from involved an alleged Eighth Amendment violation for placement in long-term segregation.

Court recognizes that the First Amendment Free Exercise Clause prohibits the government from imposing a substantial burden on a central religious belief or practice." Dkt. No. 81, p. 11. In essence, Mr. Tarik-El argues that the general protections of the Free Exercise Clause of the First Amendment are sufficient to defeat the defendants' claim of qualified immunity. Mr. Tarik-El also points to the IDOC Administrative Polices that protect his right to practice his religion. Both the *Isby v. Lemmon* case and the IDOC Administrative Policies, Mr. Tarik-El argues, clearly establish his right to practice his religion.

The general principles of First Amendment law prohibiting officials from placing a substantial burden on the free exercise of religion by inmates are clearly established, *Ortiz v. Downey*, 561 F. 3d 664, 669 (7th Cir. 2009) (stating that the First Amendment right to freely exercise one's religion extends to inmates), but the qualified immunity defense turns on whether the application of those principles to the circumstances faced by the defendants was clear at the time. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

Here, Mr. Tarik-El cannot prevail in his effort to overcome qualified immunity by relying on general principles of First Amendment right. The Supreme Court has directed that "'clearly established' law is not to be defined at a high level of generality." *White v. Pauly*, 580 U.S. ——, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (citing *Al-Kidd*, 563 U.S. at 742, 131 S.Ct. 2074). "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*.

The defendants state that their diligent search of our Circuit and Supreme Court law yields no case that establishes a clearly established right analogous to the facts of this case. Similarly, the Court's research confirms that there are no decisions directly establishing that the defendants' conduct in this case, where state officials enforced a ban from participating in religious activities

7

that was put in place by the religious entity itself, violated Mr. Tarik-El's rights under the First Amendment.

Mr. Tarik-El has failed to meet the "clearly established" standard sufficient to defeat the defendants' qualified immunity defense to his claim. Well-settled Supreme Court case law supports this result. The qualified immunity defense seeks to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231, 129 S.Ct. 808. Qualified immunity gives public officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Al–Kidd*, 563 U.S. at 741, 131 S.Ct. 2074 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The defendants' reliance on this defense is well placed.

### IV. Conclusion

The defendants are entitled to qualified immunity defense. Accordingly, the defendants' motion for summary judgment, Dkt. No. 70, is **granted**. Judgment shall now enter.

**IT IS SO ORDERED**.

Date: 9/19/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

DERRICK D. NEELY-BEY TARIK-EL
973338
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Electronically registered counsel

8